UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

| | |
|---|---|
| LEWIS S. CLARK and PATRICIA E. CLARK, Individually and on Behalf of All Others Similarly Situated, | : No. 1:13-cv-03851-RPP : : **CLASS ACTION** |
| Plaintiffs, | : : |
| v. | : **MEMORANDUM OF LAW IN** : **SUPPORT OF MOTION FOR** : **CONSOLIDATION, APPOINTMENT** |
| BARRICK GOLD CORPORATION, AARON W. REGENT, JAMIE C. SOKALSKY, and AMMAR AL-JOUNDI, | : **AS LEAD PLAINTIFF, AND** : **APPROVAL OF LEAD PLAINTIFF'S** : **SELECTION OF COUNSEL** |
| Defendants. | : : |

------------------------------------------------------------ x

| | |
|---|---|
| CLEMENT BERNARD, Individually and on Behalf of All Others Similarly Situated, | : No. 1:13-cv-04123-RPP |
| Plaintiff, | |
| v. | |
| BARRICK GOLD CORPORATION, AARON W. REGENT, JAMIE C. SOKALSKY, and AMMAR AL-JOUNDI, | |
| Defendants. | |

------------------------------------------------------------ x

| | |
|---|---|
| CITY OF BROCKTON RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | : No: 1:13-cv-05437 |
| Plaintiff, | |
| v. | |
| BARRICK GOLD CORPORATION, AARON W. REGENT, JAMIE C. SOKALSKY, and AMMAR AL-JOUNDI, | |
| Defendants. | |

------------------------------------------------------------ x

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii
INTRODUCTION ................................................................................................................................. 1
FACTUAL BACKGROUND ............................................................................................................... 4
ARGUMENT .......................................................................................................................................... 6
I.      The Related Actions Should Be Consolidated ..................................................................... 6
II.     The Institutional Investor Group Should Be Appointed As Lead Plaintiff ..................... 6
        A.     The Institutional Investor Group's Motion Is Timely ............................................ 7
        B.     The Institutional Investor Group has the Largest Financial Interest in the Relief Sought by the Class ................................................................................................... 7
        C.     The Institutional Investor Group Satisfies Rule 23 of the Federal Rules of Civil Procedure at This Stage ................................................................................................ 8
              1.     The Institutional Investor Group Is Typical .................................................. 9
              2.     The Institutional Investor Group Is Adequate .............................................. 9
III.    The Court Should Approve the Institutional Investor Group's Selection of Counsel ...... 13
CONCLUSION .................................................................................................................................... 14

**TABLE OF AUTHORITIES**

**CASES**

*Bricklayers of Western Pennsylvania Pension Plan v. Hecla Mining Co., et al.*
  No. 12-cv-00042-BLW (D. Idaho July 12, 2012)........................................................................ 10

*DeAngelis v. Corzine, et al.*
  No. 11-cv-07866-VM (S.D.N.Y. Jan. 3, 2012) ...................................................................... 3, 10

*Gammel v. Hewlett-Packard Co.*
  No. 11-1404 AG (C.D. Cal.)..................................................................................................... 14

*In re American International Group, Inc. Securities Litigation*
  No. 04-cv-8141 (S.D.N.Y.)....................................................................................................... 13

*In re Bank of America Corp. Securities, Derivative & ERISA Litigation*
  258 F.R.D. 260 (S.D.N.Y. 2009) .............................................................................................. 10

*In re Bear Stearns Cos., Inc. Securities, Derivative, & ERISA Litigation*
  No. 08-md-1963 (S.D.N.Y.) ..................................................................................................... 13

*In re Cendant*
  264 F.3d 201 (3d Cir. 2001) ....................................................................................................... 9

*In re Mills Corp.*
  No. Civ. A. 1:06-77(GEL) (E.D. Va. May 30, 2006) ............................................................... 12

*In re Netflix, Inc., Securities Litigation*
  No. C 12-0225 SC (N.D. Cal. Apr. 27, 2012) ............................................................................ 3

*In re NPS Pharmaceuticals, Inc. Securities Litigation*
  No. 2:06-cv-570 (D. Utah Nov. 17, 2006)................................................................................ 13

*Minneapolis Firefighters' Relief Association v. Medtronic, Inc., et al.*
  No. 08-cv-06324-PAM-AJB (D. Minn. May 26, 2009) ....................................................... 9, 12

