**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- x

LEWIS S. CLARK and PATRICIA E. CLARK, :    No. 1:13-cv-03851-RPP
Individually and on Behalf of All Others    :
Similarly Situated,    :    <u>**CLASS ACTION**</u>
   :
         Plaintiffs,    :    **MEMORANDUM OF LAW IN**
   :    **FURTHER SUPPORT OF THE**
         v.    :    **MOTION OF THE INSTITUTIONAL**
   :    **INVESTOR GROUP FOR**
BARRICK GOLD CORPORATION, AARON    :    **CONSOLIDATION, APPOINTMENT**
W. REGENT, JAMIE C. SOKALSKY, and    :    **AS LEAD PLAINTIFF, AND**
AMMAR AL-JOUNDI,    :    **APPROVAL OF LEAD PLAINTIFF'S**
   :    **SELECTION OF COUNSEL, AND IN**
         Defendants.    :    **OPPOSITION TO THE COMPETING**
   :    **MOTIONS**

-------------------------------------------------------- x

CLEMENT BERNARD, Individually and on    :    No. 1:13-cv-04123-RPP
Behalf of All Others Similarly Situated,    :
   :
         Plaintiff,    :
   :
         v.    :
   :
BARRICK GOLD CORPORATION, AARON    :
W. REGENT, JAMIE C. SOKALSKY, and    :
AMMAR AL-JOUNDI,    :
   :
         Defendants.    :

-------------------------------------------------------- x

CITY OF BROCKTON RETIREMENT    :    No: 1:13-cv-05437-RPP
SYSTEM, Individually and on Behalf of All    :
Others Similarly Situated,    :
   :
         Plaintiff,    :
   :
         v.    :
   :
BARRICK GOLD CORPORATION, AARON    :
W. REGENT, JAMIE C. SOKALSKY, and    :
AMMAR AL-JOUNDI,    :
   :
         Defendants.    :

-------------------------------------------------------- x

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ............................................................................................................ 3

    I.    The Institutional Investor Group Has The Largest Financial Interest In The Relief Sought By The Class ......................................................................... 5

    II.    The Institutional Investor Group Satisfies Rule 23's Typicality And Adequacy Requirements ................................................................................. 6

        A.    The Claims of the Institutional Investor Group Are Typical Of Those Of The Class ......................................................................... 7

        B.    The Institutional Investor Group Is An Adequate Representative For The Class ................................................................. 7

    III.    The Motions Of The Other Proposed Lead Plaintiffs Are Defective And Should Be Denied ................................................................................... 9

        A.    The Court Should Deny the Motions of Investors Who Benefited From Barrick Gold's Alleged Fraud ................................................ 10

        B.    The Court Should Deny the Motions of "In-And-Out" Traders ......................... 12

        C.    The Competing Movants Are Inadequate And Atypical In Light Of Their Failure To Demonstrate That Their Transactions Were Executed On The New York Stock Exchange ................................. 13

CONCLUSION .......................................................................................................... 14

i

# TABLE OF AUTHORITIES

## CASES

*In re Able Labs. Sec. Litig.*,
  425 F. Supp. 2d 562 (D.N.J. 2006) .......................................................................10

*Andrada v. Atherogenics, Inc.*,
  No. 05 Civ. 00061 (RJH), 2005 WL 912359 (S.D.N.Y. Apr. 18, 2005) ...............11

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
  258 F.R.D. 260 (S.D.N.Y. 2009) ..........................................................................8

*Barnet v. Elan Corp.*,
  236 F.R.D. 158 (S.D.N.Y. 2005) ..........................................................................5

*In re Bausch & Lomb Inc. Sec. Litig.*,
  244 F.R.D. 169 (W.D.N.Y. 2007) ...................................................................10, 11

*Bensley v. FalconStor Software, Inc.*,
  277 F.R.D. 231 (E.D.N.Y. 2011) ..........................................................................12

*Borochoff v. Glaxosmithkline PLC*,
  246 F.R.D. 201 (S.D.N.Y. 2007) ..........................................................................10

*In re Cavanaugh*,
  306 F.3d 726 (9th Cir. 2002) ............................................................................5, 7

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ..................................................................................8

*In re Comdisco Secs. Litig.*,
  150 F. Supp. 2d 943 (N.D. Ill. 2001) ...................................................................11

