UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

In re BARRICK GOLD SECURITIES
LITIGATION

This Document Relates To:

        ALL ACTIONS.

———————————————————— x

:
:
:
:
:
:
:
:
:
:

Civil Action No. 1:13-cv-03851 (SAS)

CLASS ACTION

Hon. Shira A. Scheindlin

ECF Case

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS
REPRESENTATIVES, AND APPOINTMENT OF CLASS COUNSEL**

## TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ..........................................................................................1

II.     ARGUMENT....................................................................................................................2

     A.      Plaintiffs Satisfy the Requirements for Class Certification ....................................2

     B.      There Is No Basis to Alter the Class Period at This Stage.......................................7

III.    CONCLUSION...............................................................................................................10

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  133 S. Ct. 1184 (2013) .............................................................................3, 5

*Betances v. Fischer*,
  304 F.R.D. 416 (S.D.N.Y. 2015) ....................................................................3

*Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*,
  310 F.R.D. 69 (S.D.N.Y. 2015) ......................................................................3

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013)...........................................................................1, 3, 4, 5

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974)........................................................................................7

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  131 S. Ct. 2179 (2011)............................................................................4, 5 ,6, 9

*Fosbre v. Las Vegas Sands Corp.*,
  No. 2:10-CV-00765-APG-GWF, 2015 WL 3722496
  (D. Nev. June 15, 2015) ............................................................................4, 5

*Freudenberg v. E*Trade Fin. Corp.*,
  712 F. Supp. 2d 171 (S.D.N.Y. 2010).............................................................10

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  134 S. Ct. 2398 (2014) .............................................................................4, 5, 6

*Heerwagen v. Clear Channel Commc'ns*,
  435 F.3d 219 (2d Cir. 2006)...........................................................................7

*In re Barrick Gold Sec. Litig.*,
  No. 13 Civ 3851 (SAS), 2015 WL 1514597
  (S.D.N.Y. Apr. 1, 2015)........................................................................6, 8, 10

*In re Diamond Foods, Inc. Securities Litigation*
  295 F.R.D. 240 (N.D. Cal. 2013).....................................................................5

*In re Gaming Lottery Sec. Litig.*,
  58 F. Supp. 2d 62 (S.D.N.Y. 1999)...............................................................7, 8

*In re HP Securities Litigation*,
  No. C 12-05980 (N.D. Cal.)............................................................................7

Page

*In re Interpublic Sec. Litig.*,
   No. 02 CIV 6527 (DLC), 2003 WL 22509414
   (S.D.N.Y. Nov. 6, 2003) ....................................................................................8

*In re Omnicom Group, Inc. Sec. Litig.*,
   No. 02 Civ. 4483 (RCC), 2007 WL 1280640
   (S.D.N.Y. Apr. 30, 2007)....................................................................................8

*In re Scotts EZ Seed Litig.*,
   304 F.R.D. 397 (S.D.N.Y. 2015) ........................................................................4

*Jimenez v. Allstate Insurance Co.*,
   765 F.3d 1161 (9th Cir. 2014) ............................................................................4

*Ludlow v. BP, p.l.c.*,
   800 F.3d 674 (5th Cir. 2015) ......................................................................2, 6, 7, 9

*Neale v. Volvo Cars of N. Am., LLC*,
   794 F.3d 353 (3d Cir. 2015)................................................................................4

*Pulaski & Middleman, LLC v. Google, Inc.*,
   802 F.3d 979 (9th Cir. 2015) ..............................................................................4

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015)........................................................................1, 3, 4

*Sicav v. James Jun Wang*,
   No. 12 Civ. 6682 (PAE), 2015 WL 268855
   (S.D.N.Y. Jan. 21, 2015)................................................................................2, 3

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure
   Rule 23 ...........................................................................................................2, 5
   Rule 23(a)...................................................................................................1, 2, 7
   Rule 23(b) .........................................................................................................1
   Rule 23(b)(3).............................................................................................1, 3, 4

Lead Plaintiffs LRI Invest S.A. and Union Asset Management Holding AG ("Lead Plaintiffs" or "Plaintiffs")[1] respectfully submit this reply memorandum of law in further support of their motion for class certification, appointment of class representatives, and appointment of class counsel and in response to the memorandum of law in opposition to Lead Plaintiffs' motion filed by Defendants.

