UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

IN RE BARRICK GOLD SECURITIES
LITIGATION

------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/23/16

**OPINION AND ORDER**

**13-cv-3851 (SAS)**

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

Plaintiffs Union Asset Management Holding AB ("Union") and LRI Invest S.A. ("LRI") bring this action, on behalf of themselves and others similarly situated, against Barrick Gold Corporation ("Barrick"), Aaron Regent, Jamie Sokalsky, Ammar Al-Joundi, Peter Kinver, Igor Gonzales, George Potter, and Sybil Veenman (the "Individual Defendants") (with Barrick, "defendants"). Plaintiffs assert, *inter alia*, claims for violations of Section 10(b) of the Securities Exchange Act ("Section 10(b)") and Rule 10b-5 promulgated thereunder.[1]

On April 1, 2015, this Court issued an Opinion and Order granting in part and denying in part defendants' motion to dismiss pursuant to Federal Rule of

---

[1]    *See* 17 C.F.R. § 240.10b-5.

Civil Procedure 12(b)(6) (the "April 1 Opinion").[2]  Although that Opinion denied defendants' motion to dismiss all of plaintiffs' Section 10(b) claims, it dismissed one category of defendants' alleged misstatements.[3]

The alleged misstatements remaining in the case relate to Barrick's now-halted development of Pascua-Lama, a large gold mine spanning the border between Chile and Argentina (the "Project").[4]  These misstatements fall into three categories:  (1) statements regarding compliance with environmental regulations; (2) statements regarding internal controls and accounting for capital costs; and (3) statements concerning accounting for the Project.[5]  Plaintiffs also allege eight dates on which, following disclosures, Barrick's share price fell.[6]

Plaintiffs now move for class certification under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure.  The putative class consists of all persons

---

[2]    *See In re Barrick Gold*, No. 13 Civ. 3851, 2015 WL 1514597 (S.D.N.Y. Apr. 1, 2015).

[3]    *See id.*  For purposes of this Opinion and Order, familiarity with the April 1 Opinion — including the general background and facts alleged in the Consolidated Amended Class Action Complaint (the "Complaint") — is assumed.

[4]    *See id.*; Compl. ¶ 245.

[5]    *See In re Barrick Gold*, 2015 WL 1514597.

[6]    *See* Complaint ("Compl.") ¶¶ 209-239.  Several of the identified disclosures relate, at least in part, to statements regarding cost and schedule estimates that are no longer he basis of any claims in this case.  *See In re Barrick Gold*, 2015 WL 1514597, at *4, *10.

and entities who purchased Barrick publicly traded common stock listed on the

New York Stock Exchange ("NYSE") from May 7, 2009 through and including

November 1, 2013 (the "Proposed Class Period") and were allegedly damaged

thereby (the "Proposed Class").  Plaintiffs also seek approval of themselves as

Class Representatives, appointment of Motley Rice LLC as Class Counsel, and

appointment of Labaton Sucharow LLP as Liaison Counsel.  For the following

reasons, plaintiffs' motion is GRANTED.

## II.    LEGAL STANDARD

District courts have broad discretion in deciding whether to certify a

proposed class under Rule 23.[7]  Nevertheless, "Rule 23 does not set forth a mere

pleading standard.  A party seeking class certification must affirmatively

demonstrate [its] compliance with the Rule — that is, [it] must be prepared to

prove that there are *in fact* sufficiently numerous parties, common questions of law

or fact, etc."[8]  Thus, a court may certify a class only after determining that

"whatever underlying facts are relevant to a particular Rule 23 requirement have

---

[7]    *See Parker v. Time Warner Entm't Co. L.P.*, 331 F.3d 13, 28 (2d Cir. 2003).

[8]    *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (emphasis in original).

been established."[9]  This rigorous analysis requires examining the facts of the

dispute, not merely the pleadings, and will frequently "entail some overlap with the

merits of the plaintiff's underlying claim."[10]  However, "[a] motion for class

certification should not . . . become a mini-trial on the merits.'"[11]  Rather, at the

class certification stage, "a district judge should not assess any aspect of the merits

unrelated to a Rule 23 requirement."[12]

       The court's "determination as to a Rule 23 requirement is made only

for purposes of class certification and is not binding on the trier of facts, even if

that trier is the class certification judge."[13]  Moreover, "'[e]ven after a certification

order is entered, the judge remains free to modify it in light of subsequent

---

[9]     *In re IPO Secs. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006).

[10]     *Wal-Mart*, 131 S. Ct. at 2551.  "Nor is there anything unusual about that consequence: The necessity of touching aspects of the merits in order to resolve preliminary matters, *e.g.*, jurisdiction and venue, is a familiar feature of litigation."  *Id.* at 2552.

[11]     *Flores v. Anjost Corp.*, 284 F.R.D. 112, 122 (S.D.N.Y. 2012).

[12]     *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 251 (2d Cir. 2011) (quotation marks and citation omitted).  Courts must ensure "that a class certification motion does not become a pretext for a partial trial of the merits."  *In re IPO*, 471 F.3d at 41.

