UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
In re BARRICK GOLD SECURITIES      :    Civil Action No. 1:13-cv-03851-RMB
LITIGATION                         :
                                   :    CLASS ACTION
                                   :
                                   :
                                   :
———————————————————— x

LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF SETTLEMENT

# TABLE OF CONTENTS

**Page**

I.    THE LITIGATION ....................................................................................................1

II.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED ..................4

    A.    The Standards for Reviewing a Proposed Settlement for Preliminary Approval ...........................................................................................................5

    B.    Preliminary Approval of the Settlement Should Be Granted.................................7

        1.    The Complexity, Expense, and Likely Duration of the Action Supports Approval of the Settlement............................................................7

        2.    The Reaction of the Class to the Settlement ...............................................9

        3.    The Stage of the Proceedings......................................................................9

        4.    The Risks of Establishing Liability and Damages.....................................11

        5.    The Risks of Maintaining the Class Certification Through Trial ..............12

        6.    The Ability of Defendants to Withstand a Greater Judgment....................12

        7.    The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation........................................13

III.    THE NOTICE PROGRAM IS ADEQUATE AND CONSTITUTES DUE AND SUFFICIENT NOTICE UNDER RULE 23, DUE PROCESS, AND THE PSLRA.........15

IV.    PROPOSED SCHEDULE ...........................................................................................17

V.    CONCLUSION...........................................................................................................18

# TABLE OF AUTHORITIES

Page

**CASES**

*Allen v. Dairy Farmers of Am., Inc.*,
    No. 5:09-cv-230, 2011 WL 1706778
    (D. Vt. May 4, 2011).................................................................................................6

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001).....................................................................................13

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)............................................................................4, 7, 11

*Hicks v. Morgan Stanley*,
    No. 01 Civ. 10071 (RJH), 2005 WL 2757792
    (S.D.N.Y. Oct. 24, 2005) .........................................................................................7

*In re "Agent Orange" Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984),
    *aff'd*, 818 F.2d 145 (2d Cir. 1987) .......................................................................13

*In re Alloy, Inc. Sec. Litig.*,
    No. 03 Civ. 1597 (WHP), 2004 WL 2750089
    (S.D.N.Y. Dec. 2, 2004).....................................................................................7, 11

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
    No. MDL 1500, 2006 WL 903236
    (S.D.N.Y. Apr. 6, 2006)...............................................................................7, 11, 13

*In re Currency Conversion Fee Antitrust Litig.*,
    No. 01 MDL 1409, 2006 WL 3247396
    (S.D.N.Y. Nov. 8, 2006) .........................................................................................5

*In re Enron Corp. Sec.*,
    228 F.R.D. 541 (S.D. Tex. 2005).........................................................................15

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................7, 11, 13

*In re Initial Pub. Offering Sec. Litig.*,
    260 F.R.D. 81 (S.D.N.Y. 2009) ..............................................................................8

*In re Michael Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 57 (S.D.N.Y. 1993) ..............................................................................6

Page

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) ...................................................................5, 6

*In re Platinum & Palladium Commodities Litig.*,
   No. 10cv3617, 2014 WL 3500655
   (S.D.N.Y. July 15, 2014) ...........................................................................4, 6

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) ........................................................................13

*In re Warner Chilcott Ltd. Sec. Litig.*,
   No. 06 Civ. 11515 (WHP), 2008 WL 5110904
   (S.D.N.Y. Nov. 20, 2008) .............................................................................4

*Manley v. Midan Rest. Inc.*,
   No. 14 Civ. 1693 (HBP), 2016 U.S. Dist. LEXIS 43571
   (S.D.N.Y. Mar. 30, 2016) ..............................................................................5

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972)..........................................................................13

*Strougo v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003)............................................................9

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005).............................................................................5

*Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*,
   No. 10-CV-864 (SLT) (RER), 2015 U.S. Dist. LEXIS 73276
   (E.D.N.Y. Apr. 17, 2015)................................................................................5

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78j(b).............................................................................................................1
   §78t(a).............................................................................................................1

28 U.S.C.
   §1292(b)...........................................................................................................2

