UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ———————————————— x | | |
| In re BARRICK GOLD SECURITIES LITIGATION | : : : | Civil Action No. 1:13-cv-03851-SAS |
| ———————————————— | : | CLASS ACTION |
| | : | |
| This Document Relates To: | : : | ECF Case |
| ALL ACTIONS. | : : | |
| ———————————————— x | | |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

I.      PRELIMINARY STATEMENT .............................................................. 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ...................................... 2

III.    STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS ... 3

        A.      The Law Favors And Encourages Settlements .......................... 3

        B.      The Settlement Must Be Procedurally And Substantively Fair, Adequate,
                And Reasonable .......................................................... 4

IV.     THE PROPOSED SETTLEMENT IS PROCEDURALLY AND SUBSTANTIVELY FAIR,
        ADEQUATE, AND REASONABLE ....................................................... 5

        A.      The Settlement Is Entitled To A Strong Presumption Of Fairness ...... 5

        B.      The Settlement Satisfies The *Grinnell* Factors ........................ 7

                1.      Continued Litigation Would Be Complex, Expensive, and
                        Protracted ...................................................... 7

                2.      The Lack of Objections to Date Supports Final Approval of the
                        Settlement ...................................................... 9

                3.      Lead Plaintiffs Have Sufficient Information to Make an Informed
                        Decision as to the Settlement .................................. 10

                4.      Establishing Liability and Damages Involves Significant Risks ... 12

                        a.      Falsity ................................................ 13

                        b.      Materiality ........................................... 14

                        c.      Scienter .............................................. 14

                        d.      Loss Causation and Damages ......................... 15

                5.      Maintaining Class Action Status Through Trial Presents a
                        Substantial Risk ............................................... 17

                6.      Defendants' Ability to Withstand a Greater Judgment ........... 17

                7.      The Settlement Amount Is Reasonable in View of the Best
                        Possible Recovery and the Risks of Litigation ................. 18

V.      THE PLAN OF ALLOCATION OF THE NET SETTLEMENT FUND IS FAIR AND
        ADEQUATE ............................................................................. 19

VI.     NOTICE TO THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE
        PROCESS ............................................................................... 21

VII.    CONCLUSION ........................................................................... 23

CERTIFICATE OF SERVICE .............................................................. 25

i

# TABLE OF AUTHORITIES

C<small>ASES</small>

*Chatelain v. Prudential-Bache Securities, Inc.*,
805 F. Supp. 209 (S.D.N.Y. 1992) ............................................................... 17

*Cinelli v. MCS Claim Services, Inc.*,
236 F.R.D. 118 (E.D.N.Y. 2006) .................................................................. 12

City of Detroit v. Grinnell Corp.,
495 F.2d 448 (2d Cir. 1974) ................................................... 4, 5, 12, 19

*City of Providence v. Aeropostale, Inc.*,
No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014),
*aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015)........................... 4, 9, 12

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ...................................................................... 5, 10

*Denney v. Jenkens & Gilchrist*,
230 F.R.D. 317 (S.D.N.Y. 2005) ................................................................ 12

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336 (2005)...................................................................................... 15

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)...................................................................................... 21

*Hicks v. Morgan Stanley*,
No. 01 Civ. 10071(RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ........................... 9, 18

*In re "Agent Orange" Product Liability Litigation*,
597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987)................................ 18

*In re Advanced Battery Technologies, Inc. Securities Litigation*,
298 F.R.D. 171 (S.D.N.Y. 2014) ............................................................ 3, 7, 20

*In re Air Cargo Shipping Services Antitrust Litigation.*,
No. 06-MD-1775 (JG)(VVP), 2015 U.S. WL 5918273 (E.D.N.Y. Oct. 9, 2015)................... 20

*In re American Bank Note Holographics, Inc.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001) .................................................... 15, 16, 20

*In re AOL Time Warner, Inc. Securities & "ERISA" Litigation*,
No. MDL 1500, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)........................................ 13, 15, 19

*In re Austrian & German Bank Holocaust Litigation*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000),
*aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ........................... 10, 12

*In re Bear Stearns Cos. Securities, Derivative, & ERISA Litigation*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012) ............................................................. 6, 10

*In re Citigroup Inc. Bond Litigation*,
296 F.R.D. 147 (S.D.N.Y. 2013) ...................................................................... 3

*In re EVCI Career Colleges Holding Corp. Securities Litigation*,
No. 05 Civ. 10240(CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ................................... 4

*In re Flag Telecom Holdings, Ltd. Securities Litigation*,
No. 02-CV-3400 (CM)(PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)................ 9, 12, 16

*In re Gilat Satellite Networks, Ltd.*,
No. CV-02-1510 (CPS)(SMG), 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ....................... 8

*In re Gilat Satellite Networks, Ltd.*,
No. CV-02-1510, 2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007) ............................................... 7

*In re Global Crossing Securities & ERISA Litigation*,
225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................................... passim

*In re Hi-Crush Partners L.P. Securities Litigation*,
No. 12-Civ-8557 (CM), 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ................................. 10

*In re High-Tech Employee Antitrust Litigation*,
No. 11-CV-02509-LHK, 2015 U.S. Dist. LEXIS 26635 (N.D. Cal. Mar. 3, 2015) .................. 6

*In re Holocaust Victim Assets Litigation*,
413 F.3d 183 (2d Cir. 2001) ................................................................................................. 21

*In re IMAX Securities Litigation*,
283 F.R.D. 178 (S.D.N.Y. 2012) .............................................................................. 4, 10, 17

*In re Independent Energy Holdings PLC Securities Litigation*,
302 F. Supp. 2d 180 (S.D.N.Y. 2003) ................................................................................. 22

*In re Luxottica Group S.p.A. Securities Litigation*,
233 F.R.D. 306 (E.D.N.Y. 2006) ............................................................................................ 3

*In re McDonnell Douglas Equipment Leasing Securities Litigation*,
838 F. Supp. 729 (S.D.N.Y. 1993) ......................................................................................... 5