*Morrison v. National Australia Bank Ltd.*
  130 S. Ct. 2869 (2010)............................................................................................................ 2, 7

*Richman v. Goldman Sachs Group, Inc.*
  274 F.R.D. 473 (S.D.N.Y. 2011) ................................................................................................ 6

*Sgalambo v. McKenzie*
  268 F.R.D. 170 (S.D.N.Y. 2010) ............................................................................................ 8, 9

**STATUTES**

15 U.S.C. § 78u-4(a)(1) ................................................................................................................. 6
15 U.S.C. § 78u-4(a)(3) ......................................................................................................... passim

**OTHER AUTHORITIES**

H.R. Conf. Rep. No. 104-369 (1995),
  *reprinted in* 1995 U.S.C.A.A.N. 730 .................................................................................... 3, 9

Private Securities Litigation Reform Act of 1995 ................................................................ passim

S. Rep. No. 104-98 (1995),
   *reprinted in* 1995 U.S.C.A.A.N. 679 ..................................................................................... 3

Section 21D(a)(3) of the Securities Exchange Act of 1934....................................................... 1, 2

**RULES**

Rule 23 of the Federal Rules of Civil Procedure ................................................................. passim

Rule 42 of the Federal Rules of Civil Procedure ......................................................................... 6

Union Asset Management Holding AG ("Union") and LRI Invest S.A. ("LRI") (collectively, the "Institutional Investor Group") respectfully submit this memorandum of law in support of their Motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an order: (1) consolidating the related actions; (2) appointing the Institutional Investor Group as Lead Plaintiff for a proposed Class consisting of all investors who purchased the publicly-traded common stock of Barrick Gold Corporation ("Barrick Gold" or the "Company") during the period from May 7, 2009 to May 23, 2013, inclusive (the "Class Period"); (3) approving the Institutional Investor Group's selection of Motley Rice LLC ("Motley Rice") as Lead Counsel on behalf of the proposed Class; and (4) approving the Institutional Investor Group's selection of Labaton Sucharow LLP ("Labaton Sucharow") as Liaison Counsel on behalf of the proposed Class.

## INTRODUCTION

Pending before the Court are at least three related securities fraud class action lawsuits (the "Related Actions")[1] filed against Barrick Gold; Aaron Regent, the Company's former Chief Executive Officer ("CEO"); Jamie Sokalsky, the Company's current CEO and former Executive Vice President and Chief Financial Officer ("CFO"); and Ammar Al-Joundi, the Company's current Executive Vice President and CFO (collectively, "Defendants"). The complaints of the Related Actions allege that, during the Class Period, Defendants repeatedly misrepresented key elements concerning the Company's current and future mining operations and financial condition, thus artificially inflating the price of its securities. When these

---

[1]   The Related Actions are *Clark v. Barrick Gold Corp., et al.*, No. 1:13-cv-03851-RPP, filed on June 5, 2013; *Bernard v. Barrick Gold Corp., et al.*, No. 1:13-cv-04123-RPP, filed on June 14, 2013; and *City of Brockton Retirement System v. Barrick Gold Corp., et al.*, No. 1:13-cv-05437, filed on August 2, 2013 (the "*Brockton* Complaint").

misrepresentations were revealed to the public, Barrick Gold's common stock prices fell precipitously, as the prior artificial inflation came out of the prices of the securities over time.

The Institutional Investor Group respectfully submits that, pursuant to the Exchange Act, as amended by the PSLRA, it should be appointed to serve as Lead Plaintiff on behalf of the putative Class.  The Institutional Investor Group comprises sophisticated and experienced institutional investors with ample resources and capability to oversee complex litigation.  Further, the Institutional Investor Group has the largest financial interest of any movant properly before the Court, having suffered losses of $65,841,921.29, whether calculated on a first-in-first-out ("FIFO") basis or last-in-last-out ("LIFO") basis.[2]  *See* Certifications and Loss Charts, Decl. of Christopher J. Keller ("Keller Decl."), Exs. A, B, submitted herewith.