*In re Comverse Tech., Inc. Secs. Litig.*,
  No. 06-cv-1825 (NGG), 2007 WL 68077 (E.D.NY. Mar. 2, 2007) .......................12

*Dura Pharms, Inc. v. Broudo*,
  544 U.S. 336 (2005) ............................................................................................12

*In re eSpeed, Inc. Sec. Litig.*,
  232 F.R.D. 95 (S.D.N.Y. 2005) ..............................................................................4

*In re Eaton Vance Corp. Sec. Litig.*,
  219 F.R.D. 38 (D. Mass. 2003) ............................................................................10

*In re Flag Telecom Holdings, Ltd. Secs. Litig.*,
  574 F.3d 29 (2d Cir. 2009) ..................................................................................12

*Foley v. Transocean Ltd.*,
  272 F.R.D. 126 (S.D.N.Y. 2011) ...................................................................4, 5, 10

*Freudenberg v. ETrade Fin. Corp.*,
   No. 07 Civ. 8538, 2008 WL 2876373 (S.D.N.Y. July 16, 2008) ..........................................13

*In re Gen. Elec. Sec. Litg.*,
   No. 09 Civ. 1951 (DC), 2009 WL 2259502 (S.D.N.Y. July 29, 2009) ...................................4

*Glauser v. EVCI Ctr. Colls. Holding Corp.*,
   236 F.R.D. 184 (S.D.N.Y. 2006) .........................................................................................3

*Goldstein v. Puda Coal, Inc.*,
   827 F. Supp. 2d 348 (S.D.N.Y. 2011) .................................................................................5

*Jolly Roger Offshore Fund LTD v. BKF Capital Grp. Inc.*,
   No. 07 Civ. 3923 (RWS), 2007 WL 2363610 (S.D.N.Y. Aug. 16, 2007) ...........................3, 4

*In re McKesson HBOC, Inc. Sec. Litig.*,
   97 F. Supp. 2d 993 (N.D. Cal. 1999) .................................................................................11

*Minneapolis Firefighters' Relief Ass'n v. Medtronic*,
   No. 08-6324 (PAM/AJB), 2009 U.S. Dist. LEXIS 44047 (D. Minn. May 26, 2009) ..............8

*Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.*,
   No. 08-6324 (PAM/AJB), 2009 U.S. Dist. LEXIS 126342 (D. Minn. Apr. 24, 2009) ...........5

*Morrison v. National Australia Bank Ltd.*,
   130 S. Ct. 2869 (2010) ..................................................................................................13, 14

*Perlmutter v. Intuitive Surgical, Inc.*,
   No. 10-cv-03451, 2011 WL 566814 (N.D. Cal. Feb. 15, 2011) .....................................10, 11

*In re SLM Corp. Secs. Litig.*,
   258 F.R.D. 112 (S.D.N.Y. 2009) ........................................................................................12

*Sgalambo v. McKenzie*,
   268 F.R.D. 170 (S.D.N.Y. 2010) ......................................................................................6, 7

## DOCKETED CASES

*Clark v. Barrick Gold Corp.*,
   No. 1:13-cv-03851-RPP (S.D.N.Y. June 5, 2013) .................................................................1

## RULES & STATUTES

Fed. R Civ. P. 23 ......................................................................................................1, 2, 6, 7

15 U.S.C. § 78u-4 *et seq.* ..................................................................................... *passim*

Union Asset Management Holding AG ("Union") and LRI Invest S.A. ("LRI") (collectively, the "Institutional Investor Group") respectfully submit this memorandum in further support of their motion for appointment as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, *et seq.* (ECF No. 15),[1] and in opposition to the competing motions filed by Central States, Southeast and Southwest Areas Pension Fund ("Central States") (ECF No. 21) and Retail Wholesale & Department Store Union Local 338 Pension Fund ("Retail") (ECF No. 8).[2]

## PRELIMINARY STATEMENT

The Institutional Investor Group suffered losses of more than $65.8 million, whether calculated under a first-in-first-out ("FIFO") or last-in-first-out ("LIFO") basis, from its purchases of Barrick Gold Corporation ("Barrick Gold" or the "Company") common stock—a financial interest that is ***more than 12 times greater*** than the movant claiming the next highest loss, and more than five times greater than the losses claimed by all of the competing movants ***combined***.  Moreover, each member of the Institutional Investor Group ***individually*** suffered larger losses, purchased more total shares, purchased more net shares, and expended more net funds than the competing movants combined.  There is no metric used by courts to assess

---

[1]    Unless otherwise noted, references to "ECF No. __" are to filings in *Clark v. Barrick Gold Corp., et al.*, No. 1:13-cv-03851-RPP (S.D.N.Y. June 5, 2013).  Unless otherwise noted, all emphases herein are added.