## I.      PRELIMINARY STATEMENT

Defendants do not dispute that Lead Plaintiffs satisfy Federal Rule of Civil Procedure ("Rule") 23(a).  Nor do Defendants claim that the market for Barrick Gold stock was in any way inefficient.  Instead, Defendants contend that the class should not be certified under Rule 23(b) because, in their view (and contrary to that of the Second Circuit), predominance for damages can only be shown by the inclusion of a damages model with a class certification motion.  Defendants' only other argument is that, following the Court's ruling on the motion to dismiss, the Class Period should be narrowed.  Defendants are wrong on both points.

First, Defendants have not cited a single case asserting traditional claims under the federal securities laws, in which plaintiffs seek out-of-pocket damages, that require plaintiffs to offer a damages model in support of their motion for class certification to demonstrate predominance.  That is because plaintiffs in securities class actions are simply not ***required*** to offer a damages model in support of their motion for class certification.  Indeed, the Second Circuit made clear in *Roach v. T.L. Cannon Corp.*, 778 F.3d 401 (2d Cir. 2015), that *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013), upon which Defendants' argument hinges, does ***not*** require district courts to first find that damages are capable of class-wide measurement before certifying a class under Rule 23(b)(3).

---

[1]    Capitalized terms not otherwise defined have the meaning given in Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Class Certification (ECF No. 108). Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel is referred to herein as "Defs.' Mem."  All internal citations are omitted and all emphases are added unless otherwise noted.

Defendants hypothesize that the "clear" reason Plaintiffs did not offer a damages model is because they "seek to preserve their ability to seek consequential (as opposed to out-of-pocket) damages while, at the same time, avoiding the Fifth Circuit's holding in *Ludlow v. BP, p.l.c.*, 800 F.3d 674 (5th Cir. 2015) ("*Ludlow*")." Defs.' Mem. 1. Defendants' speculation falls short. Not only have Plaintiffs told Defendants that they are seeking out-of-pocket damages here (as opposed to consequential damages), but, unlike in *Ludlow*, Plaintiffs' loss causation allegations are not limited to materialization of the risk. Thus, *Ludlow* is inapposite.

Second, contrary to what Defendants suggest, a motion for class certification – a stage at which the full factual record has not yet been developed – is not the proper time to modify the Class Period. Moreover, Plaintiffs' allegations concerning Defendants' environmental and internal control statements made at the beginning of the Class Period and the corrective disclosure at the end of the Class Period are still in play. Therefore, the Class Period should remain as currently pled.

For these reasons, and as set forth in Lead Plaintiffs' prior submissions, Lead Plaintiffs respectfully submit that their motion be granted in full.

## II.   ARGUMENT

### A.   Plaintiffs Satisfy the Requirements for Class Certification

There is no dispute that Plaintiffs satisfy Rule 23(a). The sole argument Defendants raise to oppose class certification is their contention that predominance for damages can only be shown by the inclusion of a damages model. Fatal to Defendants' argument, however, is their failure to cite to a single traditional securities case seeking out-of-pocket damages – from this Circuit or otherwise – that ***requires*** Plaintiffs to offer a damages model in support of their motion for class certification to demonstrate predominance.[2] Although there are cases that discuss what any proffered model must

---

[2]   While the court in *Sicav v. James Jun Wang*, No. 12 Civ. 6682 (PAE), 2015 WL 268855, at *6 (S.D.N.Y. Jan. 21, 2015), stated that "to evaluate the Rule 23 elements of predominance and

- 2 -

state, there are no traditional securities cases that ***mandate*** that a model ***must*** be offered.  Defendants essentially acknowledge as much by stating that "Securities plaintiffs ***typically*** address damages in connection with class certification . . . ."  Defs.' Mem. 5, n.1.