[13]     *In re IPO*, 471 F.3d at 41.

developments in the litigation.'"[14]

## A.    Federal Rule of Civil Procedure 23(a)

To be certified, a putative class must first meet all four prerequisites set forth in Rule 23(a), generally referred to as numerosity, commonality, typicality, and adequacy.[15]  The Second Circuit also recognizes an implied requirement of ascertainability under Rule 23(a).[16]  Plaintiffs seeking class certification bear the burden of demonstrating, by a preponderance of the evidence, that the proposed class meets each of Rule 23(a)'s requirements.[17]  When assessing whether plaintiffs have met this burden, courts must take into account "all of the

---

[14]     *Easterling v. Connecticut Dep't of Corr.*, 278 F.R.D. 41, 45 (D. Conn. 2011) (quoting *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).

[15]     *See Sykes v. Mel. S. Harris & Assocs. LLC*, 780 F.3d 70, 80 (2d Cir. 2015).  In full, Rule 23(a) reads:

> Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

[16]     *See Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015).

[17]     *See New Jersey Carpenters Health Fund v. Rali Series 2006-Q01 Trust*, 477 Fed. App'x 809, 812 (2d Cir. 2012).

5

relevant evidence admitted at the class certification stage."[18]

### 1.    Numerosity

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable."  In the Second Circuit, sufficient numerosity can be presumed at a level of forty members or more.[19]  "The numerosity requirement in Rule 23(a)(1) does not mandate that joinder of all parties be impossible — only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate."[20]  Courts do not require evidence of exact class size to satisfy the numerosity requirement.[21]  "In securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period."[22]

---

[18]    *In re IPO*, 471 F.3d at 42.

[19]    *See Pennsylvania Pub. Sch. Emps. Ret. Sys. v. Morgan Stanley & Co., Inc.*, 772 F.3d 111, 116 (2d Cir. 2014) (citing *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)).

[20]    *Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 244-45 (2d Cir. 2007).

[21]    *See Kaplan v. S.A.C. Capital Advisors*, No. 13 Civ 2459, 2015 WL 8593478, at *3 (S.D.N.Y. Dec. 2, 2015) (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)).

[22]    *McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 423 (S.D.N.Y. 2014) (quotation marks and citation omitted).

### 2.    Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  To prove commonality, plaintiffs must "demonstrate that the class members 'have suffered the same injury'" and that the claims asserted "depend upon a common contention . . . of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[23]

### 3.    Typicality

Under Rule 23(a)(3), "[t]ypicality 'requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events[] and each class member makes similar legal arguments to prove the defendant's liability.'"[24]  The purpose of typicality is to ensure that class representatives "have the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions."[25]

---

[23]    *Wal-Mart*, 131 S. Ct. at 2551 (quoting *General Tel. Co.*, 457 U.S. at 157).

[24]    *Central States*, 504 F.3d at 245 (quoting *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001)).

[25]    *Vivaldo v. United Talmudical Acad. of Kiryas Joel, Inc.*, No. 14 Civ. 2636, 2015 WL 4922961, at *5 (S.D.N.Y. June 18, 2015) (quoting *In re NASDAQ*

### 4.   Adequacy

Adequacy under Rule 23(a)(4) "is twofold:  the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members."[26] Thus, the adequacy requirement "entails inquiry as to whether: 1) plaintiffs' interests are antagonistic to the interest of other members of the class and 2) plaintiffs' attorneys are qualified, experienced and able to conduct the litigation."[27]

### 5.   Implied Requirement of Ascertainability

In addition to the express requirements of Rule 23(a), the Second Circuit recognizes an "implied requirement of ascertainability."[28]  "[T]he touchstone of ascertainability is whether the class is 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'"[29]  Accordingly, "[a] class is ascertainable when defined

---

*Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 510 (S.D.N.Y. 1996)).

[26]     *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006).

[27]     *In re Flag Telecom Holdings*, *Ltd. Secs. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)).

[28]     *Brecher*, 806 F.3d at 24 (citations omitted).

[29]     *Id.* (quoting 7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1760 (3d ed. 1998)).

by objective criteria . . . and when identifying its members would not require a mini-hearing on the merits of each case."[30]

## B.    Federal Rule of Civil Procedure 23(b)(3)

If the requirements of Rule 23(a) are met, the court "must next determine whether the class can be maintained under any one of the three subdivisions of Rule 23(b)."[31]  Under Rule 23(b)(3), certification is appropriate where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and class litigation "is superior to other available methods for the fair and efficient adjudication of the controversy."

> The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.[32]

> The predominance inquiry focuses on whether "a proposed class is

---

[30]    *Id.* at 24-25 (quotation marks and citation omitted).

[31]    *McLaughlin v. American Tobacco Co.*, 522 F.3d 215, 222 (2d Cir. 2008).

[32]    Fed. R. Civ. P. 23(b)(3)(A)-(D).

9

'sufficiently cohesive to warrant adjudication by representation.'"[33]   It is akin to, but ultimately "a more demanding criterion than," the "commonality inquiry under Rule 23(a)."[34]   Class-wide issues predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."[35]   The Second Circuit has emphasized that "Rule 23(b)(3) requires that common questions predominate, not that the action include *only* common questions."[36]

In *Comcast Corp. v. Behrend*,[37] the Supreme Court held, in the context of an antitrust claim, that class certification is appropriate only when class-wide damages may be measured based on the theory of injury asserted by the plaintiffs.[38] The Second Circuit has rejected a broad reading of *Comcast*, explaining:

---

[33]     *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).