**Page**

Federal Rules of Civil Procedure
    Rule 23(c)(1)(C)............................................................................................12
    Rule 23(c)(2)................................................................................................16
    Rule 23(e)................................................................................................5, 16
    Rule 23(e)(1)................................................................................................16
    Rule 30(b)(6)..................................................................................................3

## SECONDARY AUTHORITY

Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities*
*Class Action Settlements: 2015 Review and Analysis*
(Cornerstone Research 2016)..........................................................................15

Lead Plaintiffs LRI Invest S.A. and Union Asset Management Holding AG respectfully submit this memorandum in support of their unopposed motion for preliminary approval of the settlement reached in this Litigation (the "Settlement").  This proposed Settlement provides a recovery of $140,000,000 in cash to resolve this securities class action against Defendants.  The Settlement is memorialized in the Stipulation of Settlement dated May 27, 2016 (the "Stipulation"), which is attached as Exhibit 1 to the Declaration of James M. Hughes, dated May 31, 2016 ("Hughes Decl."), filed herewith.[1]

By this motion, Lead Plaintiffs seek entry of an order:  (1) granting preliminary approval of the Settlement; (2) approving the form and manner of giving notice of the Settlement to the Class; and (3) setting a hearing date for final approval thereof (the "Settlement Hearing") and a schedule for various deadlines relevant thereto ("Preliminary Approval Order").  As shown below, the Settlement is a very good result for the Class under the circumstances, is fair and reasonable under the governing standards in this Circuit, and warrants preliminary and ultimately final approval of this Court.

## I.      THE LITIGATION

The initial complaint in this action was filed on June 5, 2013.  ECF No. 1.  On September 20, 2013, the Court entered an order appointing Lead Plaintiffs (ECF No. 36), and on December 12, 2013, Lead Plaintiffs filed the operative Consolidated Amended Class Action Complaint ("Complaint") alleging violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 against the Defendants (ECF No. 50).  Lead Plaintiffs alleged that during the period between May 7, 2009 through November 1, 2013, inclusive (the "Class Period"), Defendants made materially false and misleading statements concerning Barrick's Pascua-Lama Project – one of

---

[1]   Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the Stipulation.

the world's largest untapped gold mines.[2]  By November 1, 2013, Barrick's share price had fallen from a Class Period-high of more than $55 per share to $18.01 per share, a decline of over 66%.  Defendants moved to dismiss the Complaint on February 11, 2014.  ECF Nos. 55-56. Lead Plaintiffs filed their opposition to the motion on March 25, 2014.  ECF No. 58.  Defendants filed their reply brief on April 22, 2014.  ECF No. 59.  The Court held oral argument on the motion on September 5, 2014, and on April 1, 2015, the Court issued an Order granting in part and denying in part Defendants' motion to dismiss.  ECF No. 76.

On April 15, 2015, Defendants filed a Motion for Reconsideration of the Order (ECF Nos. 78-79), and Defendant Veenman filed a Motion to Certify the Order for Appeal Pursuant to 28 U.S.C. §1292(b) (ECF Nos. 80-81).  On May 1, 2015, Lead Plaintiffs filed oppositions to both motions.  ECF Nos. 82-83.  The Court denied both of these motions on June 2, 2015.  ECF No. 93.

On May 4, 2015, the parties participated in a preliminary conference with the Court resulting in a case scheduling order issued on the same date.  ECF No. 84.  On May 15, 2015, Defendants answered the Complaint.  ECF No. 90.  Discovery began on June 10, 2015.  Among other things, the parties served and responded to document requests, interrogatories, and requests for admission; and met and conferred many times on search terms, the scope of production, a protective order, and an ESI Protocol.  Lead Plaintiffs' Counsel reviewed and analyzed more than 2.2 million pages of documents produced by Defendants and third parties, many of which were in Spanish.  Simultaneously, the parties continued to meet and confer and litigate various discovery related disputes with the Court.  Lead Plaintiffs also served fourteen deposition notices

---

[2]   The Pascua-Lama mine is located 15,000 feet above sea level in the Andes Mountains, spanning the border between Chile and Argentina, and situated beneath three massive glaciers (ECF No. 50 at ¶36).

and document subpoenas on parties and non-parties and eight letters rogatory for documents and depositions in Canada and prepared letters rogatory for service in Chile.   In pursuing the letters rogatory, Lead Plaintiffs also worked with experienced counsel in Canada and Chile to deal with country-specific issues related to taking foreign depositions.   Lead Plaintiffs also took a Rule 30(b)(6) deposition of Barrick, attended the deposition of one of Lead Plaintiffs' confidential witnesses, and defended the deposition of their loss causation/market efficiency/damages expert, and took the deposition of Defendants' loss causation/market efficiency/damages expert.   Lead Plaintiffs also produced over 12,000 pages of documents, the vast majority of which were in German, responded to interrogatories, and each Lead Plaintiff provided a representative for deposition.