*In re Merrill Lynch Tyco Research Securities Litigation*,
249 F.R.D. 124 (S.D.N.Y. 2008) ................................................................................... 21, 22

*In re OCA, Inc. Securities & Derivative Litigation*,
No. 05-2165, 2009 WL 512081 (E.D. La. Mar. 2, 2009) ...................................................... 23

*In re PaineWebber Ltd. Partnerships Litigation*,
147 F.3d 132 (2d Cir. 1998) ................................................................................................... 3

*In re PaineWebber Ltd. Partnerships Litigation*,
171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997)............................. passim

*In re Sadia S.A. Securities Litigation*,
No. 08 Civ. 9528(SAS), 2011 WL 6825235 (S.D.N.Y. Dec. 28, 2011).................... 4, 9, 16, 23

*In re Sony SXRD Rear Projection Television Class Action Litigation*,
No. 06 Civ. 5173(RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008)..................................... 8

*In re Sumitomo Copper Litigation*,
189 F.R.D. 274 (S.D.N.Y. 1999) .......................................................................................... 12

*In re Telik, Inc. Securities Litigation*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) ........................................................ 4

*In re Union Carbide Corp. Consumer Products Business Securities Litigation*,
  718 F. Supp. 1099 (S.D.N.Y. 1989) .................................................. 3, 18

*In re Veeco Instruments Inc. Securities Litigation*,
  No. 05 MDL 01695(CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ..................... 9, 12, 21

*In re WorldCom, Inc. Securities Litigation*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005) ....................................................... 20

*International Brotherhood of Electrical Workers Local 697 Pension Fund v.
  International Game Technology, Inc.*,
  No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742 (D. Nev. Oct. 19, 2012) ...................... 6

*Joel A. v. Giuliani*,
  218 F.3d 132 (2d Cir. 2000) ............................................................... 4

*Maley v. Del Global Technologies Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................ passim

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972) .............................................................. 18

*Park v. Thomson Corp.*,
  No. 05 Civ. 2931(WHP), 2008 WL 4684232 (S.D.N.Y. Oct. 22, 2008)........................ 16

*Plummer v. Chemical Bank*,
  668 F.2d 654 (2d Cir. 1982) ............................................................. 10

*Slomovics v. All for a Dollar, Inc.*,
  906 F. Supp. 146 (E.D.N.Y. 1995) ........................................................ 15

*Strougo ex rel. Brazilian Equity Fund v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003) ...................................................... 8

*Teachers' Retirement System of Louisiana v. A.C.L.N., Ltd.*,
  No. 01-CV-11814(MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004)........................ 8, 12

*Thompson v. Metropolitan Life Insurance Co.*,
  216 F.R.D. 55 (S.D.N.Y. 2003) ............................................................ 5

*Vargas v. Capital One Financial Advisors*,
  559 F. App'x 22 (2d Cir. 2014) .......................................................... 21

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) ......................................................... passim

## RULES

Fed. R. Civ. P. 23(c) ..................................................................... 17

Fed. R. Civ. P. 23(c)(2)(B) .......................................................... 21, 23

Fed. R. Civ. P. 23(e)(1)................................................................... 21

I.   **PRELIMINARY STATEMENT**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiffs LRI Invest S.A. and Union Asset Management Holding AG (collectively, "Lead Plaintiffs"), on behalf of themselves and the Class, respectfully submit this memorandum of law in support of their motion for final approval of the $140 million settlement (the "Settlement Amount") reached in the above-captioned consolidated securities class action (the "Action") and approval of the Plan of Allocation of the Settlement proceeds.   The terms of the settlement are set forth in the Amended Stipulation of Settlement ("Stipulation" or "Settlement"), which was previously filed with the Court.  ECF. No. 167-1.[1]  The Settlement provides for the payment of $140 million in cash (the "Settlement Amount") for the benefit of the Class in exchange for the dismissal of all claims brought in the Action against the Defendants.  This recovery is the product of Lead Plaintiffs' Counsel's vigorous efforts in prosecuting the Action, followed by arm's-length settlement negotiations among experienced and knowledgeable counsel, including three formal mediation sessions (as well as numerous telephonic sessions) conducted over a nine-month period and overseen by a nationally recognized, neutral mediator.

The Settlement represents an outstanding result for the Class in light of the risks Lead Plaintiffs faced, and would have faced, had the litigation continued, including:  (1) the risk that the Defendants would prevail on their likely motions for summary judgment at the conclusion of discovery; and (2) the possibility that protracted, expensive, and contested litigation against

---

[1]   All capitalized terms not otherwise defined herein have the meanings set forth in the Stipulation and the Declaration of James M. Hughes in Support of Lead Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation and Lead Counsel's Motion for an Award of Attorneys' Fees and Payment of Litigation Expenses ("Hughes Declaration"), submitted herewith.

foreign defendants, including trial and likely appeals, could ultimately lead to no recovery, or a far smaller recovery.

Further confirming the fairness of the Settlement is the fact that, to date, members of the Class have reacted positively to the Settlement.  Pursuant to the Order Preliminarily Approving Settlement and Providing for Notice ("Notice Order") (ECF. No. 169), an aggregate of 1,072,843 Summary Notice and Proof of Claim forms (the "Notice Packet") have been disseminated to potential class members as of September 4, 2016, and the Summary Notice was published in *The Wall Street Journal* and transmitted over *PR Newswire* on June 27, 2016.  *See* Declaration of Stephen J. Cirami in Support of Lead Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation ¶¶ 3, 10 ("Cirami Declaration"), attached as Exhibit 7 to the Hughes Declaration.  To date, only two objections to the Settlement have been filed and only seventy requests for exclusion from the Class have been received.  *Id.* ¶¶ 11, 14.