In light of these significant losses, the Institutional Investor Group has a large financial interest in prosecuting this case – an interest believed to be greater than that of any competing movant.  The Institutional Investor Group also meets the typicality and adequacy requirements set out in Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), because the Institutional Investor Group's claims are typical of those of absent Class members and the Institutional Investor Group will fairly and adequately represent the interests of the proposed Class.  Like the other members of the putative Class, the Institutional Investor Group seeks recovery of losses incurred as a result of declines in the share price of Barrick Gold stock purchased on the New York Stock Exchange ("NYSE") in the United States.  *See Morrison v. Nat'l Austl. Bank Ltd.*, 130 S. Ct. 2869, 2886 (2010) (holding that Section 10(b) applies to securities purchased or sold on a United States stock exchange, irrespective of the nationality of the shareholder).

---

[2] These losses relate solely to trades of Barrick Gold stock on the New York Stock Exchange.

In addition, Union and LRI have a pre-existing relationship that pre-dates this litigation. Both moved jointly for appointment as Lead Plaintiff in *DeAngelis v. Corzine, et al.*, No. 11-cv-07866-VM (S.D.N.Y. Jan. 3, 2012). *See* Mot. for Appointment as Lead Pl., Keller Decl., Ex. E; *see also In re Netflix, Inc., Sec. Litig.*, No. C 12-0225 SC, 2012 U.S. Dist. LEXIS 59465, at *19-20 (N.D. Cal. Apr. 27, 2012) (appointing group of movants as lead plaintiff and finding that aggregation of losses is appropriate for movants with a pre-existing relationship). The members of the Institutional Investor Group have further detailed their commitment to actively direct this litigation in their Joint Declaration in Support of the Motion of the Institutional Investor Group for Consolidation of Related Actions, Appointment as Lead Plaintiff, and for Approval of Its Selection of Lead Counsel and Liaison Counsel (the "Joint Declaration"), Keller Decl., Ex. D.

In a case of this scale, it is essential that any court-appointed lead plaintiff be large and sophisticated enough to play a meaningful role in managing potentially sprawling litigation. Here, each member of the Institutional Investor Group is exactly the type of investor whose participation in securities class actions the PSLRA was meant to foster. *See* H.R. Conf. Rep. No. 104-369 at 34 (1995), *reprinted in* 1995 U.S.C.A.A.N. 730, 733; S. Rep. No. 104-98 at 6 (1995), *reprinted in* 1995 U.S.C.A.A.N. 679, 685. Indeed, the Institutional Investor Group has significant experience prosecuting securities class actions on behalf of injured investors. *See* Certifications, Joint Decl., Keller Decl., Exs. A, D.

Finally, the Court should approve the Institutional Investor Group's selection of Motley Rice as Lead Counsel and Labaton Sucharow as Liaison Counsel for the proposed Class. In this case, the claims of the proposed Class will be best protected by the experience and resources of

Motley Rice and Labaton Sucharow, which have the expertise and resources necessary to handle litigation of this scale.

## FACTUAL BACKGROUND

In 1994, Barrick Gold acquired ownership of Lac Minerals Ltd., a Quebecois mining company that was then under threat of a hostile takeover. As part of this acquisition, Barrick Gold gained ownership of the Pascua-Lama Project, which at the time had been the subject of approximately one year of environmental studies. Pascua-Lama straddles the high-altitude border between Chile and Argentina in a region of the Andes Mountains known as the Atacama Desert.

Because of the mine's location and close proximity to glaciers supplying water to more than 70,000 local farmers, the Company was able to secure permission to develop and operate the mine only after making detailed promises to the governments of Chile and Argentina that it would undertake extraordinarily wide-ranging efforts to limit environmental degradation and harm to surrounding glaciers, other water sources, and waterways. Accordingly, from nearly the inception of the project, the Company stressed to investors the Company's commitment to compliance with environmental rules and regulations.

Over the following years, Barrick Gold conducted further studies on the Pascua-Lama Project, including feasibility and economic studies, and separate environmental assessments for Chile and Argentina. In 2000, Barrick Gold submitted its initial environmental impact study to Chilean regulators, which they approved in 2001. Barrick Gold submitted a similar study in Argentina in 2001. Both submissions were updated in 2004 and 2006. In February 2006, Barrick Gold received approval of its Pascua-Lama Project environmental impact study from Chilean authorities, and the study was approved by Argentine authorities in December 2006.

By April 2009, investors viewed the Pascua-Lama Project as a major cornerstone of Barrick Gold's future growth and profitability, with an analyst from Scotia Capital noting that the project then represented 13% of Barrick Gold's ore reserves and 11% of the Company's measured and indicated resources, and that Pascua-Lama could eventually be the source of 9% of Barrick Gold's annual gold production.