[2]    Three other movants have withdrawn their motions.  On August 6, 2013, James Duncan, withdrew his competing motion for Lead Plaintiff.  (ECF No. 25).  The International Painters and Allied Trades Industry Pension Fund ("Painters"), Rhondda Cynon Taf Pension Fund ("Rhondda"), and Pension Fund and Treasury of Surrey ("Surrey") (collectively, the "IIG2") filed a response supporting the motion of the Institutional Investor Group on August 21, 2013.  (ECF No. 28).  Lewis S. Clark and Patricia E. Clark  filed a notice of withdrawal of their motion of August 21, 2013, noting that "it appears that movants Union Asset Management Holding AG and LRI Invest S.A. (the "Institutional Investor Group") collectively possess the largest financial interest in the litigation and preliminarily satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure."  (ECF No. 30).

financial interest that favors any of the competing movants (compared to the Institutional Investor Group as a group or compared to its members).  Indeed, as another competing movant composed of three institutional investors has acknowledged, the Institutional Investor Group "appears to have by far the largest financial interest in the relief sought in this case."[3]

In addition to possessing the largest financial interest, the Institutional Investor Group—consisting of two large and experienced institutional investors with a relationship pre-existing their current motion—is the only movant that readily satisfies the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  By virtue of the community in which Union and LRI both work, the members of the Institutional Investor Group share a history of collaboration.  Among other things, they are members of the German Investment Funds Association, BVI Bundesverband Investment und Asset Management e.V., an organization that meets monthly to discuss common financial interests.  Springing from that relationship, both members of the group retained the same counsel for advice on U.S. securities matters.  Through these associations, in addition to having previously worked together in seeking appointment as lead plaintiff in another securities class action, these sophisticated institutional investors have logically joined together in their motion for appointment as lead plaintiff in the instant action.  The Joint Declaration submitted by the Institutional Investor Group with its opening motion demonstrates its commitment to actively direct this litigation, and the significant measures its members have taken to formalize their joint leadership of this action and to protect the class, which will benefit from the commitment and resources of the Institutional Investor Group's dedicated staffs of professionals.  *See* Joint Decl., ECF No. 20-4.  In short, the

---

[3] ECF No. 28 at 1.

Institutional Investor Group is the prototypical Lead Plaintiff contemplated by Congress in enacting the PSLRA.  15 U.S.C. § 78u-4(a)(3)(B).

Because the Institutional Investor Group has the largest financial interest in the litigation and has made a *prima facie* showing of its typicality and adequacy, it is entitled to a strong presumption that it is the most adequate plaintiff.  The PSLRA provides that the presumption can only be rebutted "upon ***proof***" that the members of the Group are inadequate or atypical.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Here, no such "proof" exists because there are no grounds to challenge the Institutional Investor Group's typicality or adequacy.  *See Glauser v. EVCI Ctr. Colls. Holding Corp.*, 236 F.R.D. 184, 189-90 (S.D.N.Y. 2006) (rejecting "speculative and hypothetical argument that [presumptive lead plaintiff] ***might*** be subject to a later attack by Defendants") (emphasis in original).  Finally, the motions of the other lead plaintiff movants are defective.  Accordingly, the Institutional Investor Group's motion should be granted, and all other motions should be denied.

## ARGUMENT

Under the PSLRA, the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23," is entitled to the rebuttable presumption of Lead Plaintiff status.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Jolly Roger Offshore Fund LTD v. BKF Capital Grp. Inc.*, No. 07 Civ. 3923(RWS), 2007 WL 2363610, at *3 (S.D.N.Y. Aug. 16, 2007) (Sweet, J.) (reciting the prerequisites for the lead plaintiff presumption).  Although the PSLRA does not define the term "largest financial interest," courts in this Circuit often look to four factors in assessing movants' financial stakes: (1) the number of shares purchased by the movant during the Class Period; (2) the number of net shares purchased by the movant during the Class Period; (3) the total net funds expended by the movant during the Class Period; and (4) the approximate losses suffered by the movant.  *See,*