In any event, as the Second Circuit made clear in *Roach*, *Comcast* does not require district courts to first find that damages are capable of class-wide measurement before certifying a class under Rule 23(b)(3).  *Roach* confirmed that, in the Second Circuit, individualized damages issues do not *per se* defeat predominance.  According to *Roach*, the issue before the Supreme Court was whether the proposed model was suitable, not the more fundamental question of whether Rule 23(b)(3) mandates a class-wide method of proving damages.  *See Roach*, 778 F.3d at 406-08; *see also Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196-97, 1200 (2013) ("Rule 23(b)(3), however, does ***not*** require a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claim [is] susceptible to classwide proof.'") (emphasis in original).  This Court held similarly in *Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69 (S.D.N.Y. 2015) (Scheindlin, J.) ("*Barclays*"): "***plaintiffs are not required to demonstrate either loss causation or damages for purposes of class certification***."  *Id*. at 99; *see also Betances v. Fischer*, 304 F.R.D. 416, 430 (S.D.N.Y. 2015) (Scheindlin, J.) (holding that *Comcast* did not bar

---

superiority . . . the Court must understand, concretely, how plaintiffs propose to reliably establish damages. . ." for the proposition that class-wide damages must be shown, it also made clear that the need for a theory of damages in that case was because the plaintiff's "mechanics" theory of damages was "unusual," *id*. at *2, "ill-suited to classwide resolution," *id*. at *3, and not the same as a traditional claim under the federal securities laws, like here, where Plaintiffs are seeking out-of-pocket damages.  *See id*. ("Historically, claims of injury due not to corrective disclosures but rather to the mechanics by which shares of stock were priced during a protracted period of open-market trading have almost always been held ill-suited to classwide resolution.").  The court further stated that, "Plaintiffs 'insider sale' theory is an unusual theory of classwide injury.  In a typical securities fraud class action, plaintiffs allege that the market reacted negatively on a given day or several-day period to a corrective disclosure, causing a decline in stock value that simultaneously harmed all shareholder class members in the same way. . . ."  *Id*. at *2.  Thus, it is clear that the need for a damages theory in *Sicac* was limited to its facts.

certification even though plaintiffs "failed to provide the mathematical formula they intended[ed] to use to calculate damages on a class-wide basis").  The vast majority of cases that have addressed this issue recently have taken a similar approach.  *See In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 414 (S.D.N.Y. 2015) (holding that "nothing in *Comcast* requires an expert to perform his analyses at the class certification stage"); *Fosbre v. Las Vegas Sands Corp.*, No. 2:10-CV-00765-APG-GWF, 2015 WL 3722496, at *3 (D. Nev. June 15, 2015) ("*Comcast* thus is not the sea change that defendants suggest. . . .  [T]he failure to set forth a common method of determining damages does not defeat class certification in all cases."); *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015) ("We reaffirmed the proposition that differences in damage calculations do not defeat class certification after *Comcast* in *Jimenez v. Allstate Insurance Co.*, 765 F.3d 1161, 1167 (9th Cir. 2014)"); *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 374-75 (3d Cir. 2015) (citing the dissents in *Comcast* and noting "[o]ur reading of *Comcast* is consistent with decisions by several of our sister courts [including the Second Circuit in *Roach*].  That is because '[r]ecognition that individual damages calculations do not preclude class certification under Rule 23(b)(3) is well nigh universal.'").

The dissent in *Comcast* made it clear that individualized damages calculations do not defeat class certification.  *See Comcast*, 133 S. Ct. at 1436 (Ginsburg & Breyer, J.J., dissenting) (describing the majority opinion as it relates to the predominance of common issues and damages: "[T]he opinion breaks no new ground on the standard for certifying a class action under Federal Rule of Civil Procedure 23(b)(3).  In particular, the decision should not be read to require, as a prerequisite to certification, that damages attributable to a classwide injury be measurable 'on a class-wide basis'").  In addition, the Court in *Halliburton II* (issued after the *Comcast* decision) reaffirmed the holding of *Halliburton I*, that plaintiffs do not have to prove loss causation at class certification in a

securities case.  *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2406 (2014) ("*Halliburton II*").  Since proof of damages is necessarily related to loss causation, it certainly is not required at class certification under *Halliburton I* or *Halliburton II*.  As instructed by the Court in *Halliburton II*, the issue of reliance is the only appropriate inquiry at class certification and common issues related to the entire class – including loss causation, damages, and materiality – are not to be examined at this stage.