[34]     *In re Nassau County Strip Search Cases*, 461 F.3d 219, 225 (2d Cir. 2006) (citing *Amchem*, 521 U.S. at 623-24).

[35]     *Catholic Healthcare W. v. U.S. Foodservice Inc.*, 729 F.3d 108, 118 (2d Cir. 2013) ("*In re U.S. Foodservice Inc. Pricing Litig.*") (internal citations omitted).

[36]     *Brown v. Kelly*, 609 F.3d 467, 484 (2d Cir. 2010) (emphasis added).

[37]     133 S. Ct. 1426 (2013).

[38]     *See id.* at 1432.

*Comcast* . . . did not hold that a class cannot be certified under Rule 23(b)(3) simply because damages cannot be measured on a classwide basis. . . . *Comcast*'s holding was narrower. *Comcast* held that a model for determining classwide damages relied upon to certify a class actually measure damages that result from the class's asserted theory under Rule 23(b)(3) must actually measure damages that result from the class's theory of injury; but the Court did not hold that proponents of class certification must rely upon a classwide damages model to demonstrate predominance. . . . .

To be sure, *Comcast* reiterated that damages questions should be considered at the certification stage when weighing predominance issues, but this requirement is entirely consistent with our prior holding that "the fact that damages may have to be ascertained on an individual basis is . . . a factor that we must consider in deciding whether issues susceptible to generalized proof 'outweigh' individual issues." *McLaughlin* [*v. American Tobacco Co.*], 522 F.3d [215,] 231 [2d Cir. 2008].  The Supreme Court did not foreclose the possibility of class certification under Rule 23(b)(3) in cases involving individualized damages calculations.[39]

---

[39]     *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407-08 (2d Cir. 2015) (internal citations omitted) (citing *In re Deepwater Horizon*, 739 F.3d 790, 817 (5th Cir. 2014) (construing the "principal holding of *Comcast* [as being] that a 'model purporting to serve as evidence of damages . . . must measure only those damages attributable to th[e] theory' of liability on which the class action is premised" (ellipsis and second alteration in original) (quoting *Comcast*, 133 S. Ct. at 1433)); *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 799 (7th Cir. 2013) (construing *Comcast* as holding only "that a damages suit cannot be certified to proceed as a class action unless the damages sought are the result of the class-wide *injury* that the suit alleges" (emphasis in original)); *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (interpreting *Comcast* to hold that class action plaintiffs "must be able to show that their damages stemmed from the defendant's actions that created the legal liability"); *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d at 123 n.8 (stating that "[p]laintiffs' proposed measure for damages is thus directly linked with their underlying theory of classwide liability . . . and is therefore in accord with the Supreme Court's recent decision in *Comcast*").

11

Thus, the Second Circuit observed that even after *Comcast*, "[p]redominance is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."[40]

## III.   APPLICABLE LAW

### A.   Rule 23(b)(3) Predominance in Section 10(b) Cases

"Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action."[41]   To sustain a claim for securities fraud under Section 10(b), "a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission;

---

[40]     *Roach*, 778 F.3d at 405 (internal quotation marks omitted).  *Accord id.* at 408 ("Our reading of *Comcast* is consistent with the Supreme Court's statement in *Comcast* that its decision turned upon 'the straightforward application of class certification principles.'" (quoting *Comcast*, 133 S. Ct. at 1433)).  *Cf. In re Facebook, Inc., IPO Secs. & Derivative Litig.*, No. 12 Civ. 2389, 2015 WL 9582429, at *13 (S.D.N.Y. Dec. 11, 2015) (noting that "courts generally focus on the liability issue in deciding whether the predominance requirement is met, and if the liability issue is common to the class, common questions are held to predominate over individual questions") (quotation marks and citations omitted)).

[41]     *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011) ("*Halliburton I*").

(5) economic loss; and (6) loss causation."[42]

## 1.   Reliance and the *Basic* Presumption

"Whether common questions of law or fact predominate in a securities fraud action often turns on the element of reliance."[43]  This element — sometimes referred to as "transaction causation"[44] — "addresses . . . whether an investor relied on a misrepresentation, presumptively or otherwise, when buying or selling a stock"[45] and thus "ensures that there is a proper 'connection between a defendant's representation and a plaintiff's injury.'"[46, 47]

The Supreme Court has recognized that if proof of individual shareholder reliance were required, predominance would be impossible to satisfy

---

[42]     *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008).

[43]     *Halliburton I*, 131 S. Ct. at 2182.

[44]     *Id.*

[45]     *Id.*

[46]     *Id.* at 2185 (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 241 (1988)).