To assist Lead Plaintiffs with discovery efforts and to provide expert evidence at summary judgment and trial, Lead Plaintiffs consulted with experienced experts in the fields of loss causation/market efficiency/damages, internal control compliance, accounting and mining.

While discovery was ongoing, on November 30, 2015, Lead Plaintiffs filed a Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel (the "Motion for Class Certification").   ECF Nos. 104-09.   On December 21, 2015, Defendants filed an opposition to the Motion for Class Certification.   ECF Nos. 112-13.   On January 15, 2016, Lead Plaintiffs filed a reply brief in further support of their Motion for Class Certification. ECF No. 119.   On January 22, 2016, Defendants filed a sur-reply in opposition to the Motion for Class Certification.   ECF No. 123.   On March 23, 2016, the Court granted the Motion for Class Certification.   ECF No. 152.

While simultaneously continuing to litigate the action through discovery, the parties engaged the services of the Hon. Layn R. Phillips (Ret.), a nationally recognized mediator.   The

parties prepared and exchanged detailed mediation statements and presentations and engaged in full-day in-person mediation sessions with Judge Phillips on July 31, 2015, November 3, 2015, and April 16, 2016.  These efforts culminated with the parties agreeing to settle the Litigation for $140,000,000, subject to the negotiation of the terms of a Stipulation of Settlement and approval by the Court.

Following additional negotiations, the Settling Parties reached agreement on the terms of a Stipulation of Settlement that they are now pleased to present to the Court for preliminary approval.

## II.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

As discussed herein, the proposed Settlement is a highly favorable result for the Class.  It provides a significant recovery in a case where Lead Plaintiffs faced hurdles to proceeding with the Litigation and proving liability and damages, and is certainly within the range of what would be determined to be fair and reasonable.  Accordingly, Lead Plaintiffs respectfully submit that an analysis of the *Grinnell* factors (*Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)), set forth below, which apply to a court's determination of final approval of a settlement, also supports preliminary approval of the Settlement.  *See In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008) ("Although a complete analysis of [the *Grinnell*] factors is required for final approval, at the preliminary approval stage, 'the Court need only find that the proposed settlement fits "within the range of possible approval"' to proceed.")[3]; *In re Platinum & Palladium Commodities Litig.*, No. 10cv3617, 2014 WL 3500655, at *12 (S.D.N.Y. July 15, 2014) ("At preliminary approval, it is not necessary to exhaustively consider the factors applicable to final approval.").

---

[3]    Citations and footnotes are omitted and emphasis is added unless otherwise noted.

A.      The Standards for Reviewing a Proposed Settlement for Preliminary
        Approval

Once a settlement is reached, "a court must determine whether the terms of the proposed

settlement warrant preliminary approval.  In other words, the court must make 'a preliminary

evaluation' as to whether the settlement is fair, reasonable and adequate."  *In re Currency

Conversion Fee Antitrust Litig.*, No. 01 MDL 1409, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8,

2006); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *In re NASDAQ

Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("Preliminary approval of a

proposed settlement is the first in a two-step process required before a class action may be

settled. . . .   In considering preliminary approval, courts make a preliminary evaluation of the

fairness of the settlement, prior to notice.").   "Preliminary approval is the first step in the

settlement process, through which the district court determines 'whether notice of the proposed

settlement pursuant to Rule 23(e) should be given to class members . . . and an evidentiary

hearing scheduled to determine the fairness and adequacy of the settlement.'"  *Waterford Twp.

Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*, No. 10-CV-864 (SLT) (RER), 2015 U.S.