Finally, Lead Plaintiffs' Counsel, who have substantial experience prosecuting securities class actions, have concluded that the Settlement is fair, reasonable, and in the best interest of the Class.  Accordingly, Lead Plaintiffs respectfully request that the Court grant final approval of the Settlement, and approve the Plan of Allocation as fair and reasonable.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

To avoid repetition, Lead Plaintiffs respectfully refer the Court to the accompanying Hughes Declaration for a detailed discussion of the factual background and procedural history of the Action, the extensive efforts undertaken by Lead Plaintiffs and their counsel during the course of the Action, the risks of continued litigation, and a discussion of the negotiations leading to the Settlement.

III.    STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS

A.    **The Law Favors And Encourages Settlements**

"The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014); *see also In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) ("Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation."); *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) ("[T]he courts have long recognized that [complex class action] litigation 'is notably difficult and notoriously uncertain,' and that compromise is particularly appropriate." (citation omitted)). Therefore, when exercising discretion to approve a settlement, courts are "mindful of the 'strong judicial policy in favor of settlements.'" *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)).

"A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery,' and 'overseen by an experienced, neutral third-party mediator.'" Decision & Order Approving Settlement at 7-8, *In re Tesco PLC Sec. Litig.*, No. 14 Civ. 8495 (RMB) (S.D.N.Y. May 26, 2016) (citations omitted) (quoting *Wal-Mart*, 396 F.3d at 116; *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013)) (the "*Tesco* Order") (attached hereto as Ex. 1). "Due to the presumption in favor of settlement, '[a]bsent fraud or collusion, courts should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement.'" *Advanced Battery*, 298 F.R.D. at 174 (alterations in original) (quoting *In re EVCI*

3

*Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240(CM), 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007)).  Thus, the Second Circuit has cautioned that, while a court should not give "rubber stamp approval" to a proposed settlement, it should "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case."  *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974).

### B.   The Settlement Must Be Procedurally And Substantively Fair, Adequate, And Reasonable

Courts may approve a settlement that is binding on the class if it determines that the settlement is "'fair, adequate, and reasonable, and not a product of collusion.'"  *Wal-Mart*, 396 F.3d at 116 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)).  This evaluation requires courts to consider both "the terms of the settlement and the negotiation process leading up to it."  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008); *Wal-Mart*, 396 F.3d at 116 (same).

With respect to the negotiation process, a class action settlement enjoys a "presumption of fairness" when it is the product of arm's-length negotiations between experienced and capable counsel.  *See City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494, at *3 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73, 74 (2d Cir. 2015); *see also In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012); *In re Sadia S.A. Sec. Litig.*, No. 08 Civ. 9528(SAS), 2011 WL 6825235, at *1 (S.D.N.Y. Dec. 28, 2011).

With respect to the substantive terms of a settlement, courts in the Second Circuit consider the following factors (known as the "*Grinnell* factors") when determining whether to approve a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of

discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Wal-Mart*, 396 F.3d at 117 (quoting *Grinnell*, 495 F.2d at 463).

In finding that a settlement is substantively fair, reasonable, and adequate, not every factor needs to be satisfied, but "rather, the court should consider the totality of these factors in light of the particular circumstances." *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003) (citing *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001)).  Thus, the court should assess the settlement as presented, without modifying its terms, and "without substituting its 'business judgment for that of counsel, absent evidence of fraud or overreaching.'" *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004) (quoting *In re McDonnell Douglas Equip. Leasing Sec. Litig.*, 838 F. Supp. 729, 737 (S.D.N.Y. 1993)).

Lead Plaintiffs respectfully submit that the proposed Settlement is fair, reasonable, and adequate when measured under the relevant criteria and the circumstances of this Action, and should be approved by the Court.

## IV.   THE PROPOSED SETTLEMENT IS PROCEDURALLY AND SUBSTANTIVELY FAIR, ADEQUATE, AND REASONABLE

### A.   The Settlement Is Entitled To A Strong Presumption Of Fairness

As previously noted, a strong presumption of fairness attaches to a class action settlement reached through arm's-length negotiations among able and experienced counsel. *See Wal-Mart*, 396 F.3d at 116; *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("So long as the integrity of the arm's length negotiation process is preserved, . . . a strong initial

presumption of fairness attaches to the proposed settlement."), *aff'd*, 117 F.3d 721, 722 (2d Cir. 1997).

Here, the presumption of fairness and adequacy is appropriate because the Settlement was reached by experienced, fully-informed counsel after arm's-length negotiations, without collusion, and following three mediation sessions before a nationally recognized mediator. *See Global Crossing*, 225 F.R.D. at 461; *see also* Hughes Decl. ¶¶ 10, 66-67. Indeed, the participation of the Honorable Layn R. Phillips (Ret.), a former federal district judge and a highly qualified mediator, strongly supports a finding that negotiations were conducted at arm's length and without collusion. *See Tesco* Order at 9; *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 U.S. Dist. LEXIS 26635, at *7 (N.D. Cal. Mar. 3, 2015) (finding Judge Phillips to be "an experienced mediator"); *In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (approving settlement when parties "engaged in extensive arm's length negotiations, which included multiple sessions mediated by retired federal judge Layn R. Phillips, an experienced and well-regarded mediator of complex securities cases"); *IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742, at *2 (D. Nev. Oct. 19, 2012) (finding settlement fair when it "was reached following arm's length negotiations between experienced counsel that involved the assistance of an experienced and reputable private mediator, retired Judge Phillips").

The negotiation process that Judge Phillips oversaw also supports the presumption of fairness. The process included the preparation and exchange of detailed mediation statements, and candid and frank discussions about the strengths and weaknesses of the case. Hughes Decl. ¶¶ 64-65. Thus, Lead Plaintiffs' Counsel were fully informed of the strengths and weaknesses of the case by the time the Settlement was reached. *See id.* ¶ 9; *see also Maley v. Del Global Techs.*

*Corp.*, 186 F. Supp. 2d 358, 366 (S.D.N.Y. 2002) ("'[G]reat weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.").