On May 7, 2009, prior to the U.S. and Canadian market opening, Barrick Gold issued a press release announcing that the Company's Pascua-Lama Project would proceed to construction. Barrick Gold stated that Pascua-Lama has a "[p]re-production cost estimate of $2.8-$3.0 billion," and that "[c]ommissioning [was] expected in late 2012 and production in early 2013." In response to these positive claims by the Company, Barrick Gold's stock price opened for trading $0.80 per share, or 2.43%, higher than its prior closing price, and over the course of that and the following trading session on May 8, 2009, rose $1.23 per share, or 3.6%, to close at $34.04 per share.

During the balance of the Class Period, Defendants continued to provide a glowing outlook for the costs and time that the development and completion of Pascua-Lama would require, repeatedly reassuring investors and analysts of the project's reasonable cost, high profitability, and ability to drive growth for Barrick Gold prior to 2014. Defendants' statements caused Barrick Gold's shares to close as high as $54.28 per share on April 5, 2011, and trade at prices as high as $54.89 per share on April 6, 2011.

On April 10, 2013, before the opening of the U.S. and Canadian markets, news outlets reported that the Appeals Court of Copiapo, Chile, had issued an order suspending work on the Pascua-Lama Project. In reaction to this news, Barrick Gold's stock price fell $2.23 per share, or

5

8.3%, to close at $24.46 per share following that day's trading session on volume of more than 40 million shares.

Then, on May 24, 2013, Chile's Superintendence of the Environment (Superintendencia del Medio Ambiente) issued a resolution suspending the Pascua-Lama Project pending compliance with an environmental permit, and imposing a fine equivalent to $16 million – the maximum penalty possible under Chilean law.

In response to this development, trading in Barrick Gold stock was halted for approximately three hours. After the Company's shares resumed trading, Barrick Gold's share price closed at $19.16 per share, $0.39 per share, or 1.99%, below the prior day's close.

## ARGUMENT

### I.  The Related Actions Should Be Consolidated

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter [is] filed," the court shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(ii); *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 475 (S.D.N.Y. 2011). To date, the Institutional Investor Group is aware of the three above-captioned, Related Actions in this District against Defendants. Under Rule 42(a) of the Federal Rules of Civil Procedure, consolidation is appropriate when the actions involve common questions of law or fact. *See Richman*, 274 F.R.D. at 475. The Related Actions are based upon the same alleged misconduct, name the same Defendants, allege the same class period, and assert the same claims. Consolidation therefore is appropriate. *See id.*

### II. The Institutional Investor Group Should Be Appointed As Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the Act] that is brought as a plaintiff class action pursuant to the

6

Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1); *see also* 15 U.S.C. § 78u-4(a)(3)(B)(i). First, the pendency of the action must be publicized in a widely circulated national business-oriented publication or wire service not later than 20 days after filing of the first complaint. 15 U.S.C. § 78u-4(a)(3)(A)(i). Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii). The Institutional Investor Group meets these requirements and should therefore be appointed as Lead Plaintiff.[3]

### A. The Institutional Investor Group's Motion Is Timely

The notice published in this action on June 6, 2013 advised class members of: (1) the pendency of the action; (2) the claims asserted therein; (3) the proposed class period; and (4) the right to move the Court to be appointed as lead plaintiff by August 5, 2013. *See* Notice, Keller Decl., Ex. C. Because the Institutional Investor Group's motion is timely filed, it is entitled to be considered for appointment as Lead Plaintiff.

### B. The Institutional Investor Group has the Largest Financial Interest in the Relief Sought by the Class

During the Class Period, the Institutional Investor Group expended approximately $128.06 million purchasing more than 2.89 million shares of Barrick Gold common stock on the NYSE at the artificially inflated prices of between $17.82-$55.57 per share and suffered losses of

---

[3] The Institutional Investor Group moves collectively for appointment as lead plaintiff. In the alternative, should the Court decline to appoint it as a group, the Institutional Investor Group members move individually for the appointment of either Union or LRI as lead plaintiff.