*e.g.*, *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 127-28 (S.D.N.Y. 2011) (noting that Second Circuit courts apply the four factor test set forth in *Lax v. First Merchants Acceptance Corp.*, No. 97 Civ. 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)) (citations omitted); *In re Gen. Elec. Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 WL 2259502, at *4 (S.D.N.Y. July 29, 2009) (reciting the four factors considered by courts in evaluating movants' financial interest). Courts have placed the most emphasis on the last of the four factors: the approximate loss suffered by the movant. *See Foley*, 272 F.R.D. at 128 ("Although courts have differed on how much weight to assign to each of the *Lax* factors, we, as have other courts, shall place the most emphasis on the last of the four factors: the approximate loss suffered by the movant.") (citation omitted); *In re Gen. Elec.*, 2009 WL 2259502, at *11 (noting that "[c]ourts have generally placed the greatest emphasis on the last factor: the loss suffered by the movant") (citation omitted). Further, courts in this District have a general preference for the LIFO loss calculation methodology. *See, e.g.*, *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 101 (S.D.N.Y. 2005) (explaining that "[t]he main advantage of LIFO is that, unlike FIFO, it takes into account gains that might have accrued to plaintiffs during the class period due to the inflation of the stock price") (citation omitted).

The movant that has demonstrated that it has the largest financial interest in the relief sought by the class need only make a *prima facie* showing that it satisfies the typicality and adequacy requirements of Rule 23. *See Jolly Roger Offshore Fund*, 2007 WL 2363610, at *4 ("In fact, a wide ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification.") (internal quotations and citations omitted).

Once this strong presumption is triggered (as here), it may only be rebutted upon "***proof***," not mere speculation, that the presumptive Lead Plaintiff will not fairly represent the interests of the class. *Id.* at *3; *see also Foley*, 272 F.R.D. at 133 ("[T]he conflict of interest must be shown,

4

not merely speculated, in order to rebut the presumption of the most adequate lead plaintiff."); *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job.").  The Institutional Investor Group, with losses in excess of $65.8 million, undoubtedly has the largest financial interest, satisfies the requirements of Rule 23, and should be appointed Lead Plaintiff.

## I.     The Institutional Investor Group Has The Largest Financial Interest In The Relief Sought By The Class

With losses of more than $65.8 million under either a FIFO or LIFO calculation method, the Institutional Investor Group, as demonstrated below, asserts a financial interest that is ***more than 12 times greater*** than the loss of the competing movant claiming the next largest financial interest, Central States, which claims losses of only $5.4 million.  Indeed, the Institutional Investor Group's losses are more than five times greater than the losses claimed by all of the competing movants ***combined***.  Additionally, Union and LRI, whether considered together or individually, suffered larger losses, purchased more total shares, purchased more net shares, and expended more net funds than all of the movants combined, as reflected in the chart below.  *See Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.*, No. 08-6324 (PAM/AJB), 2009 U.S. Dist. LEXIS 126342, at *9-10 (D. Minn. Apr. 24, 2009) ("*Medtronic*") (concluding that group movant was appropriate lead plaintiff given that each member's losses were "equal or greatly exceed the claimed loss" of the competing movant); *Barnet v. Elan Corp.*, 236 F.R.D. 158, 163 (S.D.N.Y. 2005) (concluding group appropriately appointed lead plaintiff when one individual group member asserted larger loss than competing movants); *Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 356  (S.D.N.Y. 2011) (same).