Finally, *Comcast* – unlike the instant case – was an antitrust case in which plaintiffs' damages model attributed damages to multiple theories of the case previously dismissed by the Court.  *Comcast*, 133 S. Ct. at 1439-40.  This is significant because numerous courts have rejected attempts to broaden *Comcast* and apply it to securities class actions.  For example, in *Las Vegas Sands*, a securities class action, the court refused to apply *Comcast*, stating because "*Comcast* and other relevant authority do not require a method to determine damages on a class-wide basis as a prerequisite to predominance," "the failure to set forth a common method of determining damages does not defeat class certification in all cases."  2015 WL 3722496, at *2-*3.  Moreover, the court in *In re Diamond Foods, Inc. Securities Litigation*, in addressing this very issue, also refused to apply *Comcast* to a securities case.  295 F.R.D. 240, 251 (N.D. Cal. 2013).  Instead, the court found it did not need to decide the application of *Comcast* because the Supreme Court in *Amgen* had recently found that Rule 23 "'does not require a plaintiff seeking class certification to prove that each element of her claim be susceptible to classwide proof . . . [but] that common questions *predominate* over any questions affecting only individual class members.'"  *Id.* (quoting *Amgen*, 133 S. Ct. at 1196) (emphasis in original).

Defendants cite numerous antitrust and non-securities cases to support their argument that *Comcast* requires a full damages analysis.  *See* Defs.' Mem. 6-9.  These cases are simply not relevant

to the analysis of class certification of a securities class action, and clearly conflict with the dictates of the Supreme Court's decision in *Halliburton I* and *Halliburton II* that loss causation, and thus damages, are not appropriate inquiries at class certification in securities cases. Unlike some of these other non-securities cases, damages issues will not vary among class members in this case, other than the amount for each class member, which, as Defendants concede, does not threaten to overwhelm questions common to the class. Defs.' Mem. 10.

Although Defendants rely heavily on the Fifth Circuit's opinion in *Ludlow* denying class certification for the pre-spill allegations, that holding, with respect to the pre-spill subclass, is irrelevant to the claims here. As an initial matter, the post-spill subclass for which out-of-pocket damages were sought – similar to here – was certified. It was only the *Ludlow* pre-spill subclass – for which plaintiffs sought consequential damages and only alleged loss causation under a theory of materialization of the risk – that was not certified. Here, Plaintiffs are not seeking consequential damages and Plaintiffs' loss causation claims are not limited to materialization of the risk.[3]  *See* Compl. ¶¶ 212, 217, 221, 226, 229, 232, 236, 239; *see also* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Complaint (ECF No. 58) at 42-45. Plaintiffs' allegations of false and misleading statements include specific factual representations by Defendants of actual ongoing violations, not simply statements of risk. *See Barrick Gold*, 2015 WL 1514597, at *3-*4. The Court should reject Defendants' attempts to draw any parallels between this case and the pre-spill portion of the *Ludlow* case.

---

[3]  While this Court mostly limited its discussion of loss causation to a theory of materialization of the risk, it never rejected Plaintiffs' allegations that its losses and damages followed from corrective disclosures. *See generally In re Barrick Gold Sec. Litig.*, No. 13 Civ. 3851 (SAS), 2015 WL 1514597, at *12-*15 (S.D.N.Y. Apr. 1, 2015). In fact, the Court specifically found loss causation for the decline in Barrick's stock following the disclosure on July 26, 2012, and rejected Defendants' argument that "'none of the statements or events alleged to have caused a decline in stock price revealed any concealed information' related to internal controls." *Id.* at *14.