[47]     As I have previously observed, "reliance is typically the only ground on which to challenge predominance because section 10(b) claims will almost always arise from a common nucleus of facts surrounding the fraudulent misrepresentation of material facts and the causal relationship between the correction of that misrepresentation and the price of the security."  *Strougo v. Barclays PLC*, No. 14 Civ. 5797, 2016 WL 413108, at *2 n.17 (S.D.N.Y. Feb. 2, 2016).

for putative securities fraud classes.[48]  Thus, reliance is typically established by

invoking one of two presumptions that obviate the need to prove reliance on an

individual basis:  the rebuttable "*Basic* presumption" of reliance in fraudulent

misrepresentation cases,[49] and the "*Affiliated Ute* presumption" of reliance in

fraudulent omission cases.[50]

        The *Basic* presumption rests "on what is known as the

'fraud-on-the-market' theory, which holds that 'the market price of shares traded

on well-developed markets reflects all publicly available information, and, hence,

any material misrepresentations.'"[51] Accordingly, plaintiffs can meet their burden

of proving predominance by establishing their entitlement to the *Basic*

presumption.[52]

---

[48]     *See Halliburton I*, 131 S. Ct. at 2185 ("Requiring proof of individualized reliance from each member of the proposed plaintiff class effectively would prevent such plaintiffs from proceeding with a class action, since individual issues would overwhelm the common ones." (quotation marks and alterations omitted)).

[49]     *See Basic*, 485 U.S. at 241.

[50]     *See Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 154 (1972)

[51]     *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2408 (2014) ("*Halliburton II*") (quoting *Basic*, 485 U.S. at 246).

[52]     *See id.* at 2412.  The Supreme Court has clarified that materiality need not be proven at the class certification stage.  *See Amgen*, 133 S. Ct. at 1196 (explaining that "there is no risk whatever that a failure of proof on the common

14

[A] plaintiff must make the following showings to demonstrate that the [*Basic*] presumption of reliance applies in a given case: (1) that the alleged misrepresentations were publicly known, (2) that they were material, (3) that the stock traded in an efficient market, and (4) that the plaintiff traded the stock between the time the misrepresentations were made and when the truth was revealed.[53]

As explained in *Halliburton II*, the first three showings (publicity, materiality, and market efficiency) are directed at, and can serve as proxies for, "price impact" — *i.e.*, that "the alleged misrepresentation affected the market price in the first place."[54, 55]  "Price impact is . . . an essential precondition for any Rule

---

question of materiality will result in individual questions predominating" because "the failure of proof on the element of materiality would end the case for one and for all; no claim would remain in which individual reliance issues could potentially predominate").

[53]     *Halliburton II*, 134 S. Ct. at 2408 (citing *Basic*, 485 U.S. at 248 n.27) (further citation omitted).

[54]     *Id.* at 2414 (quotation marks and citation omitted) (explaining that plaintiffs need not establish price impact directly to invoke the *Basic* presumption, but can instead do so through indirect proxies).

[55]     *Cammer v. Bloom* articulated five factors frequently used to evaluate market efficiency:  (1) the average weekly trading volume; (2) the number of analysts who follow the stock; (3) the existence of market makers and arbitrageurs; (4) the ability of the company to file Securities Exchange Commission Form S-3; and (5) evidence of share price response to unexpected news.  711 F. Supp. 1264, 1286-287 (D.N.J. 1989).  *Krogman v. Sterritt* identified other factors to be considered:  the level of market capitalization, the size of the bid-ask spread, and the percentage of total shares available to the public.  202 F.R.D. 467, 478 (N.D. Tex. 2001).

10b–5 class action."[56]  "In the absence of price impact, *Basic*'s fraud-on-the-market theory and presumption of reliance collapse"[57] — "and without the presumption of reliance, a Rule 10b–5 suit cannot proceed as a class action."[58]  Accordingly, *Halliburton II* also held that defendants may submit price impact evidence at the class certification stage to rebut the *Basic* presumption, observing that "an indirect proxy should not preclude direct evidence when such evidence is available."[59]

### 2.  Loss Causation

### a.  Not Required For Class Certification

In *Halliburton I*, the Supreme Court clarified that plaintiffs need not, at the class certification stage, prove the separate Section 10(b) element of loss causation — *i.e.*, that plaintiffs' damages were caused by the fraud and not other market factors.[60]  In so holding, the Supreme Court explained the difference between reliance (which must be established at class certification) and loss causation (which need not be established at class certification) in the following way:

---

[56]     *Halliburton II*, 134 S. Ct. at 2416.

[57]     *Id.* (quotation marks, citations, and alterations omitted).

[58]     *Id.*

[59]     *Id.* at 2415.

[60]     *See Halliburton I*, 131 S. Ct. at 2186.

16

[A]n investor presumptively relies on a defendant's misrepresentation if that information is reflected in [the] market price of the stock at the time of the relevant transaction. Loss causation, by contrast, requires a plaintiff to show that a misrepresentation that affected the integrity of the market price *also* caused a subsequent economic loss.[61]

### b.      Loss Causation Theories Generally

However, "[t]o plead loss causation, plaintiffs must allege 'that the subject of the fraudulent statement or omission was the cause of the actual loss suffered.'"[62]  Loss causation may be established under two possible theories: "either (a) 'the existence of cause-in-fact on the ground that the market reacted negatively to a corrective disclosure of the fraud;' or (b) that . . . 'the loss was foreseeable and caused by the materialization of the risk concealed by the fraudulent statement.'"[63]

"In order to plead corrective disclosure, plaintiffs must plausibly allege a disclosure of the fraud by which 'the available public information

---

[61]      *Id.* (quotation marks and citation omitted) (second alteration in original).