Dist. LEXIS 73276, at *16 (E.D.N.Y. Apr. 17, 2015).   "Preliminary approval of a settlement

agreement requires only an 'initial evaluation' of the fairness of the proposed settlement on the

basis of written submissions and an informal presentation by the settling parties. . . .  To grant

preliminary approval, the court need only find that there is 'probable cause' to submit the

[settlement] to class members and hold a full-scale hearing as to its fairness."  *Manley v. Midan

Rest. Inc.*, No. 14 Civ. 1693 (HBP), 2016 U.S. Dist. LEXIS 43571, at *21-*22 (S.D.N.Y.

Mar. 30, 2016).  "In determining whether to grant preliminary approval, the court starts with the

proposition that 'there is an overriding public interest in settling and quieting litigation, and this

is particularly true in class actions.'" *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-cv-230, 2011 WL 1706778, at *2 (D. Vt. May 4, 2011).

Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and falls within the range of approval, preliminary approval is generally granted. *See NASDAQ*, 176 F.R.D. at 102; *Platinum*, 2014 WL 3500655, at *11 ("Preliminary approval, at issue here, 'is at most a determination that there is what might be termed "probable cause" to submit the proposal to class members and hold a full-scale hearing as to its fairness.'   A district court should preliminarily approve a proposed settlement which 'appears to be the product of serious, informed non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the reasonable range of approval.'").   "Once preliminary approval is bestowed, the second step of the process ensues; notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval." *NASDAQ*, 176 F.R.D. at 102.   "Preliminary approval is merely the first step in a multi-step process in which the . . . Settlement will be scrutinized by both the court and class members." *Allen*, 2011 WL 1706778, at *2.   "It deprives no party or non-party of any procedural or substantive rights, and provides a mechanism through which class members who object to the . . . Settlement can voice those objections." *Id*.   A strong initial presumption of fairness attaches to a proposed settlement if, as here, the settlement is reached by experienced counsel after arm's-length negotiations, and courts should accord great weight to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation. *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993).

**B.     Preliminary Approval of the Settlement Should Be Granted**

The Second Circuit has identified nine factors that courts should consider in deciding whether to grant final approval of a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463.  "[N]ot every factor must weigh in favor of settlement, 'rather the court should consider the totality of the[] factors in light of the particular circumstances.'"  *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004).  Although final approval is not sought at this time, an analysis of the *Grinnell* factors supports preliminary approval of the Settlement.

**1.     The Complexity, Expense, and Likely Duration of the Action Supports Approval of the Settlement**

Courts have consistently recognized that the complexity, expense, and likely duration of the litigation are critical factors in evaluating the reasonableness of a settlement, especially when the settlement being evaluated is a securities class action.  *See, e.g.*, *Hicks v. Morgan Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *5-*6 (S.D.N.Y. Oct. 24, 2005); *In re Alloy, Inc. Sec. Litig.*, No. 03 Civ. 1597 (WHP), 2004 WL 2750089, at *2 (S.D.N.Y. Dec. 2, 2004) (approving settlement, noting action involved complex securities fraud issues "that were likely to be litigated aggressively, at substantial expense to all parties"); *see also In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006) (due to their "notorious complexity," securities class actions often settle to "circumvent[] the difficulty and uncertainty inherent in long, costly trials").

- 7 -

This case is no exception.  The crux of Lead Plaintiffs' allegations pertain to Defendants' material misstatements and omissions concerning the development of the Pascua-Lama Project, a mine located 15,000 feet above sea level in the Andes Mountains, spanning thousands of acres across the border between Chile and Argentina.  Winter days typically included meters of snowfall, 60 mph winds, and temperatures of minus 60 degrees Celsius.  Lead Plaintiffs alleged that the gold at Pascua-Lama was located beneath three massive glaciers, the ice melt from which provided the region with water for agriculture, industry, and daily life.  Lead Plaintiffs further alleged that Barrick agreed to comply with over 400 environmental requirements imposed by the Chilean regulators.  *See generally* Complaint.  Lead Plaintiffs' allegations advanced numerous complex legal and factual issues, including those related to accounting, internal controls over financial reporting and disclosure controls, environmental regulation compliance, loss causation, and damages, each of which would require expert discovery and testimony.  The majority of the responsive documents produced in discovery are in Spanish and the overwhelming majority of potential witnesses are located outside of the United States.  The Class was not aided by a roadmap from a government investigation, or from any other case or proceeding.  The parties' summary judgment motions, likely addressed to myriad aspects of the claims and defenses, would have been similarly extensive and challenging, requiring a substantial investment of the parties' and the Court's resources and time.  "'[A] vast amount of additional factual and expert discovery remains to prepare for trials, and motions would be filed raising every possible kind of pre-trial, trial and post-trial issue conceivable.'"  *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 117 (S.D.N.Y. 2009).