These and other considerations discussed in the Hughes Declaration, therefore, confirm the reasonableness of the Settlement. Thus, the Settlement should be entitled to the presumption of procedural fairness under Second Circuit law.

### B. The Settlement Satisfies The *Grinnell* Factors

#### 1. Continued Litigation Would Be Complex, Expensive, and Protracted

Without the Settlement, the anticipated complexity, cost, and duration of the Action would be considerable. *See Advanced Battery*, 298 F.R.D. at 175 ("[T]he complexity, expense, and likely duration of litigation are critical factors in evaluating the reasonableness of a settlement."); *see also In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510, 2007 WL 1191048, at *10 (E.D.N.Y. Apr. 19, 2007). Not only does this Action involve many complex legal issues relating to the federal securities laws, it also involves the Defendants' material misstatements and omissions concerning the development of the Pascua-Lama Project, a mine located 15,000 feet above sea level in the Andes Mountains, spanning thousands of acres across the border between Chile and Argentina. Lead Plaintiffs' allegations raised issues involving, among other things, internal controls over financial reporting and disclosure controls, environmental regulation compliance, loss causation, and damages. Hughes Decl. ¶¶ 13, 24. Accordingly, if the litigation were to proceed, the parties would be required to complete expensive and time consuming document and deposition discovery. At the time the Settlement was reached, Lead Plaintiffs' Counsel had received and reviewed over two million pages of documents from Defendants and third parties, many of which were in Spanish and required translation; issued letters rogatory

7

with the assistance of local lawyers for documents and depositions in Canada and prepared letters rogatory for service in Chile; retained a number of experts; and taken and defended several depositions. *See id.* at ¶¶ 33, 54, 58, 125.

Had the Settlement not been reached, Lead Plaintiffs would be required to complete document and deposition discovery, both in the United States and overseas, retain additional experts, prepare additional expert reports, and take additional expert depositions and discovery. *See Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-CV-11814(MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) (approving settlement in action against foreign company when many defendants, witnesses, and documents were located abroad, beyond court's subpoena power); *see also In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS)(SMG), 2007 WL 2743675, at *10 (E.D.N.Y. Sept. 18, 2007) (finding costs of litigating against foreign defendant to be "significant" due to increased costs and complexity of discovery). A motion for summary judgment, as well as motions *in limine*, would almost certainly have to be briefed by the parties. All of the foregoing would add years of additional delay before Class Members could enjoy the benefit of a verdict, if any, obtained by Lead Plaintiffs. *See In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173(RPP), 2008 WL 1956267, at *6 (S.D.N.Y. May 1, 2008); *Strougo ex rel. Brazilian Equity Fund v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . , the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery.").

Even if the Class could recover a larger judgment after a trial, the additional delay posed by the trial itself, as well as post-trial motions and the appellate process, could deny the Class

any recovery for years, further reducing any such recovery's value.  *See Hicks v. Morgan Stanley*, No. 01 Civ. 10071(RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

The Settlement avoids these risks.  Instead of the lengthy, costly, and uncertain course of further litigation, the Settlement provides for an immediate cash recovery for the Class.  As a result, the Settlement outweighs the risks associated with lengthy and costly continued litigation.

### 2. The Lack of Objections to Date Supports Final Approval of the Settlement

"[T]he reaction of the class to a settlement is considered perhaps 'the most significant factor to be weighed in considering its adequacy.'"  *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695(CM), 2007 WL 4115809, at *7 (S.D.N.Y. Nov. 7, 2007); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM)(PED), 2010 WL 4537550, at *16 (S.D.N.Y. Nov. 8, 2010).  In fact, the "'absence of objections may itself be taken as evidencing the fairness of a settlement.'"  *Aeropostale*, 2014 WL 1883494, at *5 (quoting *PaineWebber*, 171 F.R.D. at 126); *see also Tesco* Order at 10 ("[T]he 'reaction of the class to the settlement' – favors approval of the Settlement insofar as no Class Member objected to the Settlement.").

To date, the reaction of the Class is overwhelmingly positive and supports approval of the Settlement.  *Sadia*, 2011 WL 6825235, at *1.  Pursuant to the Notice Order, an aggregate of 1,072,843 Notice Packets have been disseminated to potential Class Members and nominees by first-class mail; and it was published in *The Wall Street Journal* and transmitted over *PR Newswire* on June 27, 2016.  Cirami Decl. ¶¶ 3, 10.  Class Members have until September 21, 2016, to object to the Settlement or request exclusion from the Class.  While that date has not yet passed, to date there have been only two objections to the Settlement and only seventy requests

9

for exclusion have been received.  *Id.* ¶¶ 11, 14.  Lead Plaintiffs will file papers on or before September 30, 2016, to address the objection (and any others that are received) and further update the Court on requests for exclusion that may be received following this submission.

### 3.   Lead Plaintiffs Have Sufficient Information to Make an Informed Decision as to the Settlement

In considering the third *Grinnell* factor, "'the question is whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement.'"  *Bear Stearns*, 909 F. Supp. 2d at 267 (quoting *IMAX*, 283 F.R.D. at 190).  "To satisfy this factor, parties need not have even engaged in formal or extensive discovery."  *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557 (CM), 2014 WL 7323417, at *7 (S.D.N.Y. Dec. 19, 2014) (noting discovery cannot commence in cases brought under PSLRA until motion to dismiss is denied (citing *Maley*, 186 F. Supp. 2d at 363)); *see also In re Austrian & Ger. Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) ("[T]he Court need not find that the parties have engaged in extensive discovery.  Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make . . . an appraisal' of the Settlement." (ellipsis in original) (quoting *Plummer v. Chem. Bank*, 668 F.2d 654, 660 (2d Cir. 1982))), *aff'd sub nom. D'Amato*, 236 F.3d at 87); *see also Global Crossing*, 225 F.R.D. at 458 ("[T]he question is whether the parties had adequate information about their claims.").