$65,841,921.29, whether calculated on a FIFO or LIFO basis.[4]  *See* Certifications and Loss Charts, Keller Decl., Exs. A, B.  To the best of its counsel's knowledge, there are no other plaintiffs with a larger financial interest than the Institutional Investor Group.  Therefore, the Institutional Investor Group satisfies the PSLRA's prerequisite of having the largest financial interest in the relief sought by the Class.

### C. The Institutional Investor Group Satisfies Rule 23 of the Federal Rules of Civil Procedure at This Stage

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  "At the lead plaintiff stage of the litigation, in contrast to the class certification stage, 'a proposed lead plaintiff need only make a "preliminary showing" that it will satisfy the typicality and adequacy requirements of Rule 23.'"  *Sgalambo v. McKenzie*, 268 F.R.D. 170, 173 (S.D.N.Y. 2010) (Scheindlin, J.) (citation omitted).  "'Typicality' 'requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"  *Id.* at 173-74 (citation omitted).  "'The adequacy requirement is satisfied where the proposed Lead Plaintiff does not have interests that are antagonistic to the class that he seeks to represent and has retained counsel that is capable and qualified to vigorously represent the interests of the class . . . .'"  *Id.* at 174 (citation omitted).

---

[4]  Individually, Union has a loss of $48,547,279.87 and LRI has a loss of $17,294,641.42.  The Institutional Investor Group also traded Barrick Gold common stock on the Toronto Stock Exchange during the Class Period.  However, in light of the Supreme Court's decision in *Morrison*, the Institutional Investor Group deems it appropriate at this stage to assert only financial interests for those transactions made on an exchange in the United States.

### 1. The Institutional Investor Group Is Typical

The Institutional Investor Group purchased a substantial amount of Barrick Gold common stock during the Class Period at prices artificially inflated by Defendants' materially false and misleading statements and suffered damages when the truth leaked into the market. The Institutional Investor Group's claims therefore arise from the same factual predicate as those in the complaints. *See id.* at 174. Accordingly, the Institutional Investor Group satisfies the typicality requirement.

### 2. The Institutional Investor Group Is Adequate

First, there is no conflict between the Institutional Investor Group and the Class. Both the Institutional Investor Group and the class seek to recover losses caused by the Defendants' fraud. Second, as explained below, the Institutional Investor Group has selected highly qualified firms with significant experience prosecuting class action lawsuits under the federal securities laws to serve as Lead Counsel and Liaison Counsel for the Class. *See infra* Argument § C; *see also* Joint Decl., ¶ 11, Keller Decl., Ex. D.

In addition to satisfying the requirements of Rule 23, the members of the Institutional Investor Group are precisely the type of investors Congress sought to encourage to assume a more prominent role in securities litigation with the enactment of the PSLRA. *See In re Cendant*, 264 F.3d 201, 244, 264 (3d Cir. 2001) (noting that the PSLRA was designed "to increase the likelihood that institutional investors will serve as lead plaintiff") (quoting H.R. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.A.A.N. 730, 733).

Union and LRI are large and sophisticated institutional investors that manage assets of approximately $149 billion and $11 billion, respectively. Further, Union and LRI have both served as a lead plaintiff in other securities actions and their experience will benefit the Class. *See* Certifications and Joint Decl., Keller Decl., Exs. A, D. Union's familiarity with the

9

PSLRA's requirements is derived from, among other things, its appointment as Co-lead Plaintiff in *Minneapolis Firefighters' Relief Association v. Medtronic, Inc. et al.*, No. 08-cv-06324-PAM-AJB, 2009 WL 1458234 (D. Minn. May 26, 2009). On November 8, 2012, the court approved a settlement resolving all claims in *Medtronic* in exchange for payment of $85 million for the benefit of the class. Similarly, LRI's familiarity with the PSLRA's requirements is derived from its appointment as a Lead Plaintiff in *Bricklayers of Western Pennsylvania Pension Plan v. Hecla Mining Co., et al.*, No. 12-cv-00042-BLW, 2012 WL 2872787 (D. Idaho Jul. 12, 2012). Thus, both Union and LRI possess significant experience leading securities class actions under the PSLRA.