| Movant | Total Shares Purchased | Net Shares Purchased | Net Funds Expended | FIFO Loss | LIFO Loss |
|---|---|---|---|---|---|
| Union | 1,528,550 | 1,528,550 | ($75,209,871) | ($48,547,280) | ($48,547,280) |
| LRI | 1,363,662 | 626,000 | ($28,310,678) | ($17,294,641) | ($17,294,641) |
| **Institutional Investor Group Total** | **2,892,212** | **2,154,550** | **($103,520,549)** | **($65,841,921)** | **($65,841,921)** |
| **Central States Total** | **364,150** | **(98,900)** | **($2,086,438)** | **($5,448,049)** | **($5,448,049)** |
| Painters | 383,900 | 106,500 | ($3,341,106) | ($3,564,218) | ($2,711,718) |
| Surrey | 63,435 | (32,285) | $352,684 | ($1,207,181) | ($573,137) |
| Rhondda | 91,958 | (55,567) | $577,532 | ($1,844,845) | ($1,016,012) |
| **IIG2 Total** | **539,293** | **18,648** | **($2,410,890)** | **($6,616,244)** | **($4,300,867)** |
| **Retail Total** | **331,950** | **59,350** | **($1,361,930)** | **($3,414,448)** | **($1,698,275)** |
| Lewis S. Clark | 16,400 | 16,400 | ($701,806) | ($416,118) | ($416,118) |
| Patricia E. Clark | 15,700 | 15,700 | ($681,591) | ($408,097) | ($408,097) |
| **Clark Total** | **32,100** | **32,100** | **($1,383,397)** | **($824,215)** | **($824,215)** |
| Designated Bene Plan | 43,051 | 0 | ($15,860) | ($15,860) | ($15,860) |
| IRA Rollover | 65,000 | 12,000 | ($379,836) | ($169,733) | ($169,733) |
| **James Duncan Total** | **108,051** | **12,000** | **($395,696)** | **($185,593)** | **($185,593)** |

In light of these measures, the Institutional Investor Group clearly meets the largest financial interest prong of the Lead Plaintiff presumption.

## II.    The Institutional Investor Group Satisfies Rule 23's Typicality And Adequacy Requirements

Once a court identifies the movant with the largest financial interest—here, the Institutional Investor Group—that movant is the presumptive "most adequate plaintiff" if it also "satisfies the requirements of Rule 23."   15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).   "At the lead plaintiff stage of the litigation, in contrast to the class certification stage, 'a proposed lead plaintiff need only make a "preliminary showing" that it will satisfy the typicality and adequacy requirements of Rule 23.'"   *Sgalambo v. McKenzie*, 268 F.R.D. 170, 173 (S.D.N.Y. 2010)

6

(Scheindlin, J.) (citation omitted); *see also In re Cavanaugh*, 306 F.3d at 732 ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status . . . ."). As set forth in its opening papers, the Institutional Investor Group easily meets these requirements.

### A.     The Claims of the Institutional Investor Group Are Typical Of Those Of The Class

"Typicality requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Sgalambo*, 268 F.R.D. at 173-74 (internal quotations and citation omitted). The Institutional Investor Group satisfies the typicality requirement because, like all proposed class members, it: (1) purchased or otherwise acquired Barrick Gold common stock during the Class Period on an American exchange; (2) at prices that were artificially inflated by defendants' materially false and misleading statements and/or omissions; and (3) suffered damages when corrective disclosures removed the inflation created by the defendants' conduct causing the price of Barrick Gold's common stock to fall. *See id.* at 174.

### B.     The Institutional Investor Group Is An Adequate Representative For The Class

A lead plaintiff movant is adequate if "the proposed Lead Plaintiff does not have interests that are antagonistic to the class that he seeks to represent and has retained counsel that is capable and qualified to vigorously represent the interests of the class . . . .'" *Id.* (citation omitted). The Institutional Investor Group readily satisfies both elements. First, no antagonism exists between the interests of the Institutional Investor Group and those of Class members; rather, their interests are squarely aligned. Second, as explained in its opening brief, the

7

Institutional Investor Group has retained counsel experienced in prosecuting securities fraud class actions.

In addition, the Institutional Investor Group is precisely the type of lead plaintiff that Congress contemplated when enacting the PSLRA.  The members of the group are experienced institutional investors with a pre-existing relationship both as members of the German Investment Funds Association, BVI Bundesverband Investment und Asset Management e.V., that meets monthly to discuss common financial interests, and by virtue of having previously worked together in seeking appointment in another securities class action.  *See In re Cendant Corp. Litig.*, 264 F.3d 201, 243-44 (3d Cir. 2001) ("The plaintiff with the largest stake in a given securities class action will almost invariably be a large institutional investor, and the PSLRA's legislative history expressly states that Congress anticipated and intended that such investors would serve as lead plaintiffs."); *see also Medtronic*, 2009 U.S. Dist. LEXIS 44047, at *5-6 (appointing group of institutional investors, which included movant Union, as Lead Plaintiff, and appointing Motley Rice, LLC as Co-Lead Counsel).