In addition to mischaracterizing this case as one claiming materialization of the risk as the sole theory of loss causation, Defendants further contend that Plaintiffs' expert, Mr. Coffman, has previously testified that out-of-pocket damages cannot be recovered in a materialization of the risk case.  *See* Defs.' Mem. 13.  Defendants support their contention by citing the following limited excerpt from Mr. Coffman's *Ludlow* testimony: "[i]t would not be appropriate to use the actual price minus the but-for price [out-of-pocket method] to calculate damages . . . for an investor that continued to hold through the materialization of the risk." *Id.*  Mr. Coffman's position in *Ludlow* was not, as Defendants misleadingly represent, that out-pocket-damages are always unavailable when the loss causation theory is materialization of the risk.[4]  Rather, Mr. Coffman was simply testifying that *only* allowing recovery of out-of-pocket damages – to the exclusion of seeking other types of damages – was inappropriate in that case, as it understated the amount of plaintiff's actual damages.

### B.      There Is No Basis to Alter the Class Period at This Stage

Defendants' contention that the Class Period should be altered at this stage is contrary to Second Circuit precedent and misstates the facts of this case.

As an initial matter, the Second Circuit has held that a district court should not evaluate the merits of the underlying claims in assessing whether a class action meets the requirements under Rule 23(a).  *See Heerwagen v. Clear Channel Commc'ns*, 435 F.3d 219, 225 (2d Cir. 2006) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974) (reiterating the requirements for class certification)).  Moreover, several courts in this district have concluded that narrowing a class period during class certification is akin to an examination of the merits and therefore improper.  *See In re*

---

[4]     Defendants similarly mischaracterize Mr. Coffman's testimony in *In re HP Securities Litigation*, No. C 12-05980 (N.D. Cal.) ("*HP*").  *See* Defs.' Mem. 13.  In *HP*, Mr. Coffman described his understanding of the "economic difference" between materialization of the risk and a typical but-for approach. Mr. Coffman never testified that one is precluded from seeking out-of-pocket damages in a materialization of the risk case; his view was only that, under the described facts, limiting claims to out-of-pocket damages would understate overall damages.

*Gaming Lottery Sec. Litig.*, 58 F. Supp. 2d 62, 77 (S.D.N.Y. 1999) ("Whether claims falling outside some narrower time window within the class period are, in fact, groundless on the merits is a question of fact for the jury that should not be answered when the court decides whether to certify a class."); *see also In re Omnicom Group, Inc. Sec. Litig.*, No. 02 Civ. 4483 (RCC), 2007 WL 1280640, at *9 (S.D.N.Y. Apr. 30, 2007) (refusing "to turn class certification into a partial summary judgment on the merits" by shortening the back end of the class period); *In re Interpublic Sec. Litig.*, No. 02 CIV 6527 (DLC), 2003 WL 22509414, at *5 (S.D.N.Y. Nov. 6, 2003) (refusing to shorten class period at class certification stage and stating that "[c]lass certification of a ***broader*** class period is appropriate when questions of fact remain as to whether a purportedly curative press release effected a complete cure of the market or was itself fraudulent").

Despite this well-settled law, Defendants contend that the Class Period should be narrowed from May 7, 2009 – November 1, 2013, to October 28, 2010 – June 28, 2013. Defs.' Mem. 18-19. Defendants take the position that the Class Period should begin on October 28, 2010, because the Court held that "plaintiffs have alleged that defendants knew that Barrick was violating its environmental commitments ***as early*** as April 2010." *Barrick Gold*, 2015 WL 1514597, at *11. Although the Court did note that Plaintiffs had demonstrated that Defendants knew by at least April 2010 that Barrick was violating its environmental commitments, the Court did not narrow the Class Period or dismiss the environmental statements from May 7, 2009, that Plaintiffs allege were false and misleading.  For example, the Complaint alleges that on the May 7, 2009 conference call, Defendant Kinver stated that "Pascua-Lama has a strong environmental team that works very closely with local authorities and communities and who in turn are familiar with Barrick's strong commitment to high environmental program standards."  Compl. ¶¶ 59, 245.  On that same call, Defendant Potter represented that "[w]e've also incorporated all of the conditions of the

environmental approval as well as the key sectorial permits for construction."  Compl. at ¶ 59; *see also* ¶¶ 245, 248.  Nothing in the Court's Order precludes Plaintiffs from showing that these environmental statements and the others identified in the Complaint from before October 28, 2010, were false and misleading and that Defendants knew or recklessly disregarded those facts.