[62]      *Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 232 (2d Cir. 2014) (quoting *Suez Equity Investors, L.P. v. Toronto-Dominion Bank* 250 F.3d 87, 95 (2d Cir. 2001)).

[63]      *Id.* at 232-33 (emphasis omitted) (quoting *In re Omnicom Grp., Inc. Secs. Litig.*, 597 F.3d 501, 511 (2d Cir. 2010) (further quotation omitted).

regarding the company's financial condition [was] corrected'"[64] and "that the

market reacted negatively to the corrective disclosure."[65]  "Under the second

theory, the 'materialization of the risk' theory, a misstatement or omission is 'the

proximate cause of an investment loss if the risk that caused the loss was within the

zone of risk concealed by the misrepresentations.'"[66]

### B.    Rule 23(b)(3) Superiority in Section 10(b) Cases

Superiority is generally satisfied in securities class actions because

[m]ost violations of the federal securities laws . . . inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible.  Multiple lawsuits would be costly and inefficient, and the exclusion of class members who cannot afford separate representation would neither be "fair" nor an adjudication of their claims.  Moreover, although a large number of individuals may have been injured, no one person may have been damaged to a degree which would induce him to institute litigation solely on his own behalf.[67]

---

[64]    *Id.* at 233 (quoting *Omnicom*, 597 F.3d at 511).

[65]    *Id.* (citing *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 175 (2d Cir. 2005)).

[66]    *In re Sanofi Secs. Litig.*, No. 14 Civ. 9624, 2016 WL 93866, at *15 (S.D.N.Y. Jan. 6, 2016) (quoting *Omnicom*, 597 F.3d at 513).

[67]    *Public Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*, 277 F.R.D. 97, 120 (S.D.N.Y. 2011) (quotation marks and citations omitted).  *Accord In re Facebook*, 2015 WL 9582429, at *15 ("Superiority of managing this litigation as a class action is readily apparent for both subclasses, as it is in most securities suits.").

### C.    Damages in Section 10(b) Cases

"Traditionally, economic loss in Section 10(b) cases has been determined by use of the 'out-of-pocket' measure for damages."[68]  "Under that measure, 'a defrauded buyer of securities is entitled to recover only the excess of what he paid over the value of what he got.'"[69]  "In other words, damages 'consist[] of the difference between the price paid and the 'value' of the stock when bought.'"[70]  "However, out-of-pocket damages are not the only permissible measure of recovery."[71]  "In order to accommodate the wide variety of factual predicates to § 10(b) claims, courts have utilized their discretion to endorse several different compensatory damages theories," including consequential damages.[72]

## IV.    DISCUSSION

---

[68]    *Acticon AG v. China North East Petroleum Holdings Ltd.*, 692 F.3d 34, 39 (2d Cir. 2012).

[69]    *Id.* (quoting *Levine v. Seilon*, 439 F.2d 328, 334 (2d Cir. 1971)).

[70]    *Id.* (quoting *Elkind v. Liggett & Myers, Inc.*, 635 F.2d 156, 168 (2d Cir. 1980)).

[71]    *Mazuma Holding Corp. v. Bethke*, 21 F. Supp. 3d 221, 235 (E.D.N.Y. 2014) (quotation marks and citation omitted).  *Accord* Francis C. Amendola, et al., 69A Am. Jur. 2d Secs. Reg. § 1007 (2016) ("Recoverable consequential damages for violation of federal securities laws may include out-of-pocket expenses that are the proximate and natural consequence of the defendants' allegedly fraudulent acts.").

[72]    *Mazuma*, 21 F. Supp. 3d at 221 (quotation marks and citation omitted) (surveying Second, Fifth, and Tenth Circuit cases).

Although defendants oppose class certification primarily on Rule 23(b)(3) grounds, this Opinion addresses all relevant provisions of the class certification standard.

## A.    Rule 23(a)

There is no dispute that the Proposed Class satisfies Rule 23(a).  The numerosity requirement is readily satisfied as Barrick is a publicly traded company that, as of December 31, 2013, had over one billion shares of common stock outstanding and 17,284 holders of record.[73]

Commonality is also met as "plaintiffs allege that class members have been injured by similar misrepresentations and omissions" by defendants,[74] claims which call for class-wide answers to common questions such as (1) whether defendants violated securities laws; (2) whether defendants' SEC filings and other public statements contained misstatements or omissions; (3) the materiality of such misstatements and omissions; and (4) whether Class members sustained damages and, if so, the proper measure of such damages.  Similarly, typicality is established because all class members' claims arise from the same course of events and

---

[73]    *See* Excerpts of Barrick Gold Corporation's Annual Report (2013), Ex. 1 to Declaration of Plaintiffs' Counsel James M. Hughes in Support of Plaintiffs' Motion for Class Certification ("Hughes Decl."), at 3.

[74]    *McIntire*, 38 F. Supp. 3d at 424.

20

involve similar arguments on liability.