Furthermore, a trial in this case would take weeks and would be a complicated undertaking for jurors.  Even if successful, post-trial motions and appeals would have certainly

followed.  The post-trial motions and appeals process likely would have spanned years, during which time the Class would have received no distribution of any damage award.  In addition, an appeal of any favorable verdict would carry the risk of reversal, in which case the Class would receive no recovery at all, even after having prevailed on the claims at trial.  *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery").  Accordingly, analysis of this factor supports approval of the Settlement.

### 2.    The Reaction of the Class to the Settlement

Notice regarding the Settlement has not yet been mailed or otherwise distributed.  In the event any objections are received after notice is disseminated, they will be addressed by Lead Counsel in connection with their motion for final approval of the Settlement.

### 3.    The Stage of the Proceedings

Before filing the Complaint, Lead Plaintiffs had conducted an extensive investigation, which included interviews with former Barrick employees, review and analysis of internal Company documents provided by former Barrick employees (which were cited in the Complaint), a thorough review of publicly available information, and research into and review of materials related to Barrick's alleged non-compliance with environmental regulations at Pascua-Lama.

Since the filing of the Complaint, Lead Plaintiffs used their knowledge to successfully oppose Defendants' motion to dismiss and motion for reconsideration of the denial of the motion to dismiss; successfully obtain class certification over Defendants' opposition; and prepare for three formal mediation sessions.  Lead Plaintiffs also engaged in extensive discovery efforts,

including consulting with experts in South America and the United States, preparing letters rogatory for service in Chile, serving letters rogatory in Canada, and reviewing over 2.2 million pages of documents from Defendants and non-parties, over 1.4 million pages of which were in Spanish.  In addition, each of the parties' loss causation/market efficiency/damages experts has been deposed.

Moreover, as discussed above, the parties have already litigated Defendants' motion to dismiss, motion for reconsideration of the motion to dismiss order, Lead Plaintiffs' motion for class certification, and various discovery disputes, including issues related to document production, depositions, and production of work product materials.  The volume and substance of Lead Plaintiffs' and Lead Counsel's knowledge of the merits and potential weaknesses of the claims alleged are unquestionably adequate to support the Settlement.  This knowledge is based, first and foremost, on Lead Plaintiffs' and Lead Counsel's extensive investigation before and during the prosecution of this Litigation, including, *inter alia*:  (i) review of Barrick's press releases, public statements, SEC filings, regulatory filings and reports, and securities analysts' reports and advisories about Barrick; (ii) review of several investigative reports about Barrick; (iii) research of the applicable law with respect to the claims asserted in the Litigation and the potential defenses thereto; (iv) identification of, and interviews with, former Barrick employees who had relevant information concerning Lead Plaintiffs' allegations; (v) analysis of information produced during discovery; (vi) consultations with experts in the fields of loss causation/market efficiency/damages, internal control compliance, accounting, and mining; and (vii) the deposition of each parties' damages experts.  The accumulation of this information permitted Lead Plaintiffs and Lead Counsel to be well-informed about the strengths and weaknesses of their case and to engage in thoughtful and well-reasoned settlement discussions.  *See Global*

*Crossing*, 225 F.R.D. at 458 ("the question is whether the parties had adequate information about their claims").

The extensive investigative, discovery, and motion practice in this case provided each side with the necessary insight to evaluate the merits and, as discussed herein, laid the groundwork for the arm's-length negotiations that ultimately resulted in the Settlement. This factor strongly supports the Settlement.

### 4. The Risks of Establishing Liability and Damages

In assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation. *See Grinnell*, 495 F.2d at 463. Securities class actions present hurdles to proving liability that are difficult for plaintiffs to meet. *See AOL Time Warner*, 2006 WL 903236, at *11 (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation"); *Alloy*, 2004 WL 2750089, at *2 (finding that issues present in securities action presented significant hurdles to proving liability).