In this case, there is no question that Lead Plaintiffs had sufficient information to make an informed decision on the propriety of the Settlement.  As detailed in the Hughes Declaration, Lead Plaintiffs and their counsel were able to negotiate a settlement for the Class after conducting an extensive factual investigation and analysis relating to the events and transactions

alleged in the Complaint, and undertook substantial litigation efforts over the last three years. This included, *inter alia*:  conducting a thorough pre-filing investigation into the Class' claims; drafting a detailed consolidated class action complaint; successfully opposing, in part, Defendants' motion to dismiss the Complaint; defeating Defendants' motion for reconsideration and Defendant Veenman's motion to certify the motion to dismiss order for appeal pursuant to 28 U.S.C. § 1292(b); engaging in extensive fact and expert discovery, both in the United States and abroad, including review and analysis of over 2.2 million pages of documents, litigating discovery disputes, expert depositions, and class certification discovery; successfully obtaining class certification; and participating in three in-person mediation sessions with Defendants overseen by Judge Phillips, with numerous follow-up communications.  *See* Hughes Decl. ¶¶ 9, 33, 64-67.

As noted above, Lead Counsel prepared a detailed mediation statement that was provided to Judge Phillips and Defendants' counsel before the initial July 31, 2015 mediation session. The parties also submitted to Judge Phillips responses to the initial mediation statements and Judge Phillips' questions.  Finally, the parties held discussions during which Defendants' counsel not only pressed the arguments raised in their motions to dismiss but also identified arguments Defendants likely would make if the case were to progress.  *Id.* ¶ 81-97.  The initial mediation session was unsuccessful and litigation continued.  The Parties attended a second mediation with Judge Phillips on November 3, 2015, but were still far apart on their views of the case.  *Id.* ¶ 66. Litigation continued, and Judge Phillips met with the Parties again on April 16, 2016.  While the case did not settle on that day, the Parties made sufficient progress for Judge Phillips to continue discussions with the Parties.  On April 18, 2016, Judge Phillips presented the Parties with a mediator's proposal that the case settle for $140 million.  Each side accepted the proposal.

*Id.* ¶ 67.  Thus, Lead Counsel had a clear picture of the strengths and weaknesses of this case and of the legal and factual defenses that Defendants likely would raise had the litigation continued.

Accordingly, Lead Plaintiffs and their counsel "have developed a comprehensive understanding of the key legal and factual issues in the litigation and, at the time the Settlement was reached, had 'a clear view of the strengths and weaknesses of their case' and of the range of possible outcomes at trial."  *Aeropostale*, 2014 WL 1883494, at *7 (quoting *Teachers' Ret. Sys. of La.*, 2004 WL 1087261, at *3).

**4.     Establishing Liability and Damages Involves Significant Risks**

In assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation. *See Grinnell*, 495 F.2d at 463; *Veeco*, 2007 WL 4115809, at *8; *Austrian & Ger. Bank*, 80 F. Supp. 2d at 177.  However, the Court need not "'decide the merits of the case or resolve unsettled legal questions,'" *Cinelli v. MCS Claim Servs., Inc.*, 236 F.R.D. 118, 121 (E.D.N.Y. 2006) (citation omitted), or "foresee with absolute certainty the outcome of the case," *Austrian & Ger. Bank*, 80 F. Supp. 2d at 177.  Rather, the Court need only weigh the risks of litigation against the certainty of recovery offered by the Settlement.  *See Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 338 (S.D.N.Y. 2005).

The risks presented by securities litigation generally weigh in favor of final settlement approval.  *Tesco* Order at 11 ("Additionally, Plaintiffs faced the risks of bringing any securities claims, such as establishing scienter and damages.").  Courts in this district "'have long recognized that [securities] litigation is notably difficult and notoriously uncertain.'"  *Flag Telecom*, 2010 WL 4537550, at *15 (quoting *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999)); *see also In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500,

2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006) ("The difficulty of establishing liability is a common risk of securities litigation.").

While Lead Counsel believe, based on their investigation and the discovery obtained to date, that the claims asserted against Defendants have merit, they also recognize that Lead Plaintiffs would (and did) face hurdles and uncertainties in prosecuting this very complex Action and recovering a judgment from the Defendants.  Hughes Decl. ¶ 70.  There was no restatement of financial results, and there were no U.S. or Canadian government enforcement investigations to aid Lead Plaintiffs' Counsel's efforts.  *Id.* ¶ 68.

### a.  Falsity

Lead Plaintiffs must prove that each alleged misstatement was false or misleading at the time it was made, a complex undertaking given the four-and-a-half year Class Period[2] and the variety of alleged wrongdoing, as well as the fact that many potential witnesses are located outside the jurisdiction of the Court.  These individuals would have been difficult, if not impossible, to compel to provide testimony.  *Id.* ¶ 77.

Defendants forcefully have argued that Lead Plaintiffs could not prove falsity because they could not establish that the Pascua-Lama Project was not undertaken pursuant to existing environmental approvals or that Barrick did not have measures in place to protect the environment.  *Id.* ¶ 73.  In fact, Defendants would continue to maintain that the Complaint did not allege non-compliance with the Argentine Environmental Impact Assessment or Argentine law.  *Id.* ¶ 74.  In addition, Defendants would argue that Barrick reported in January 2013 that

---

[2]     Defendants argued that any evidence of problems at the Pascua-Lama mine towards the end of the Class Period could not establish the falsity of statements earlier in the Class Period about the Company's internal controls or accounting for capital costs at that stage.  *Id.* ¶ 79.