Moreover, Union and LRI have a pre-existing relationship pre-dating their joint motion in this case. The two movants, along with a third institutional investor, jointly filed a motion for appointment as lead plaintiff in *Corzine*. *See* Keller Decl., Ex. E; *see also* Joint Decl., ¶¶ 1,7, Keller Decl., Ex D. Union and LRI's pre-motion relationship is exactly the type of dispositive evidence courts rely upon to appoint groups of investors as lead plaintiff. Even if Union and LRI did not have a pre-existing relationship, the evidence of cohesion set forth in the Joint Declaration would on its own be sufficient to justify their appointment. *See In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) ("[D]emonstrated cooperation among plaintiffs, particularly plaintiffs that are sophisticated institutional investors, satisfies concerns about designating groups as lead plaintiffs that are in fact dominated by counsel"). Here, the Joint Declaration establishes, among other things:

- why Union and LRI decided to jointly seek appointment (*see* Joint Decl., ¶¶ 4-8, Keller Decl. Ex. D);

- the Institutional Investor Group's commitment to maximizing investors' recovery (*see id.* ¶¶ 4, 7, 9, 13);

10

- the Institutional Investor Group's shared interest in demanding meaningful corporate governance reform at Barrick Gold (*see id.* ¶¶ 4, 6);

- Union and LRI's jointly held belief that Barrick Gold's investors will benefit from leadership by dedicated and sophisticated institutional investors who have the necessary experience and resources to oversee this litigation and who are committed to achieving the best possible outcome for investors (*see id.* ¶ 7);

- the Institutional Investor Group's commitment to actively oversee counsel and their specific instructions to counsel to implement reporting mechanisms and procedures to eliminate any risk of duplication of efforts (*see id.* ¶¶ 9-10, 12-13); and

- Union and LRI's capacity to provide the class resources to monitor counsel and oversee the prosecution of this litigation (*see id.* ¶¶ 7-8, 10-12).

Consistent with their obligations to the class, Union and LRI have established procedures for communicating regularly among themselves (with and without counsel as needed) and for resolving any disputes (in the unlikely event a joint decision cannot be reached). *See id.* ¶¶ 10, 12. Thus, the Joint Declaration demonstrates Union and LRI's ongoing cooperation and ability to effectively oversee this litigation. *See id.* ¶¶ 8, 10. Moreover, the Institutional Investor Group is not subject to impediments or unique defenses and there is no evidence that it seeks anything other than the greatest recovery for the class consistent with the merits of the claims.

Union and LRI have also evinced their ability to adequately represent the Class by aligning themselves with counsel that has already gathered significant factual support for the underlying claims. Union and LRI's choice of liaison counsel, Labaton Sucharow, not only has long experience successfully prosecuting securities class actions in this court, but also undertook an extensive investigation into the facts underlying the action against Barrick Gold. As reflected in the *Brockton* Complaint, filed by Labaton Sucharow on behalf of the City of Brockton Retirement System, Labaton Sucharow identified numerous confidential witnesses who revealed information that substantially supports the claims of the Class, including:

- At the time Barrick Gold projected to investors that the costs for the Pascua-Lama Project would range between $2.8 and $3 billion, Barrick Gold was already in possession of an

engineering report estimating costs for the Project at nearly twice that figure. *Brockton* Complaint ¶¶ 12, 41-42, 122;

- The Project was not in compliance with environmental regulations related to dust suppression and glacier protection at least as far back as 2010. *See id*. at ¶ 52;

- The awareness of personnel at Barrick Gold's corporate headquarters of the environmental infractions and skyrocketing costs of the Project. *See id*. at ¶¶ 57-58, 64-65, 120-21; and

- The existence of a March 2012 meeting convened by Barrick Gold personnel, including some from the Company's Toronto offices, to discuss, among other things, the fact that the Project's failure to comply with environmental compliance requirements could result in a shutdown or delay of the Project by regulatory authorities. *See id*. at ¶¶ 77-78, 132.

Because no other firm seeking appointment as lead counsel has access to this information, the Class would be well served by the appointment of Union and LRI.

Courts frequently consider these kinds of investigative efforts in evaluating whether counsel will adequately represent classes of absent investors. *See*, *e.g.*, *In re Mills Corp.*, No. Civ. A. 1:06-77(GEL), 2006 WL 2035391, at *3 (E.D. Va. May 30, 2006) (explaining that "[i]n determining whether counsel would fairly and adequately represent the class, a court must consider: the work counsel has done in identifying or investigating potential claims in the action, counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, counsel's knowledge of the applicable law, and the resources counsel will commit to representing the class[, as well as] any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class") (citing Rule 23(g) of the Federal Rules of Civil Procedure) (quotations omitted); *Medtronic*, 2009 WL 1458234, at *3 (considering, among other factors, counsels' "identifi[cation] or investigat[ion of] potential claims on behalf of the client" in evaluating ability of counsel to represent the class, citing Rule 23(g)).