Moreover, the Institutional Investor Group has demonstrated its commitment to working cohesively in the prosecution of this litigation in its Joint Declaration.  *See* Joint Decl., ECF No. 20-4.  The Joint Declaration details, among other things, the intent and ability of the members of the Institutional Investor Group to efficiently and zealously represent the Class separately and apart from their counsel.  *See In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) ("[D]emonstrated cooperation among plaintiffs, particularly plaintiffs that are sophisticated institutional investors, satisfies concerns about designating groups as lead plaintiffs that are in fact dominated by counsel.").  Specifically, the Joint Declaration informs the Court of the circumstances leading to Union and LRI's independent decisions to jointly seek appointment as Lead Plaintiff (*see* Joint Decl. ¶¶ 4-8); the Institutional

Investor Group's commitment to maximizing investors' recovery (*see id.* ¶¶ 6, 9, 13); the Institutional Investor Group's shared interest in demanding meaningful corporate governance reform at Barrick Gold (*see id.* ¶¶ 4, 6); Union and LRI's experience serving as Lead Plaintiff in other securities actions (*see id.* ¶¶ 2-3); Union and LRI's jointly held belief that Barrick Gold's investors will benefit from leadership by dedicated and sophisticated institutional investors who have the necessary experience and resources to oversee this litigation and who are committed to achieving the best possible outcome for investors (*see id.* ¶ 8); the Institutional Investor Group's commitment to actively oversee counsel and their specific instructions to counsel to implement reporting mechanisms and procedures (*see id.* ¶¶ 9-10, 12-13); Union and LRI's capacity to provide the class resources to monitor counsel and ensure the efficient prosecution of this litigation (*see id.* ¶¶ 7-8, 10-12); and Union and LRI's establishment of procedures for communicating regularly among themselves and for resolving any disputes (in the unlikely event a joint decision cannot be reached) (*see id.* ¶¶ 10, 12).

Accordingly, the Institutional Investor Group has readily established its typicality and adequacy under the *prima facie* standard required by the PSLRA. This showing, coupled with the Institutional Investor Group's loss of over $65.8 million, renders it an ideal Lead Plaintiff under the PSLRA, and its motion should be granted.

## III.    The Motions Of The Other Proposed Lead Plaintiffs Are Defective And Should Be Denied

Any additional inquiry into the suitability of the remaining competing movants to serve as Lead Plaintiff is unnecessary, because the Institutional Investor Group has met all of the criteria required for appointment as Lead Plaintiff. Regardless, even a cursory

review of the competing motions for Lead Plaintiff underlines the remaining movants'

deficiencies.[4]

A.     **The Court Should Deny the Motions of Investors Who Benefited From Barrick Gold's Alleged Fraud**

Because a lead plaintiff is supposed to represent the interests of investors who were

*injured* by a fraud, courts often decline to appoint as lead plaintiff investors who sold more

shares than they purchased during a class period, called "net sellers," due to concern that they

benefited from a fraud by selling shares at inflated prices.  *See Foley*, 272 F.R.D. at 132

(explaining that "courts are . . . hesitant to appoint net sellers [even when, during the Class

Period, they spend more buying stock than they receive from sales of stock] because the loss

ultimately suffered was 'less than it would have been had the [securities] been trading at fair

market value'") (quoting *In re Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D. 169, 171-72

(W.D.N.Y. 2007)); *Borochoff v. Glaxosmithkline PLC*, 246 F.R.D. 201, 205 (S.D.N.Y. 2007)

(although "a net seller" "nevertheless may have sustained a small loss (or, depending on the

accounting method chosen, a gain) it does not adequately represent the proposed class of

purchasers"); *see also Perlmutter v. Intuitive Surgical, Inc.*, No. 10-cv-03451, 2011 WL 566814,

at *8 (N.D. Cal. Feb. 15, 2011) ("In general, net purchasers [who bought more shares than they

---

[4]     As a preliminary matter, Central States' entire Motion may be untimely because of defects with its Certification, in which its representative attested that the movant is a "NAMED PLAINTIFF."  ECF No. 23-3.  Additionally, the representative has sworn that the "Plaintiff has reviewed a complaint and authorized its filing."  *Id.*  In fact, Central States is *not* a named plaintiff, and there is no evidence that Central States was ever in a position to authorize any of the complaints filed that relate to this action.  Should Central States choose to untimely amend these errors, it would violate the 60-day time limit imposed by the PSLRA.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).  In certain instances, failing to comply with the PSLRA's strict time limit is ample reason for the Court to deny a movant's motion.  *See In re Eaton Vance Corp. Sec. Litig.*, 219 F.R.D. 38, 42 (D. Mass. 2003) (concluding that a plaintiff who failed to file the required certification within the 60-day period may not serve as lead plaintiff); *In re Able Labs. Sec. Litig.*, 425 F. Supp. 2d 562, 565-66 (D.N.J. 2006) (noting that the putative lead plaintiff must file his certification within the same 60 days he is given to move for appointment as lead plaintiff).