Similarly, Plaintiffs allege that throughout the Class Period, Defendants knew or recklessly disregarded that Barrick's internal controls were ineffective.  Defendants made statements and issued statutorily required certifications as to the effectiveness of Barrick's internal controls.  For example, on March 29, 2010, Defendants filed Barrick's Annual Report for 2009 on Form 40-F including Defendants' audited financial statements.  As part of the Annual Report, Defendants represented that Barrick's internal controls had been reviewed by its CEO and CFO and that its internal controls were effective.  Compl. ¶¶ 419-22.  Because these allegedly false statements are still in the case, Plaintiffs should be allowed to present evidence demonstrating their falsity and Defendants' scienter.

Defendants also urge the Court to end the Class Period earlier, arguing that the last stock price decline on November 1, 2013, is not sufficiently connected to the fraud at issue.  This argument fails for two reasons.  First, *Halliburton I* precludes the court from considering loss causation questions on class certification.  *See Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179 (2011).[5]  Second, the Complaint alleges that the corrective disclosure on November 1, 2013, was tied to misrepresentations regarding internal controls and Barrick's failure to properly account for capital costs. ¶¶ 237-39.[6]  This is sufficient at this stage of the case.  Accordingly, the Class Period should not be shortened.

---

[5]  The Court in *Ludlow* also held that at the class certification stage, no proof of loss causation is required.  *Ludlow*, 800 F.3d at 687-88.

[6]  Again, Defendants' argument finds no support in the Court's prior rulings.  As stated by the Court, on November 1, 2013, "Barrick announced a three billion dollar equity offering in order to pay down debt and for other corporate purposes, including 'capital expenditures relating to Barrick's

## III.    CONCLUSION

For these reasons, and as set forth in their prior submissions, Lead Plaintiffs' motion should be granted in its entirety.

Dated: January 15, 2016                       Respectfully submitted,

LABATON SUCHAROW LLP

By:   /s/ *Jonathan Gardner*
Jonathan Gardner
Serena P. Hallowell
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
jgardner@labaton.com
shallowell@labaton.com

*Liaison Counsel for Lead Plaintiffs and the Putative Class*

MOTLEY RICE LLC
James M. Hughes (*pro hac vice*)
Christopher F. Moriarty (*pro hac vice*)
28 Bridgeside Blvd.
Mt. Pleasant, South Carolina 29464
Telephone:  (843) 216-9000
Facsimile:  (843) 216-9450
jhughes@motleyrice.com
cmoriarty@motleyrice.com

---

existing portfolios of mines.'" *Barrick Gold*, 2015 WL 1514597, at *4. The Court further noted that "[a]n analyst report attributed this need to raise capital to cost overruns and stated that 'delays with Pascua Lama have left Barrick with less cashflow to service its debt.'" *Id.* at *14. Thus, as the Court has already recognized, the equity offering was a direct reaction to the Company's failure to account for capital costs – allegations that were indisputably upheld by the Complaint. *See Id.* at *15 (finding "plaintiffs have sufficiently stated a claim related to statements and omissions regarding accounting"); *see also Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 202 (S.D.N.Y. 2010) (no requirement of "mirror image" corrective disclosure, so long as revelation of company's "underlying condition" caused the harm).  Accordingly, the Class Period should not be altered at this stage.

William H. Narwold
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
Telephone: (860) 882-1676
BNarwold@motleyrice.com

*Lead Counsel for Lead Plaintiffs and the
Putative Class*

<u>CERTIFICATE OF SERVICE</u>

I, Jonathan Gardner, hereby certify that on January 15, 2016, I authorized a true and correct

copy of the attached:

Reply Memorandum of Law in Further Support of Lead Plaintiffs' Motion for Class
Certification, Appointment of Class Representatives, and Appointment of Class Counsel

to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send

notification of such public filing to all counsel registered to receive such notice.




*/s/ Jonathan Gardner*
JONATHAN GARDNER