The Proposed Class representatives and counsel also satisfy the adequacy requirement.  Lead plaintiffs are institutional shareholders whose interests are aligned with those of the Class.  Further, Lead Counsel and Liaison Counsel — who have significant experience in bringing securities fraud suits — are competent and qualified to prosecute this action.[75]

Lastly, the Proposed Class is sufficiently ascertainable as membership is based on objective, definite criteria — namely the dates of shareholders' acquisition of Barrick common stock.

### B.    Rule 23(b)(3)

#### 1.    Summary of Arguments

As the Supreme Court has observed, "[i]n securities class action cases, the crucial requirement for class certification will usually be the predominance requirement of Rule 23(b)(3)."[76]  This case is no exception:  predominance is the focus of defendants' objection to class certification.[77]  According to defendants, the

---

[75]    I have also considered each of the factors set forth in Federal Rule of Civil Procedure 23(g) and am satisfied that Lead Counsel and Liaison Counsel are qualified to represent the Class as required by this provision.

[76]    *Halliburton II*, 134 S. Ct. at 2412.

[77]    Rule 23(b)(3)'s superiority requirement is clearly satisfied in this case — a finding that defendants do not dispute.  Like most securities class actions, the

21

Proposed Class fails to satisfy predominance because plaintiffs have not met their burden with respect to damages under *Comcast* and reliance under *Basic*. Although the parties largely talk past each other on these issues, it is useful to begin by summarizing their respective positions.

In their Opening Brief, plaintiffs argue that they are entitled to the *Basic* presumption and offer excerpts of reports prepared by expert Chad Coffman, CFA and Professor Allen Ferrell.  These reports evaluate the efficiency of the market for Barrick common stock, a key factor in the *Basic* analysis.[78]  Defendants do not contest plaintiffs' evidence regarding the *Basic* factors (and do not proffer any expert opinions or other evidence to rebut plaintiffs' showing on reliance). Instead, defendants concentrate on whether individual *damages* issues will predominate, asserting:  "[d]espite the fact that Plaintiffs bear the burden of demonstrating that issues common to the putative class predominate over

---

potential recovery for individual shareholders is likely too low to make individual suits viable.  *See Public Emps. Ret. Sys. of Miss.*, 277 F.R.D. at 120.

[78]     *See* Excerpts of the Expert Report of Chad Coffman, CFA (Sept. 15, 2015) (evaluating the efficiency of the market for Barrick common stock under, *inter alia*, the factors articulated in *Cammer*, 711 F. Supp. 1264, and *Krogman*, 202 F.R.D. 467 — including an event study of share price reactions to Barrick-related news), Ex. 6 to Hughes Decl.; Excerpts of the Report of Professor Allen Ferrell (Nov. 13, 2015) ("I compared the results of my replication [of Coffman's event study] to Mr. Coffman's results and found that they are substantially similar."), Ex. 7 to Hughes Decl., at 6 n.4.

individualized damages and reliance issues, . . . Plaintiffs have made the strategic decision to decline to offer any damages theory at all."[79]

Pointing out that Coffman did not address the question of damages in either his report or deposition, defendants speculate that plaintiffs have avoided articulating a damages theory so as to preserve their ability to seek consequential damages (a remedy that, according to defendants, necessitates individualized calculations and destroys predominance).  To explain this hypothesis, defendants characterize plaintiffs' Section 10(b) claims as relying on the materialization of the risk theory, and observe that Coffman has testified — in other litigations — that consequential damages are the appropriate measure of damages for materialization of the risk claims.

As for their sole argument against the *Basic* presumption, defendants again proceed on the assumption that plaintiffs seek consequential damages. Defendants reason that the *Basic* presumption cannot, as a matter of logic, apply in suits for consequential damages because "[u]nder th[e consequential damages] theory, an investor claims that it was damaged not because it relied on the integrity of the market price of the stock, but because it would not have purchased the stock

---

[79]     Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel ("Opp. Mem.") at 1.

had it known the true risk."[80]

In their Reply Brief, plaintiffs refute defendants' assumptions regarding damages and loss causation, explaining:  "[n]ot only have Plaintiffs told Defendants that they are seeking out-of-pocket damages here (as opposed to consequential damages), but . . . Plaintiffs' loss causation allegations are not limited to materialization of the risk" and include corrective disclosure claims.[81] Plaintiffs also argue that defendants have taken Coffman's prior testimony out of context,[82] and reiterate that they have satisfied their burden on both reliance and damages.

On Sur-Reply, defendants respond that "[e]ven if the Court were to credit Plaintiffs' belated assertion that they seek out-of-pocket damages and not

---

[80]     *Id.* at 18.

[81]     Plaintiffs' Reply Memorandum of Law in Further Support of Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel at 2.  *Accord id.* at 6 n.3 ("While this Court mostly limited its [motion to dismiss] discussion of loss causation to a theory of materialization of the risk, it never rejected Plaintiffs' allegations that its losses and damages followed from corrective disclosures.  In fact, the Court specifically found loss causation for the decline in Barrick's stock following the disclosure on July 26, 2012." (citing *In re Barrick Gold*, 2015 WL 1514597, at *12-*15)).