While Lead Plaintiffs believe that their claims would be borne out by the evidence, they also recognize that they face hurdles to proving liability. Defendants have articulated various defenses to Lead Plaintiffs' remaining allegations that may have been accepted by the Court at the summary judgment stage, or by the jury at trial. Among other things, Defendants would continue to argue that Lead Plaintiffs' environmental claims rest on statements that were not false when made, that Lead Plaintiffs could not adequately allege scienter with respect to those statements, and that Lead Plaintiffs have not adequately plead loss causation with respect to the statements regarding environmental compliance, because the risks that ultimately materialized had not been concealed; and Lead Plaintiffs could not prove material weaknesses in Barrick's

internal controls at the Company level.  While the Court rejected Defendants' arguments at the pleading stage, Defendants would certainly raise these defenses again at summary judgment.

Lead Plaintiffs also faced substantial risks in establishing damages.  As with contested liability issues, issues relating to damages would also have likely come down to an inherently unpredictable and hotly disputed "battle of the experts."  Accordingly, in the absence of a settlement, there is a very real risk that the Class would recover an amount significantly less than the total settlement amount – or even nothing at all.  For example, Defendants maintained that Lead Plaintiffs would be unable to establish that Class Members' losses were caused by a revelation of the truth of Defendants' alleged misrepresentations, as opposed to other industry-wide and Company-specific factors.  Thus, the payment of $140,000,000, when viewed in the context of the risks and the uncertainties involved in this Litigation, weighs heavily in favor of the Settlement.

### 5.  The Risks of Maintaining the Class Certification Through Trial

After extensive briefing, on March 23, 2016, the Court issued an order granting class certification.  Nevertheless, pursuant to Federal Rule of Civil Procedure 23(c)(1)(C), "[a]n order that grants or denies class certification may be altered or amended before final judgment."  Thus, even though the Class was certified, there still remained the risk that the class certification would not be maintained through trial.  Thus, this factor weighs in favor of the Settlement.

### 6.  The Ability of Defendants to Withstand a Greater Judgment

A court may consider a defendant's ability to withstand a judgment greater than the settlement amount, although it is not generally one of the determining factors.  *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004) (affirming district court's finding that defendant's ability to pay more was irrelevant to assessment of settlement).  The

ability of a defendant to withstand a greater judgment is not an impediment to settlement when the other factors favor the settlement. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001).

### 7. The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). The Court need only determine whether the Settlement falls within a "range of reasonableness" – "a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also Global Crossing*, 225 F.R.D. at 461 (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery"). In addition, in considering the reasonableness of the Settlement, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road. *See AOL Time Warner*, 2006 WL 903236, at *13 (when settlement fund is in escrow earning interest, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery").

Assuming that this Litigation were to proceed, as discussed above, the hurdles faced by Lead Plaintiffs would be substantial. While Lead Plaintiffs believe that the claims asserted against Defendants were meritorious and that substantial evidence to support the allegations has been adduced, they recognize that this Litigation presented a number of risks to establishing both liability and damages. As an initial matter, Lead Plaintiffs would have faced significant hurdles

- 13 -

in proving to the ultimate finder of fact that Barrick violated the environmental regulations (or that the Individual Defendants were aware of these violations) and that Barrick lacked sufficient internal controls at the Company level, as opposed to just at Pascua-Lama.    Defendants strenuously argued at the motion to dismiss and motion for reconsideration stage, and they would have continued to maintain, that their statements regarding environmental compliance related only to a new Argentinian federal law (and were therefore not false when made) and that Defendants did not make actionable statements with scienter.    These issues would have undoubtedly been raised in the parties' motions for summary judgment, which almost certainly would have been extensive and complex.

Lead Plaintiffs also faced a significant hurdle in conducting merits discovery if the case did not settle.  Many of the documents and the overwhelming majority of relevant witnesses in this case are located outside of the United States, as evidenced by Lead Plaintiffs having sought eight letters rogatory for documents and depositions; and approximately 1.4 million of the 2.2 million pages of documents reviewed are in Spanish and required translation.  Many of the individuals with information concerning the suspended Pascua-Lama mine are no longer employed by Barrick and are located in Argentina and Chile.    Locating them abroad and compelling their testimony would be difficult, if not impossible.[4]

The Settlement represents a highly favorable result under the circumstances considering a possible recovery was zero.  As the court stated when approving one of the settlements in the *Enron ERISA* litigation:  "The settlement at this point would save great expense and would give the Plaintiffs hard cash, a bird in the hand."  *In re Enron Corp. Sec.*, 228 F.R.D. 541, 566 (S.D.