Argentina's environmental authority concluded an audit, pursuant to the new federal glacier protection law, and determined that Pascua-Lama had not impacted the surrounding glaciers. *Id.*

With respect to Lead Plaintiffs' internal control allegations, Defendants would argue that Barrick routinely disclosed control issues at Pascua-Lama to investors, along with the steps being taken to address them. *Id.* ¶ 75. Defendants also challenged Lead Plaintiffs' allegations regarding accounting for capital costs. *Id.* ¶ 76. Defendants would argue that Lead Plaintiffs failed to allege particularized facts suggesting that the asset impairment concerning Pascua-Lama reported to investors in 2012 and 2013 were performed inadequately or were based upon incomplete or inaccurate information. *Id.*

### b.    Materiality

Defendants would also challenge the materiality of their alleged misrepresentations and omissions, arguing that they were nothing more than inactionable statements of corporate optimism or puffery. *Id.* ¶ 82. Although Lead Plaintiffs defeated the motion to dismiss on materiality, there is no guarantee that they could prove this element of their claim at summary judgment or trial. *Id.* ¶ 83.

### c.    Scienter

Even if Lead Plaintiffs proved falsity and materiality, they also had to prove that Defendants acted with the requisite scienter – that Defendants knew or recklessly disregarded (1) Barrick's non-compliance with applicable environmental regulations at Pascua-Lama; (2) that the Company's internal controls were deficient; and (3) that they had no basis for their capital costs and accounting estimates. *Id.* ¶ 84. In particular, Defendants would argue that Lead Plaintiffs' allegations amount to assertions that Barrick purposefully pursued a massive, multi-billion dollar mining project at Pascua-Lama despite knowing – from the outset – that the project was not economically or environmentally feasible. *Id.* Defendants would also seek to assert that

14

they were, at all times, acting in good faith reliance on Barrick's outside auditors. *Id.* ¶ 86. Courts have often recognized the difficulty and substantial risk of pleading and proving scienter. *See, e.g.*, *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001); *Slomovics v. All for a Dollar, Inc.*, 906 F. Supp. 146, 149 (E.D.N.Y. 1995).[3]

Therefore, as detailed in the Hughes Declaration, while Plaintiffs believe that they could have satisfied their burden of establishing falsity, materiality, and scienter, they recognize that overcoming these obstacles was anything but a foregone conclusion.

### d.    Loss Causation and Damages

Lead Plaintiffs also would have faced challenges with respect to proving loss causation and the calculation of damages. *See AOL Time Warner*, 2006 WL 903236, at *9 ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages."). To establish loss causation, Lead Plaintiffs would have to prove "a causal connection between the material misrepresentation and the loss." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). Defendants would argue that the decline in Barrick stock during the Class Period was caused by factors other than Lead Plaintiffs' alleged corrective disclosures and materialization of the risk allegations. Hughes Decl. ¶ 90. In particular, Defendants argued that the steep decline in the price of gold that occurred during the second half of the Class Period was responsible for much of the losses alleged by Lead Plaintiffs. *Id.* Moreover, using Judge Scheindlin's order on the motion to dismiss as support, Defendants would argue that Lead Plaintiffs would have to disaggregate the

---

[3]    Lead Plaintiffs faced practical challenges as well. The Class Period began more than seven years ago and ended nearly three years ago. Hughes Decl. ¶ 88. Not only would Lead Plaintiffs struggle to secure deposition testimony from many relevant witnesses because they are located outside of the Court's jurisdiction, but it would be almost impossible to secure their testimonies at trial. *Id.*

confounding, non-fraud-related information revealed contemporaneously with the correct disclosures. *See* Opinion & Order, ECF No. 152, at 2 n.6 ("Several of the identified disclosures relate, at least in part, to statements regarding cost and schedule estimates that are no longer he basis of any claims in this case.") (citation omitted).

While Plaintiffs would have been able to present a cogent and persuasive expert's view establishing loss causation and damages, Defendants also would have been able to produce well-qualified experts who would opine against a finding of loss causation for the price declines, giving rise to the risk of a "battle of the experts." *See Am. Bank Note*, 127 F. Supp. 2d at 427 ("'In [a] "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions.'"); Hughes Decl. ¶ 95. Lead Plaintiffs could not be certain which expert's view would prevail at trial. *See, e.g.*, *Flag Telecom*, 2010 WL 4537550, at *18; *see also Sadia*, 2011 WL 6825235, at *2 ("Damages must be proved by expert testimony, which a jury may choose to reject."). Accordingly, courts have recognized that when parties likely will rely on significant expert testimony and analysis, settlement is favored. *See Park v. Thomson Corp.*, No. 05 Civ. 2931(WHP), 2008 WL 4684232, at *4 (S.D.N.Y. Oct. 22, 2008).

Even if Lead Plaintiffs successfully established loss causation, there would be no guarantee that a jury would have agreed with their expert's calculation of damages. "Calculation of damages is a 'complicated and uncertain process, typically involving conflicting expert opinion' about the difference between the purchase price and the stock's 'true' value absent the alleged fraud." *Global Crossing*, 225 F.R.D. at 459. As with loss causation, Lead Plaintiffs could not be certain which expert's view would prevail at trial.

### 5.   Maintaining Class Action Status Through Trial Presents a Substantial Risk

While Lead Plaintiffs prevailed on their motion for class certification, Defendants may have moved to decertify the Class or to shorten the Class Period before trial or on appeal, as class certification may be reviewed at any stage of the litigation.  *See Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification."); Fed. R. Civ. P. 23(c) (authorizing a court to decertify a class at any time).  In fact, the length of the Class Period was, and would continue to be, vigorously litigated by the Parties.  Hughes Decl. ¶ 96.  The order on the motion to dismiss disposed of Lead Plaintiffs' allegations that Defendants engaged in securities fraud by claiming that Pascua-Lama would be a "low-cost project," as well as their cost and scheduling arguments.  *Id.*  Defendants maintained that this ruling held that Lead Plaintiffs had only established scienter in their internal controls and accounting for capital costs as of July 2011, essentially cutting the Class Period in half, and massively reducing the alleged damages.  The presence of this risk and the uncertainty surrounding it, therefore, weighs in favor of final approval of the Settlement.