As such, the Institutional Investor Group satisfies the typicality and adequacy requirements at this stage.

12

...
...

**III.   The Court Should Approve the Institutional Investor Group's Selection of Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). This Court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

The Institutional Investor Group has selected Motley Rice to serve as Lead Counsel and Labaton Sucharow to serve as Liaison Counsel for the proposed Class. Motley Rice has previously been appointed as lead counsel and has a demonstrated ability to work in an efficient fashion in the class's best interests. *See* Motley Rice Firm Resume, Keller Decl., Ex. F. Motley Rice is currently serving as Lead Counsel or Co-lead Counsel in several high profile securities class actions against State Street Corp., Sprint Corp., Hewlett-Packard Co., and Hecla Mining Co., among others. *See id.* Indeed, as the court noted in *In re NPS Pharmaceuticals, Inc. Securities Litigation*, No. 2:06-cv-570, 2006 WL 6627948, at *4 (D. Utah Nov. 17, 2006), Motley Rice has "expertise and experience in the prosecution of shareholder and securities class actions and, as a result, [is] adequate to represent the interests of the class." Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation.

Proposed Liaison Counsel for the Class, Labaton Sucharow, has extensive experience and a demonstrated track record of success as counsel in numerous important securities class actions in the Southern District of New York. Labaton Sucharow is lead counsel in *In re American International Group, Inc. Securities Litigation*, No. 04-cv-8141 (S.D.N.Y.), in which it recently achieved settlements totaling approximately $1 billion. In November 2012, Labaton Sucharow secured a $294.9 million settlement in *In re Bear Stearns Cos., Inc. Securities, Derivative, & ERISA Litigation*, No. 08-md-1963 (S.D.N.Y.), in which the firm served as co-lead counsel.

Labaton Sucharow is currently serving as lead or co-lead counsel in securities class actions cases against Federal National Mortgage Association (Fannie Mae); Goldman Sachs Group, Inc.; MF Global Holdings Ltd.; Facebook, Inc.; and the Hewlett-Packard Company, among others.  *See* Labaton Sucharow Firm Resume, Keller Decl. Ex. G.

Significantly, Motley Rice and Labaton Sucharow have a successful track record of working together cooperatively in the prosecution of securities class actions.  For example, the firms are presently serving as Co-lead Counsel in *Gammel v. Hewlett-Packard Co.*, No. 11-1404 AG (C.D. Cal.).  Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation.  Accordingly, the Court should approve Union and LRI's selection of Motley Rice as Lead Counsel for the Class and Labaton Sucharow as Liaison Counsel for the Class.

## CONCLUSION

For the foregoing reasons, the Institutional Investor Group respectfully requests that the Court: (1) consolidate all Related Actions; (2) appoint the Institutional Investor Group as Lead Plaintiff pursuant to the PSLRA; (3) approve the Institutional Investor Group's selection of Motley Rice to serve as Lead Counsel for the proposed Class; and (4) approve the Institutional Investor Group's selection of Labaton Sucharow to serve as Liaison Counsel for the proposed Class.

DATED:  August 5, 2013                              *Respectfully submitted,*

                                               **LABATON SUCHAROW LLP**

                                               *s/ Christopher J. Keller*
                                                Christopher J. Keller

140 Broadway
New York, NY  10005
Telephone: 212/907-0700
212/818-0477 (fax)
E-mail: ckeller@labaton.com

*Liaison Counsel for Plaintiffs and*
*[Proposed] Liaison Counsel for the Class*

**MOTLEY RICE LLC**
Joseph F. Rice
James M. Hughes
David P. Abel
Christopher F. Moriarty
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
Telephone:  843/216-9000
843/216-9450 (fax)

*[Proposed] Lead Counsel for the Class*

15

**CERTIFICATE OF SERVICE**

I hereby certify that on August 5, 2013, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on August 5, 2013.

*s/ Christopher J. Keller*
Christopher J. Keller

LABATON SUCHAROW LLP
140 Broadway
New York, NY  10005
Telephone: 212/907-0700
212/818-0477 (fax)
E-mail: ckeller@labaton.com