sold during a class period] have a greater interest in a securities lawsuit because a net purchaser was induced by the fraud to purchase shares and has been left 'holding the bag' when the fraud is eventually revealed."), *In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 997 (N.D. Cal. 1999) ("[A] net seller has arguably ***profited*** more from the fraud than it has been injured, possibly reducing its incentive to litigate") (emphasis in original).

In particular, courts in the Second Circuit and throughout the country are hesitant to appoint net sellers who also earned more in proceeds from the sale of shares purchased during the class period than they spent purchasing shares during a class period, called "net gainers." *See, e.g., Andrada v. Atherogenics, Inc.*, No. 05 Civ. 00061 (RJH), 2005 WL 912359, at *3-4 (S.D.N.Y. Apr. 18, 2005) (disqualifying net gainer as lead plaintiff for deficiencies under Rule 23); *In re Bausch & Lomb*, 244 F.R.D. at 174 ("I agree with the rationale of those courts finding that net sellers and net gainers, . . . are ill-suited to serve as lead plaintiffs.  If nothing else, its status as a net gainer may 'subject [it] to unique defenses that render such plaintiff incapable of adequately representing the class.'"); *In re Comdisco Secs. Litig.*, 150 F. Supp. 2d 943, 946 (N.D. Ill. 2001) (finding that net seller and net gainer status rendered movant "totally out of the running for designation as lead plaintiff").

As summarized in the chart above, several of the movants are Net Sellers and/or Net Gainers.  *See supra* Section I.  Central States, a Net Seller, sold 98,900 more shares than it purchased during the Class Period.  In addition, Surrey and Rhondda of IIG2 were also Net Sellers, selling 32,285 and 55,567 more shares, respectively, than they purchased during the Class Period, and Net Gainers, netting $352,684 and $577,532, respectively, from their purchases of Barrick Gold common stock during the Class Period.

Consequently, Central States, as a Net Seller, is subject to unique defenses that renders it incapable of adequately representing the entire Class.

**B.**      **The Court Should Deny the Motions of "In-And-Out" Traders**

For similar reasons, courts often reject the lead plaintiff applications of "in-and-out traders" who purchased securities during the Class Period but then completely sold out before any disclosure of fraud.  *See Dura Pharms, Inc. v. Broudo*, 544 U.S. 336, 342 (2005).  "[I]t is clear that under *Dura* and its progeny, any losses that [movant] may have incurred before [defendant's] misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in this litigation."  *In re Comverse Tech., Inc. Secs. Litig.*, No. 06-cv-1825 (NGG)(RER), 2007 WL 680779, at *4 (E.D.N.Y. Mar. 2, 2007).  Moreover, the question of whether "in-and-out traders will be able to show loss causation is relevant to Rule 23(a)," which requires a court to show that a class representative "is both an adequate and typical representative of the class and not subject to any 'unique defenses which threaten to become the focus of the litigation.'"  *In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 574 F.3d 29, 39-40 (2d Cir. 2009) (citations omitted); *see also Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 241 (E.D.N.Y. 2011) (holding that "[movant] has failed to demonstrate that it will be an adequate lead plaintiff because it was a total in-and-out trader and may be unable to demonstrate loss causation"); *In re SLM Corp. Secs. Litig.*, 258 F.R.D. 112, 116 (S.D.N.Y. 2009) (holding that an investor does not satisfy the adequacy or typicality requirements of Rule 23 when "it faces unique legal issues that other class members do not").

The Related Actions allege two disclosures occurring on April 10, 2013, and May 24, 2013.  Unlike the Institutional Investor Group, which retained shares through both disclosures, including more than 2.1 million shares through the end of the Class Period, movants Central States disposed of ***all*** of its shares purchased during the Class Period ***before*** the May 24, 2013 disclosure (as did Surrey and Rhondda).  Failure to retain shares through the end of the Class Period disclosure subjects Central States to unique defenses.  Among other things, Central States

may have to litigate against a motion to dismiss based on a lack of standing since they suffered no injury relating to the May 24, 2013 disclosure.