[82]     Plaintiffs explain, *inter alia*, that "Coffman was simply testifying that *only* allowing recovery of out-of-pocket damages . . . was inappropriate in that [other] case, as it understated the amount of plaintiff's actual damages."  *Id.* at 7 (emphasis in original).

consequential damages, it should still deny Plaintiffs' motion for class certification because Plaintiffs have made no showing that out-of-pocket damages can be calculated consistent with a 'materialization of the risk' theory of liability."[83] Again, defendants cite Coffman's testimony in other cases and contend that "Coffman has repeatedly stated that a stock price decline following the materialization of a concealed risk does not measure . . . out-of-pocket damages."[84] Defendants do not, however, address plaintiffs' argument that their loss causation allegations are not limited to materialization of the risk.

### 2.     Individualized Damages Issues Do Not Predominate

Defendants' reasoning depends on two incorrect assumptions about plaintiffs' theories of damages and loss causation:  (1) that plaintiffs seek consequential damages and (2) that plaintiffs' claims are limited to materialization of the risk.  As explained, plaintiffs disavow seeking consequential damages — and I reject defendants' invitation to disregard plaintiffs' stipulation to this effect. I also note that because out-of-pocket damages are the traditional form of Section 10(b) damages, plaintiffs may not have anticipated the need to explain that they

---

[83]     Defendants' Sur-Reply Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel ("Sur-Reply Mem.") at 2.

[84]     *Id.*

were not seeking consequential damages until challenged about this issue on class

certification.[85]  I also find nothing improper about plaintiffs' decision not to proffer

expert damages analysis at this stage, given that plaintiffs are not required to

establish loss causation[86] — let alone proffer a damages model[87] — on class

certification.[88]

      Moreover, as required by *Comcast*, plaintiffs' actual theory of

damages (out-of-pocket damages) is entirely consistent with their theory of Section

10(b) liability and would be measurable on a class-wide basis.[89]  This is evidenced

by the fact that securities class actions routinely seek out-of-pocket damages for

fraudulent misrepresentations.[90]  This oft-used remedy, which is calculated based

on "the difference between the price paid and the [true] value of the stock when

---

[85]    *See Acticon*, 692 F.3d at 38 ("Traditionally, economic loss in Section 10(b) cases has been determined by use of the "out-of-pocket" measure for damages.").

[86]    *See Halliburton I*, 131 S. Ct. at 2186.

[87]    *See Roach*, 778 F.3d at 407.  *See also In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 414 (S.D.N.Y. 2015) (explaining that "nothing in *Comcast* requires an expert to perform his analyses at the class certification stage").

[88]    Defendants also concede that plaintiffs are not required to proffer a damages model on class certification.  *See* Sur-Reply Mem. at 1.

[89]    *See Comcast*, 133 S. Ct. 1426.

[90]    *See Acticon*, 692 F.3d at 38.

bought,"[91] does not create individualized damages issues that defeat

predominance.[92]  Rather, the calculation of out-of-pocket damages calls for the

application of a damages model across the entire class.[93]  Defendants themselves

apparently concede that out-of-pocket damages would not raise predominance

concerns, explaining that "the Court's statement in *Carpenters* . . . that damages

issues 'have rarely been an obstacle to establishing predominance' simply reflects

the fact that securities plaintiffs almost always seek traditional out-of-pocket

damages."[94]

     Even crediting defendants' suggestion that out-of-pocket damages are

inappropriate for materialization of the risk claims, plaintiffs have never been

precluded from proceeding under the corrective disclosure theory for loss

---

[91]    *Id.* (quotation marks and citation omitted).

[92]    This is particularly true given that the Second Circuit has emphasized that *Comcast* "did not foreclose the possibility of class certification under Rule 23(b)(3) in cases involving individualized damages calculations."  *Roach*, 778 F.3d at 408.

[93]    *See Wallace v. IntraLinks*, 302 F.R.D. 310, 318 (S.D.N.Y. 2014) ("While calculating the proper damages based on the date of purchase and sale may be complicated, it does not demand excessive individual inquiry.").

[94]    Opp. Mem. at 3 (quoting *Carpenters Pension Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 74 (S.D.N.Y. 2015)).

causation.[95]  In holding that plaintiffs had plausibly alleged Section 10(b) claims,

the April 1 Opinion in no way limited plaintiffs' claims to materialization of the

risk.  Rather, the April 1 Opinion explicitly acknowledged that the Complaint had

alleged eight corrective disclosure dates,[96] explicitly relying on at least one of these

dates in denying defendants' motion to dismiss.[97]  As such, *Comcast* — which

rejected a damages model that "failed to measure damages from the particular

antitrust injury on which petitioners' liability . . . [was] premised" — presents no

bar to predominance in this case.[98]

       In sum, plaintiffs, whose theory of liability matches their theory of

damages, have met their burden under Rule 23(b)(3) and *Comcast*.  The purpose of

the predominance requirement is, and always has been, to ensure that "resolution

of some of the legal or factual questions that qualify each class member's case as a

genuine controversy can be achieved through genuine proof, and [that] these

particular issues are more substantial than the issues subject only to individualized

---

[95]     However, I decline to extrapolate that, based on Coffman's testimony
in unrelated cases, out-of-pocket damages are never appropriate for materialization
of the risk claims.

[96]     *See In re Barrick Gold*, 2015 WL 1514597, at \*4.