---

[4]    Chile is not a signatory to the Hague Convention, and Argentina, although a signatory, has declared pursuant to Article 23 that it will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents.

Tex. 2005).  Here, Lead Counsel obtained a settlement that represents approximately 3.83% of

Lead Plaintiffs' consulting expert's estimate of the maximum provable damages.  This

percentage exceeds the median recovery in similar securities class actions settled in 2015.  *See*

Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements: 2015*

*Review and Analysis* at 8, Figure 7 (Cornerstone Research 2016).[5]  In fact, the median settlement

as a percentage of estimated damages in the Second Circuit was 2.3% from 2006 through 2015.

*Id.* at 22, Figure 21.  The $140 million Settlement is also far greater than the average settlement

amount of $37.9 million in 2015 and significantly greater than the median settlement amount of

$6.1 million in 2015.  *Id*. at 6, Figure 5.

In light of these litigation risks and other above-referenced potential obstacles to recovery

at trial, and when the settlement amount is viewed in the context of the total possible recoverable

damages, the certain recovery of $140 million represents a very good result for the Class.  Lead

Plaintiffs respectfully submit that the Settlement is non-collusive, has no obvious defects, and is

within the range of reasonableness.  Accordingly, Lead Plaintiffs respectfully request that the

Court grant preliminary approval of the Settlement.

## III.  THE NOTICE PROGRAM IS ADEQUATE AND CONSTITUTES DUE AND SUFFICIENT NOTICE UNDER RULE 23, DUE PROCESS, AND THE PSLRA

Rule 23(e) governs notice requirements for settlements or "compromises" in class

actions.  The Rule provides that a class action shall not be dismissed or compromised without the

approval of the court, and notice of the proposed dismissal or compromise shall be given to all

members of the class in such manner as the court directs.  Fed. R. Civ. P. 23(e).  The Rule

---

[5]      *Available     at*     https://www.cornerstone.com/GetAttachment/a5260f54-a759-4ee3-933e-a83ab3681694/Securities-Class-Action-Settlements-2015-Review-and-Analysis.pdf.

provides, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).

Here, the parties have negotiated the Notice of Proposed Settlement of Class Action ("Notice") to be disseminated to all persons who fall within the definition of the Class and whose names and addresses can be identified with reasonable effort.  The parties further propose to supplement the mailed Notice with a summary notice (the "Summary Notice"), to be published once in the national edition of *The Wall Street Journal* and once over a national newswire service.  The Notice and Summary Notice are attached to the Stipulation and the Preliminary Approval Order as Exhibits A-1 and A-3, respectively.

As required by Federal Rule of Civil Procedure 23(c)(2) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the Notice describes the nature of the Litigation; sets forth the definition of the Class; states the Class' claims; and discloses the right of Class Members to exclude themselves from the Class, as well as the deadline and procedure for doing so and warns of the binding effect of the settlement approval proceedings on Class Members who do not exclude themselves.  The Notice also describes the Settlement; the Settlement Fund, both in the aggregate and on an average per-share basis; explains the proposed Plan of Allocation; states the parties' disagreement over damages and other issues; sets out the amount of attorneys' fees and expenses that counsel for Lead Plaintiffs intend to seek in connection with final settlement approval, including the amount of the requested fees and expenses determined on an average per-share basis; provides contact information for Lead Counsel and the claims administrator, including a toll-free telephone number; and summarizes the reasons the parties are proposing the Settlement.  The Notice also discloses the date, time, and place of the formal fairness hearing, and the procedures for objecting to the Settlement, the Plan of Allocation,

counsel's request for attorneys' fees and expenses, and appearing at the hearing.  The contents of

the Notice therefore satisfy all applicable requirements.  Moreover, the format is the same or

similar to formats that have been approved by many courts in this jurisdiction.