### 6.   Defendants' Ability to Withstand a Greater Judgment

Courts generally do not find the ability of a defendant to withstand a greater judgment to be a barrier to settlement when the other factors favor the settlement.  "[T]he fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate."  *PaineWebber*, 171 F.R.D. at 129; *see also IMAX*, 283 F.R.D. at 191 ("'[A] defendant is not required to "empty its coffers" before a settlement can be found adequate.'").  Nevertheless, a potential source of recovery from the Defendants (the directors and officers insurance policy) was decreasing through the course of the litigation.

###### 7.    The Settlement Amount Is Reasonable in View of the Best Possible Recovery and the Risks of Litigation

The adequacy of the amount offered in settlement must be "judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145, 174 (2d Cir. 1987); *see also Wal-Mart*, 396 F.3d at 119.   A court need only determine whether the settlement falls within a "'range of reasonableness.'"   *PaineWebber*, 171 F.R.D. at 130 (citation omitted).   The "range of reasonableness" has been described by the Second Circuit as "a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

Here, the $140 million Settlement is a substantial result for the Class, especially in light of the stage of litigation, the risks associated with continued litigation of this complex securities class action, and the total amount of damages.   Lead Plaintiffs estimated that a maximum of $3.987 billion in damages could be recovered by the Class.   Hughes Decl. ¶ 5.   The Settlement therefore represents approximately 3.51% of the maximum recoverable damages if the Class Period was upheld in full.   *See Hicks*, 2005 WL 2757792, at *7 (finding settlement representing 3.8% of plaintiffs' estimated damages to be within range of reasonableness); *see also Union Carbide*, 718 F. Supp. at 1103 ("The Court of Appeals has held that a settlement can be approved even though the benefits amount to a small percentage of the recovery sought.   The essence of settlement is compromise." (citation omitted)); *Global Crossing*, 225 F.R.D. at 461 ("'[T]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be

disapproved.'") (quoting *Grinnell*, 495 F.2d at 455 (alteration in original)).   If, however, the Class Period was shortened to begin in July 2011, maximum provable damages were $2.518 billion.   Hughes Decl. ¶ 6.   Disaggregating confounding non-fraud related information would reduce damages to $1.496 billion for the as-pleaded Class Period and to $1.040 billion for the potential shortened class period; this would result in a recovery of approximately 9.36% and 13.46%, respectfully.   *Id.*

The Settlement exceeds other recent settlements in absolute terms.   More specifically, the percentage of recovery here (3.51% to 13.46%) exceeds that in median settlements within in the Second Circuit from 2006 through 2015 (2.3%).   *See* Hughes Decl. ¶ 7.   The $140 million Settlement is also significantly greater than the average settlement amount of $37.9 million in 2015 and far greater than the median settlement amount of $6.1 million in 2015.   *See id.*

Moreover, the Settlement offers the opportunity to provide immediate relief to the Class, rather than a speculative payment years down the road.   *See AOL Time Warner*, 2006 WL 903236, at *13 (noting when settlement fund is in escrow and earning interest for class, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery").   In light of the complex legal and factual issues present here, the fairness of the Settlement is apparent.   *See, e.g.*, *Maley*, 186 F. Supp. 2d at 366-67.

Accordingly, Lead Plaintiffs respectfully submit that the immediate cash benefit is well "within the range of reasonableness" in light of the best possible recovery and all the risks of litigation.

## V.   THE PLAN OF ALLOCATION OF THE NET SETTLEMENT FUND IS FAIR AND ADEQUATE

The standard for approval of the Plan of Allocation (the "Plan") is the same as the standard for approving the Settlement as a whole.   Specifically, "'it must be fair and adequate.'"

*In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005) (quoting *Maley*, 186 F. Supp. 2d at 367).  "'As a general rule, the adequacy of an allocation plan turns on . . . whether the proposed apportionment is fair and reasonable' under the particular circumstances of the case." *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775 (JG)(VVP), 2015 U.S. WL 5918273, at *4 (E.D.N.Y. Oct. 9, 2015) (alteration in original).  "'When formulated by competent and experienced class counsel,' a plan for allocation of net settlement proceeds 'need have only a reasonable, rational basis.'" *Advanced Battery*, 298 F.R.D. at 180 (quoting *Global Crossing*, 225 F.R.D. at 462; *Am. Bank Note*, 127 F. Supp. 2d at 429-30).

The Plan, which is set forth in the Notice, was prepared by Lead Counsel's damages expert to create a fair method to divide the Net Settlement Fund for distribution.  *See* Hughes Decl. ¶¶ 111-12.  The Plan attempted to eliminate the effects of market forces unrelated to the alleged misrepresentations and omissions, as well as to simplify claims administration with attendant reduced cost to the Class.  The Net Settlement Fund will be distributed to Authorized Claimants, i.e., members of the Class who submit timely and valid Proof of Claim forms that are approved for payment from the Net Settlement Fund pursuant to the Plan.  The Plan treats all Class Members in a similar manner:  everyone who submits a valid and timely Proof of Claim form, and does not exclude himself, herself, or itself from the Class, will receive a *pro rata* share of the Net Settlement Fund in the proportion that the Authorized Claimant's claim bears to the total of the claims of all Authorized Claimants so long as such Authorized Claimant's payment amount is $10.00 or more.

Indeed, it is appropriate for distributions to be based upon, among other things, the relative strengths and weaknesses of class members' individual claims, including, among other things, the timing of the purchases of the securities at issue.  *See In re Holocaust Victim Assets*

*Litig.*, 413 F.3d 183, 186 (2d Cir. 2001) (holding large settlement with different claims must be allocated, at least in part, on comparative strengths and weaknesses of asserted claims).   The Plan of Allocation's *pro rata* distribution meets the Court's dual objectives of "matching each plaintiffs recovery to the strength of his or her claim," while also ensuring "[e]fficiency, ease of administration and conservation of public and private resources." *PaineWebber*, 171 F.R.D. at 135.

Class Counsel believe that the Plan is fair and reasonable and respectfully submit that it should be approved by the Court.   Notably, there have been no objections to the Plan to date, which also supports the Court's approval. *Veeco*, 2007 WL 4115809, at *7; *Maley*, 186 F. Supp. 2d at 367.