Because Central States suffered no losses as a result of the later disclosure,  it is unable to satisfy the Rule 23 requirements.  Moreover, it might not have any financial interest in litigating the merits of that disclosure to begin with.  Therefore, even if Central States had the largest financial interest in this case, which it does not, Central States cannot be an appropriate representative for Class members with damages caused by the disclosure that ended the Class Period .

### C.     The Competing Movants Are Inadequate And Atypical In Light Of Their Failure To Demonstrate That Their Transactions Were Executed On The New York Stock Exchange

In evaluating adequacy and typicality for the purposes of satisfying Rule 23's requirement, the Court should consider whether a lead plaintiff applicant suffers from any handicap not typical of absent class members.  *See, e.g., Freudenberg v. E\*Trade Fin. Corp.*, No. 07 Civ. 8538, 2008 WL 2876373, at \*6 (S.D.N.Y. July 16, 2008) (Sweet, J.) (considering whether potential unique defenses could "risk diverting the focus of the litigation" in determining the typicality of a movant's claims).  Here, despite the fact that Barrick Gold common stock actively trades on both the New York Stock Exchange ("NYSE") and Toronto Stock Exchange ("TSE"), movants Retail and the Clarks failed to indicate whether their claimed losses were a result of trading conducted on a U.S. stock exchange.  The Institutional Investor Group was the only movant that affirmatively provided the trading exchange used and stated that all of its claimed losses are from trading on a U.S. stock exchange.  *See* ECF Nos. 19 at 2, 20-1, 20-2.

In *Morrison v. National Australia Bank Ltd.*, 130 S. Ct. 2869, 2884 (2010), the U.S. Supreme Court held that the scope of U.S. federal securities law is limited to "transactions in

13

securities listed on domestic exchanges, and domestic transactions in other securities." The dearth of information provided by Retail and the Clarks, and the fact that the U.S. and Canadian currency were similar in price during the Class Period, makes it impossible for the Court to determine whether Retail executed transactions in Barrick Gold stock on the NYSE or TSX. Accordingly, Retail may be subject to a unique defense as to their standing to advance claims under the federal securities laws and serve as a representative for absent investors.

In summary, all of the competing movants' motions suffer from various deficiencies that preclude their appointment as Lead Plaintiff. Therefore, in addition to having the greatest financial interest, the Institutional Investor Group is the only movant that satisfies the adequacy and typicality requirements of Rule 23.

## CONCLUSION

For the reasons set forth above and in its opening papers, the Institutional Investor Group respectfully requests that the Court: (1) consolidate all related actions; (2) appoint the Institutional Investor Group as Lead Plaintiff pursuant to the PSLRA; (3) approve the Institutional Investor Group's selection of Motley Rice LLC to serve as Lead Counsel for the proposed Class; (4) approve the Institutional Investor Group's selection of Labaton Sucharow LLP to serve as Liaison Counsel for the proposed Class; and (5) deny all other motions.


DATED: August 22, 2013                    *Respectfully submitted*,

                                          **LABATON SUCHAROW LLP**

                                              *s/ Christopher J. Keller*
                                          Christopher J. Keller

140 Broadway
New York, NY 10005
Telephone: 212/907-0700
212/818-0477 (fax)

*Liaison Counsel for Plaintiffs and*
*[Proposed] Liaison Counsel for the Class*


**MOTLEY RICE LLC**
William H. Narwold
One Corporate Center
20 Church St., 17th Floor
Hartford, CT  06103
Telephone:  860/882-1681
860/882-1682 (fax)

**MOTLEY RICE LLC**
Joseph F. Rice
James M. Hughes
David P. Abel
Christopher F. Moriarty
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
Telephone:  843/216-9000
843/216-9450 (fax)

*[Proposed] Lead Counsel for the Class*

15

**CERTIFICATE OF SERVICE**

I hereby certify that on August 22, 2013, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on August 22, 2013.

*s/ Christopher J. Keller*
Christopher J. Keller

LABATON SUCHAROW LLP
140 Broadway
New York, NY  10005
Telephone: 212/907-0700
212/818-0477 (fax)
E-mail: ckeller@labaton.com