[97]     *See id.* at \*14.

[98]     133 S. Ct. at 1433.

proof."[99]  Although plaintiffs may face substantial hurdles in actually proving loss

causation and out-of-pocket damages, they are not required to make these

showings until the merits stage.  The Court remains free, of course, to modify its

class certification rulings in light of subsequent developments in the litigation.[100]

### 3.    Plaintiffs Are Entitled to the *Basic* Presumption of Reliance

Defendants' sole argument against the *Basic* presumption of reliance

is premised on their assumption that plaintiffs seek consequential damages — an

assumption that is rejected for the reasons I have already discussed.  Moreover,

plaintiffs have met their evidentiary burden for invoking this presumption.  In

particular, plaintiffs offer a report and testimony from an expert whose opinion is

based on an event study to analyze market efficiency.  Plaintiffs also offer a report

from another scholar who has replicated that study and confirmed its results.  I

have reviewed the materials carefully, and find that plaintiffs have provided ample

evidence to support their entitlement to the *Basic* presumption.  Further, although

*Halliburton II* permits defendants to rebut the *Basic* presumption by, *inter alia*,

proving that the "asserted misrepresentation (or its correction) did not affect the

---

[99]    *Roach*, 778 F.3d at 405.

[100]    *See Easterling*, 278 F.R.D. at 45.

market price" of the security,[101] defendants chose not to proffer any evidence on this point — and in fact, do not challenge price impact at all.  For these reasons, I find that plaintiffs are entitled to the *Basic* presumption for the fraudulent misrepresentations alleged, and have thus satisfied all requirements of Rule 23(b)(3).

### C.    Class Period

Finally, defendants contend that, based on the rulings made in the April 1 Opinion, the Proposed Class Period should be narrowed to begin no earlier than October 28, 2010 and end no later than June 28, 2013.  Specifically, defendants argue that the earliest relevant misstatement occurred on October 28, 2010, and that the latest relevant loss causation event was a June 28, 2013 announcement made by Barrick.

It is inappropriate to narrow the Proposed Class Period for two reasons.  *First*, although the April 1 Opinion dismissed certain categories of statements (namely cost and schedule estimates), the Complaint's allegations regarding the surviving claims nevertheless span the Proposed Class Period (May 7, 2009 through and including November 1, 2013).[102]  *Second*, defendants'

---

[101]     134 S. Ct. at 2414.

[102]     With respect to the proposed start date, the Complaint alleges that on May 7, 2009, several Individual Defendants misrepresented the status of the

objections regarding the Proposed Class Period relate to the Section 10(b) elements of loss causation and materiality — elements which need not be considered at the class certification phase.[103]  Accordingly, "[w]hether claims falling outside some narrower window within the class period are, in fact, groundless on the merits is a question of fact for the jury" and cannot be decided at this stage.[104]

## V.    CONCLUSION

For the following reasons, plaintiffs' motion for class certification, approval of Class Representatives, and approval of Class Counsel is GRANTED. The following Class is certified pursuant to Rule 23(a) and (b)(3):

> All persons and entities who purchased Barrick publicly traded common stock listed on the New York Stock Exchange from May 7, 2009 through and including November 1, 2013, excluding (a) defendants; (b) members of the immediate families of the Individual Defendants; (c) all subsidiaries and affiliates of defendants, including Barrick's employee retirement and benefit plans; (d) any person who was a Barrick Director or Officer during the Class Period, as well as their liability insurance

---

Project's environmental compliance.  *See* Compl. ¶¶ 59, 245.  With respect to the proposed end date, the Complaint alleges a stock price decline on November 1, 2013 following the suspension of the Project.  *See* Compl. ¶ 515(b).  Whether this alleged stock price decline is sufficiently connected to the fraud at issue is a question of loss causation, a merits issue that plaintiffs' expert has not yet addressed.

[103]    *See Halliburton I*, 131 S. Ct. at 2186; *Amgen*, 133 S. Ct. at 1196.

[104]    *In re Gaming Lottery Secs. Litig.*, 58 F. Supp. 2d 62, 77 (S.D.N.Y. 1999).

carriers, assigns, or subsidiaries thereof; (e) any entity in which any defendant has a controlling interest; and (e) the legal representatives, heirs, successors, or assigns of any excluded party.

Lead plaintiffs Union and LRI are approved as Class Representatives, Motley Rice

LLC is appointed as Class Counsel, and Labaton Sucharow LLP is appointed as

Liaison Counsel. The Clerk of the Court is directed to close this motion (Dkt. No.

107).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            March 23, 2016

32

**- Appearances -**

**For Plaintiffs**:

Christopher F. Moriarty, Esq.
David P. Abel, Esq.
James M. Hughes, Esq.
Motley Rice LLC
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464
(843) 216-9000

Serena P. Hallowell, Esq.
Labaton Sucharow LLC
140 Broadway
New York, NY 10005
(212) 907-0884

**For Defendants**:

Ada Fernandez Johnson, Esq.
Bruce E. Yannett, Esq.
Elliott Greenfield, Esq.
Debevoise and Plimpton LLP
919 Third Avenue, 31st Floor
New York, NY 10022
(212) 909-6000