Lastly, as part of the preliminary approval of the Settlement, Lead Plaintiffs also

respectfully request the appointment of Garden City Group, LLC ("Garden City Group") as

Claims Administrator.  As Claims Administrator, Garden City Group will be responsible for,

among other things, mailing the Notices to the Class, publishing the Summary Notice, and

reviewing and processing claims from Class Members.  Garden City Group has extensive

experience in settlement administration and will more than adequately fulfill its duties in this

case.  *See generally* http://www.gardencitygroup.com/; Hughes Decl., Ex. 2.

## IV.    PROPOSED SCHEDULE

If the Court grants preliminary approval of the Settlement on June 23, 2016, Lead

Plaintiffs respectfully submit the following procedural schedule for the Court's review:

| Event | Time for Compliance |
|---|---|
| [Proposed] Preliminary Approval Order entered | **June 23, 2016** |
| Notice and the Proof of Claim Form shall be mailed by First-Class Mail to Class Members | Within 21 calendar days of entry of the Preliminary Approval Order:<br>**July 14, 2016** |
| Summary Notice to be published once in the national edition of *The Wall Street Journal* and to be disseminated once over a national newswire service, and Lead Counsel shall place a copy of the Complaint and the Stipulation (including Exhibits) on the Claims Administrator's website | Within 36 calendar days of entry of the Preliminary Approval Order:<br>**July 29, 2016** |
| Lead Counsel shall serve on Defendants' counsel and file with the Court proof, by affidavit or declaration, of such mailing and publishing | Within 40 calendar days of entry of the Preliminary Approval Order:<br>**August 2, 2016** |
| Deadline for filing and serving all opening briefs and supporting documents in support of the applications for final | Within 90 calendar days of entry of the Preliminary Approval Order: |

| Event | Time for Compliance |
|---|---|
| approval of the Settlement, attorneys' fees, expenses ("Applications") | **September 21, 2016** |
| Deadline for submitting Requests for Exclusion (Opt Outs) | Within 106 calendar days from entry of the Preliminary Approval Order: ***Postmarked* by October 7, 2016** |
| Deadline for written objections or oppositions to any of the Applications | Within 106 calendar days from entry of the Preliminary Approval Order: ***Received* by October 7, 2016** |
| Deadline for Lead Plaintiffs to file reply papers, if any, in further support of the Applications or in response to any objections | Within 113 calendar days from entry of the Preliminary Approval Order: **October 14, 2016** |
| Date of Settlement Hearing | 120 calendar days from entry of the Preliminary Approval Order: **October 21, 2016** |
| Deadline for Class Members' submission of Proof of Claim forms | Within 145 calendar days from entry of the Preliminary Approval Order: ***Postmarked* by November 15, 2016** |

## V.     CONCLUSION

Based on the foregoing, Lead Plaintiffs respectfully request that the Court preliminarily approve the Settlement and enter the Preliminary Approval Order, which was agreed to by the Settling Parties.

DATED:  May 31, 2016                    Respectfully submitted,

                                                        MOTLEY RICE LLC


                                                        */s/ James M. Hughes*
                                                        ───────────────────
                                                        JAMES M. HUGHES

                                                        James M. Hughes (*pro hac vice*)
                                                        Christopher F. Moriarty (*pro hac vice*)
                                                        28 Bridgeside Blvd.
                                                        Mt. Pleasant, South Carolina 29464
                                                        Telephone:  (843) 216-9000
                                                        Facsimile:  (843) 216-9450
                                                        jhughes@motleyrice.com
                                                        cmoriarty@motleyrice.com

MOTLEY RICE LLC

William H. Narwold
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
Telephone: (860) 882-1676
BNarwold@motleyrice.com

*Lead Counsel for Lead Plaintiffs and the Class*


LABATON SUCHAROW LLP

Jonathan Gardner
Serena P. Hallowell
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
jgardner@labaton.com
shallowell@labaton.com

*Liaison Counsel for Lead Plaintiffs and the Class*

CERTIFICATE OF SERVICE

I, James M. Hughes, hereby certify that on May 31, 2016, I caused a true and correct copy of the attached Lead Plaintiffs' Memorandum of Law in Support of Unopposed Motion For Preliminary Approval of Settlement to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel of record.

*/s/ James M. Hughes*
JAMES M. HUGHES