## VI.   NOTICE TO THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

Rule 23 of the Federal Rules of Civil Procedure requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).   Additionally, notice of a settlement must be directed to class members in a "reasonable manner."   Fed. R. Civ. P. 23(e)(1).   Notice of a settlement satisfies Rule 23(e) and due process where it "'fairly apprises the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart*, 396 F.3d at 114; *see also Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22, 27 (2d Cir. 2014).   "Notice need not be perfect" or received by every class member, but instead be reasonable under the circumstances.   *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008).   Notice is

adequate "if the average person understands the terms of the proposed settlement and the options provided to class members thereunder." *Id.* (citing *Wal-Mart*, 396 F.3d at 114).

The Summary Notice and the method utilized to disseminate the Notice to potential Class Members satisfies these standards.  The Notice Packet amply apprise Class Members of, *inter alia*:  (1) the pendency of the Action; (2) the nature of the Action and the Class' claims; (3) the essential terms of the Settlement; (4) the proposed Plan; (5) Class Members' rights to request exclusion from the Class or object to the Settlement, the Plan, or the requested attorneys' fees or expenses; (6) the binding effect of a judgment on Class Members; and (7) information regarding Lead Counsel's motion for an award of attorneys' fees and expenses.  *See* Cirami Decl. Ex. A. The Summary Notice also provides specific information regarding the date, time, and place of the Settlement Hearing, and sets forth the procedures and deadlines for:  (1) submitting a Proof of Claim;  (2) requesting exclusion from the Class;  and  (3) objecting to any aspect of the Settlement, including the proposed Plan and the request for attorneys' fees and expenses.

The Summary Notice also contains the information required by the PSLRA (15 U.S.C. § 77z-1(a)(7);  15  U.S.C.  § 78u-4(a)(7)),  including:   (1) a statement of the amount to be distributed, determined in the aggregate and on an average per share basis; (2) a statement of the potential outcome of the case (i.e., whether there was agreement or disagreement on the amount of damages); (3) a statement indicating the attorneys' fees and costs sought; (4) identification and contact information of counsel; and (5) a brief statement explaining the reasons why the parties are proposing the Settlement.  *See* Cirami Decl. Ex. A; *see also In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 184 (S.D.N.Y. 2003).

In accordance with the Notice Orders, Garden City Group, LLC ("GCC") commenced the mailing of the Notice Packet by First-Class Mail to potential Class Members, brokers, and

nominees.  Cirami Decl. ¶ 2.  As of September 4, 2016, an aggregate of 1,072,843 copies of the

Notice Packet had been mailed.  *Id.* ¶ 10.  GCC also published the Notice in *The Wall Street*

*Journal* and transmitted it over *PR Newswire* on June 27, 2016.  *Id.* ¶ 3.  Additionally, GCC

posted the Notice Packet, as well as other important documents, on the website maintained for

the Settlement.  *Id.* ¶ 4.[4]

This combination of individual First-Class Mail to all Class Members who could be

identified with reasonable effort, supplemented by mailed notice to brokers and nominees and

publication of the Summary Notice in a relevant, widely-circulated publication and internet

newswire, was "the best notice . . . practicable under the circumstances."  Fed. R. Civ. P.

23(c)(2)(B).  This method of providing notice has been repeatedly approved for use in securities

class actions and other comparable class actions.  *See, e.g.*, *Sadia*, 2011 WL 6825235, at *1; *In*

*re OCA, Inc. Sec. & Derivative Litig.*, No. 05-2165, 2009 WL 512081, at *7-9 (E.D. La. Mar. 2,

2009) (noting mailing, internet publication, and newspaper publication satisfied due process

notice requirements).

## VII.  CONCLUSION

The Settlement obtained here is an excellent one.  Therefore, for the foregoing reasons,

Lead Plaintiffs respectfully request that this Court enter the proposed final Judgment approving

the Settlement, and approving the notice program.  Lead Plaintiffs also request that the Court

enter an order approving the Plan, which will govern distribution of the Net Settlement Fund.

---

[4]     The Summary Notice references the Internet website for the Settlement.  *See* Cirami
Decl. Ex. A.

DATED:  September 7, 2016                    Respectfully submitted,

                                            MOTLEY RICE LLC


                                                    */s/ James M. Hughes*
                                            James M. Hughes (*pro hac vice*)
                                            Christopher F. Moriarty (*pro hac vice*)
                                            28 Bridgeside Blvd.
                                            Mt. Pleasant, South Carolina 29464
                                            Telephone: (843) 216-9000
                                            Facsimile:  (843) 216-9450
                                            Emails:    jhughes@motleyrice.com
                                                       cmoriarty@motleyrice.com


                                            MOTLEY RICE LLC

                                            William H. Narwold
                                            One Corporate Center
                                            20 Church Street, 17th Floor
                                            Hartford, CT 06103
                                            Telephone: (860) 882-1681
                                            Facsimile:  (860) 882-1682
                                            Email:     bnarwold@motleyrice.com

                                            *Lead Counsel for Lead Plaintiffs and the Class*



                                            LABATON SUCHAROW LLP

                                            Jonathan Gardner
                                            Serena P. Hallowell
                                            140 Broadway
                                            New York, New York 10005
                                            Telephone: (212) 907-0700
                                            Facsimile:  (212) 818-0477
                                            Emails:    jgardner@labaton.com
                                                       shallowell@labaton.com

                                            *Liaison Counsel for Lead Plaintiffs and the Class*

**CERTIFICATE OF SERVICE**

I, James M. Hughes, hereby certify that on September 7, 2016, I caused a true and correct copy of the attached Lead Plaintiffs' Memorandum of Law in Support of Motion for Final Approval of Settlement and Plan of Allocation to be served electronically on all counsel registered for electronic service for this case.

/s/ James M. Hughes
James M. Hughes