UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| ————————————————— | x | |
| In re BARRICK GOLD SECURITIES LITIGATION | : | Civil Action No. 1:13-cv-03851-SAS |
| | : | |
| ————————————————— | : | CLASS ACTION |
| | : | |
| This Document Relates To: | : | ECF Case |
| | : | |
| ALL ACTIONS. | : | |
| ————————————————— | x | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
AND PLAN OF ALLOCATION AND LEAD COUNSEL'S MOTION FOR AWARD OF
ATTORNEYS' FEES AND PAYMENT OF LITIGATION EXPENSES**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................................... 1

ARGUMENT ................................................................................................................................... 3

I.      THE REACTION OF THE CLASS STRONGLY SUPPORTS APPROVAL OF THE SETTLEMENT, PLAN OF ALLOCATION, AND REQUEST FOR ATTORNEYS' FEES AND LITIGATION EXPENSES .............................................................................................. 3

II.     SIEGEL IS A SERIAL OBJECTOR WHOSE OBJECTION LACKS MERIT AND SHOULD BE REJECTED ................................................................................................................. 4

CONCLUSION ................................................................................................................................ 8

## TABLE OF AUTHORITIES

### CASES

*Banyai v. Mazur*,
   No. 00 Civ. 9806(SHS), 2007 WL 927583 (S.D.N.Y. Mar. 27, 2007) ..................................... 3

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) .................................................................................................... 3

*Goldberger v. Integrated Resources, Inc.*,
   209 F.3d 43 (2d Cir. 2000) .................................................................................................... 6

*Hayes v. Harmony Gold Mining Co.*,
   509 F. App'x 21 (2d Cir. 2013) ............................................................................................. 6

*Hicks v. Morgan Stanley*,
   No. 01 Civ. 10071(RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ................................. 4

*In re Cardinal Health, Inc. Securities Litigation*,
   550 F. Supp. 2d 751 (S.D. Ohio 2008) .............................................................................. 5, 8

*In re Citigroup Inc. Securities Litigation*,
   965 F. Supp. 2d 369 (S.D.N.Y. 2013) .................................................................................... 4

*In re Electronic Books Antitrust Litigation*,
   639 F. App'x 724 (2d Cir. 2016) ........................................................................................... 4

*In re Initial Public Offering Securities Litigation*,
   721 F. Supp. 2d 210 (S.D.N.Y. 2010) .................................................................................... 5

*In re Merrill Lynch & Co. Research Reports Securities Litigation*,
   No. 02 MDL 1484(JFK), 2007 WL 4526593 (S.D.N.Y. Dec. 20, 2007) ................................. 3

*In re NASDAQ Market-Makers Antitrust Litigation*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................................................... 4

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation*,
   991 F. Supp. 2d 437 (E.D.N.Y. 2014) .................................................................................... 7

*In re UnitedHealth Group Inc. PSLRA Litigation*,
   643 F. Supp. 2d 1107 (D. Minn. 2009) .................................................................................. 5

*In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*,
   No. 1:08-WP-65000, 2016 WL 5338012 (N.D. Ohio Sept. 23, 2016) ................................. 6, 7

*O'Keefe v. Mercedes- Benz USA, LLC*,
   214 F.R.D. 266 (E.D. Pa. 2003) ............................................................................................ 4

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) ................................................................................................. 3, 6

### TREATISES & ARTICLES

John E. Lopatka & D. Brooks Smith, *Class Action Professional Objectors: What to Do About Them?*, 39 Fla. St. U. L. Rev. 865, 866 (Summer 2012).................................................. 4

Lead Plaintiffs, LRI Invest S.A. and Union Asset Management Holding AG, and Lead Counsel[1] respectfully submit this reply memorandum of law in further support of:  (i) Lead Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation (ECF Nos. 180-81); and (ii) Lead Counsel's Motion for Attorneys' Fees and Payment of Litigation Expenses (ECF Nos. 182-83).[2]

## PRELIMINARY STATEMENT

Lead Plaintiffs and Lead Counsel are pleased to inform the Court of the overwhelmingly positive reaction of the Class to the proposed Settlement and the fee and expense application. The Court-approved notice program has been completed, and the deadlines for objections and requests for exclusion have passed.  After more than 1.1 million copies of the Summary Notice, Notice, and Claim Form were mailed to potential Class Members or their brokers/nominees (which notices also directed potential Class Members to a website and a toll free telephone number through which they could obtain the Claim Form), Lead Counsel received only four objections to the attorneys' fees application and 109 requests for exclusion (of which 45 are

---

[1]     All capitalized terms not defined herein have the same meanings as set forth in the Amended Stipulation of Settlement dated June 9, 2016 ("Stipulation").  *See* ECF No. 167-1.

[2]     Attached as Exhibit 1 to the Declaration of James M. Hughes in Support of the Reply Memorandum of Law in Support of Lead Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation and Lead Counsel's Motion for an Award of Attorneys' Fees and Payment of Litigation Expenses ("Hughes Reply Declaration"), filed herewith, is a copy of Cornerstone Research's *Securities Class Action Settlement 2015 Review and Analysis*.  The previous year's version was inadvertently attached as Exhibit 1 to the Declaration of James M. Hughes in Support of Lead Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation and Lead Counsel's Motion for an Award of Attorneys' Fees and Payment of Litigation Expenses (ECF No. 184-1) ("Hughes Declaration").

valid).[3]    Notably, there were no objections whatsoever to the Settlement itself, and no institutional investor objected to the request for an award of attorneys' fees and expenses.

In addition to the Objections to Request for Attorneys' Fees filed by Edward F. Siegel (ECF No. 185) ("Siegel Objection"), three other purported objections have been filed.  Two of those objections were received before the submission of Lead Plaintiffs' and Lead Counsel's opening papers and are addressed in (i) the Hughes Declaration (*see* ECF No. 184 ¶¶ 107-08) and Exhibit 7(d) to same (*see* ECF No. 184-11); and (ii) Lead Plaintiffs' Memorandum of Law in Support of Motion for an Award of Attorneys' Fees and Expenses (*see* ECF No. 183 at 23).  As explained therein, one objection is invalid because it does not comply with the terms of the Summary Notice; namely, it fails to identify the date(s), price(s), and number of shares of all purchases and sales of Barrick common stock on the New York Stock Exchange during the Class Period.  The other objection is from an investor who acknowledges that she made an unrealized gain on her transactions in Barrick Gold common stock and whose recovery under the Plan of Allocation would be zero.  The third, from Ms. Elinor White, is invalid because it does not comply with the objection requirements specified in the Notice and Summary Notice, including a failure to list any transactions in Barrick common stock during the Class Period, much less provide any evidence thereof.

As discussed below, Mr. Siegel's objection, which was filed after Lead Plaintiffs' and Lead Counsel's opening papers, is a boilerplate, shopworn objection filed by a serial settlement objector who has over the years repeatedly filed similar, if not identical, unsuccessful objections to class action settlements throughout the country.  Thus, the Class has broadly endorsed the

---

[3]    *See* Suppl. Aff. of Stephen J. Cirami in Supp. of Lead Pls.' Mot. for Final Approval of Settlement and Plan of Allocation, dated Sept. 30, 2016 ("Suppl. Aff."), attached as Ex. 2 to the Hughes Reply Decl.

fairness, adequacy, and reasonableness of the proposed Settlement and Plan of Allocation and the requested award of attorneys' fees and expenses.  Accordingly, the Class Members' positive response, considered together with the other factors set forth in Lead Plaintiffs' and Lead Counsel's previous filings made in connection with the final approval process (*see* ECF Nos. 180-84), supports final approval of the Settlement and Lead Counsel's fee and expense requests.

## ARGUMENT

**I.   THE REACTION OF THE CLASS STRONGLY SUPPORTS APPROVAL OF THE SETTLEMENT, PLAN OF ALLOCATION, AND REQUEST FOR ATTORNEYS' FEES AND LITIGATION EXPENSES**

The period to submit an objection has passed, and only four objections were received.  It is well established that "a small number of objections received when compared to the number of notices sent weighs in favor of approval."  *Banyai v. Mazur*, No. 00 Civ. 9806(SHS), 2007 WL 927583, at *9 (S.D.N.Y. Mar. 27, 2007); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) ("'If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.'"); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86-87 (2d Cir. 2001) (approving settlement in which 27,883 notices were sent to class members but only 72 class members requested exclusion from settlement and only 18 class members objected, concluding "this small number of objections weigh[s] in favor of the settlement").

Furthermore, only 109 requests for exclusion were received (of which 45 are valid).  This again weighs in favor of final settlement approval because courts have recognized that a "minimal number of . . . requests for exclusion militates in favor of finding the settlement to be fair, adequate, and reasonable."  *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484(JFK), 2007 WL 4526593, at *10 (S.D.N.Y. Dec. 20, 2007); *see also Hicks v. Morgan*

*Stanley*, No. 01 Civ. 10071(RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) (noting

"reaction of the class . . . strongly supports approval" when only 123 out of approximately

100,000 class members requested exclusion).

Finally, a lack of objections by institutional investors, who typically have the greatest

financial stake and are experienced fiduciaries, weighs in favor of both the proposed settlement

and the fee and expense request.  *See, e.g.*, *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369,

382 (S.D.N.Y. 2013) ("[N]ot a single objection was received from any of the institutional

investors that hold the majority of Citigroup stock."); *In re NASDAQ Market-Makers Antitrust

Litig.*, 187 F.R.D. 465, 479 (S.D.N.Y. 1998) ("[N]one of the thousands of institutional Class

members, who have the largest financial stake, have objected to the Proposed Settlements.").

Here, no institutional investor has objected to any part of the Settlement, the Plan of Allocation,

the requested fee award, or the requested expenses.

## II.   SIEGEL IS A SERIAL OBJECTOR WHOSE OBJECTION LACKS MERIT AND SHOULD BE REJECTED

"Federal courts are increasingly weary of professional objectors."  *O'Keefe v. Mercedes-

Benz USA, LLC*, 214 F.R.D. 266, 295 n.26 (E.D. Pa. 2003).  Since the filing of Lead Plaintiffs'

and Lead Counsel's opening papers, only one additional objection has been received, from

Mr. Siegel, a serial objector who purchased fifteen shares of Barrick common stock during the

Class Period.  *See* Siegel Obj.[4]

---

[4]      As a "professional objector," Mr. Siegel "profit[s] by extorting payments from class counsel" and "'make[s] a living simply by filing frivolous appeals and thereby slowing down the execution of settlements.'"  John E. Lopatka & D. Brooks Smith, *Class Action Professional Objectors: What to Do About Them?*, 39 Fla. St. U. L. Rev. 865, 866 (Summer 2012).  "'[P]rofessional objectors' are lawyers who 'file stock objections to class action settlements'— objections that are '[m]ost often . . . nonmeritorious'—and then are 'rewarded with a fee by class counsel to settle their objections.'"  *In re Elec. Books Antitrust Litig.*, 639 F. App'x 724, 728 (2d Cir. 2016) (all but first alteration in original).

While this is an unfortunate burden on the Court, Mr. Siegel's objection in this case is unsurprising because:

> class actions also attract those in the legal profession who subsist primarily off of the skill and labor of, to say nothing of the risk borne by, more capable attorneys. These are the opportunistic objectors. Although they contribute nothing to the class, they object to the settlement, thereby obstructing payment to lead counsel or the class in the hope that lead plaintiff will pay them to go away. Unfortunately, the class-action kingdom has seen a Malthusian explosion of these opportunistic objectors, which now seem to accompany every major securities litigation.

*In re Cardinal Health, Inc. Sec. Litig.*, 550 F. Supp. 2d 751, 754 (S.D. Ohio 2008). This is such an objection, the latest in a long list of meritless objections from one of the nation's most prolific serial objectors.[5] Accordingly, Mr. Siegel's objection should be viewed with particular skepticism. *See In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d 210, 214 (S.D.N.Y. 2010) (describing Mr. Siegel as a "serial objector[]").

Moreover, scores of courts have rejected Mr. Siegel's attempts to hijack settlements for personal gain. As one court explained:

> These objectors [represented by Mr. Siegel] have contributed nothing. . . . Their goal was, and is, to hijack as many dollars for themselves as they can wrest from a negotiated settlement. Objectors' eight-page-long, two-week-late pleading presented no facts, offered no law, and raised no argument upon which the Court relied in its deliberation or ruling concerning class counsel's motion for fees. . . . Objectors' request and their motion ill-befit attorneys admitted to the bar.

*In re UnitedHealth Grp. Inc. PSLRA Litig.*, 643 F. Supp. 2d 1107, 1109 (D. Minn. 2009). Put simply, Mr. Siegel's objection here, like those he has made in numerous other cases, is solely for purposes of attempting to extort a ransom from Lead Counsel. *See id.* at 1108 (describing Mr. Siegel and his co-counsel as "remoras"). Indeed, Mr. Siegel's attempts to disrupt class action settlements were noted as recently as last week, when one court noted that "[n]umerous

---

[5] Mr. Siegel has appeared as an objector, or as counsel for an objector, in at least forty-nine other cases. A list of these cases is attached hereto as Exhibit 3 to the Hughes Reply Declaration.

courts have overruled objections filed by Siegel, often describing him as a serial objector." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, No. 1:08-WP-65000, 2016 WL 5338012, at *21 n.19 (N.D. Ohio Sept. 23, 2016) (collecting cases).

Here, Mr. Siegel's objections fail for a host of independently sufficient substantive reasons. First, Mr. Siegel argues that the "percentage of the fund analysis is the proper method for determining the proper fee award in this case." Siegel Obj. at 2. If Mr. Siegel had taken the time to review the filings in this Action, he would have noticed that Lead Plaintiffs and Lead Counsel agree. *See* ECF No. 183 at 5-6. Instead of analyzing the applicable factors considered by courts in this Circuit, however, *see id.* at 12-23 (addressing *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)), Mr. Siegel cites to a 13-year-old study and several out-of-circuit cases concerning attorneys' fee awards in settlements in the billions of dollars. *See* Siegel Obj. at 2-3 & Ex. A. While Mr. Siegel's objection pays lip service to *Goldberger* in passing, he fails even to attempt to address the factors considered by the Second Circuit in that case and disregards the numerous 25% fee awards both inside and outside courts in the Second Circuit and the risks undertaken and overcome here, particularly relative to the substantial recovery achieved for the Class.[6]

---

[6]     Having acknowledged that percentage-of-the-fund method is the preferred method for calculating attorneys' fees, Mr. Siegel then curiously argues that Lead Plaintiffs' Counsel's lodestar is the starting point for determining the reasonableness of the requested attorneys' fees. *See* Siegel Obj. 4-5. The percentage-of-the-fund method is the preferred method for calculating attorneys' fees in this Circuit and counsel's lodestar may be used as a "cross-check" to ensure the requested fee is reasonable. *See Hayes v. Harmony Gold Mining Co.*, 509 F. App'x 21, 24 (2d Cir. 2013) ("[A]s the district court recognized, the prospect of a percentage fee award from a common settlement fund, as here, aligns the interests of class counsel with those of the class."); *Wal-Mart Stores*, 396 F.3d at 121 (noting percentage of the common fund method "'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation'"); *see also* ECF No. 183 at 5-6.

Next, Mr. Siegel focuses on attorneys' fee awards in "mega-fund" cases, which he argues "should be governed by a different set of rules." ECF No. 185 at 2. Again, this is a subject that Lead Counsel has already raised and explored in detail in its own prior submissions, addressing applicable law within the Second Circuit (unlike Mr. Siegel, who cherry-picks some out-of-circuit authority involving cases that settled in the billions of dollars). *See, e.g.*, ECF No. 183 at 6-8 (addressing, *inter alia*, the fee scale adopted by the court in *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437 (E.D.N.Y. 2014) (Gleeson, J.)). Again, this argument does nothing to advance the litigation.

As the *Whirlpool* court recognized, class action settlements frequently contain what are known as "quick pay" clauses to deter Mr. Siegel and his ilk:

> The essential purpose of a quick-pay clause is to disincentivize lawyers who are "professional objectors." In nearly every class action settlement today, professional objectors file objections (often frivolous ones) simply in order to obtain standing to appeal the district court's final approval order. The professional objector hopes that class counsel, in order to settle the appeal and gain access to the fee award, will pay the objector to go away. Quick-pay clauses substantially reduce the leverage a professional objector can wield. Far from serving as proof that Class Counsel in this case somehow pursued their own interests at the expense of the class, the quick-pay clause serves the socially-useful purpose of deterring serial objectors.

*In re Whirlpool*, 2016 WL 5338012, at *21 (citations omitted) (footnote call number omitted).

For exactly these same reasons, the Stipulation includes a "quick pay" provision that provides for the payment of attorneys' fees and expenses "immediately after the Court executes the Judgment and an order awarding such fees and expenses, notwithstanding the existence of any timely filed objections thereto or to the Settlement, or potential appeal therefrom, or collateral attack on the Settlement or any part thereof." Stipulation ¶ 6.2.[7]

---

[7] In the opening papers, we noted that Lead Plaintiffs' Counsel and their paraprofessionals have spent, in the aggregate, 41,891.25 hours in the prosecution of this case, producing a total lodestar amount of $20,132,916.25, and that no time after July 15, 2016 had been included. *See* Hughes

Should Mr. Siegel later seek compensation for his purported "contribution" to the Class, the record should reflect that he conferred no benefit to the Class whatsoever. *See In re Cardinal Health*, 550 F. Supp. 2d at 753 (finding objector, who attached same *Attorney Fee Awards in Common Fund Class Actions* article as did Mr. Siegel, did not confer "any benefit whatsoever on the class or on these proceedings").

## CONCLUSION

In view of the foregoing and the detailed record herein, Lead Plaintiffs and Lead Counsel respectfully request that the Court approve:  (i) the proposed Settlement; (ii) the proposed Plan of Allocation; (iii) Lead Counsel's request for attorneys' fees and litigation expenses; and (iv) the Claims Administrator's fees and expenses incurred through August 31, 2016.

---

Decl. ¶ 132 & Ex. 8.  In total, Lead Plaintiffs' Counsel removed well over 1,000 hours of time from the submitted lodestar from inception to September 30, 2016.  Time omitted comprised hours that could be judged to be duplicative, inefficient, or logged by individuals who spent less than nine hours working on the case.  Of the total amount of time spent litigating the Action, 7.63% of Lead Counsel's total hours (and 14.13% of the total lodestar) was incurred by members, 1.15% of the total hours (and 2.18% of the total lodestar) was incurred by of-counsel, and 91.22% of the total hours (and 83.69% of the total lodestar) was incurred by associates and project/staff attorneys.  For Liaison Counsel, 18.80% of the total hours (and 28.66% of the total lodestar) was incurred by partners, 6.80% of the total hours (and 9.21% of the total lodestar) was incurred by of-counsel, and 74.39% of the hours (and 62.14% of the total lodestar) was incurred by associates and project/staff attorneys.

DATED:  September 30, 2016                Respectfully submitted,

MOTLEY RICE LLC


*/s/ James M. Hughes*

James M. Hughes (*pro hac vice*)
Christopher F. Moriarty (*pro hac vice*)
28 Bridgeside Blvd.
Mt. Pleasant, South Carolina 29464
Telephone: (843) 216-9000
Facsimile:  (843) 216-9450
Emails:     jhughes@motleyrice.com
                 cmoriarty@motleyrice.com


MOTLEY RICE LLC

William H. Narwold
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
Telephone: (860) 882-1681
Facsimile:  (860) 882-1682
Email:        bnarwold@motleyrice.com

*Lead Counsel for Lead Plaintiffs and the Class*


LABATON SUCHAROW LLP

Jonathan Gardner (JG-8512)
Serena P. Hallowell (SH-1120)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile:  (212) 818-0477
Emails:     jgardner@labaton.com
                 shallowell@labaton.com

*Liaison Counsel for Lead Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I, James M. Hughes, hereby certify that on September 30, 2016, I caused a true and correct copy of the attached Lead Plaintiffs' Reply Memorandum of Law in Support of Lead Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation and Lead Counsel's Motion for Award of Attorneys' Fees and Litigation Expenses to be served electronically on all counsel registered for electronic service for this case, and upon the following by first-class mail:

> Edward F. Siegel
> 1145 Jay St.
> Boulder, CO.  80302

*/s/ James M. Hughes*
James M. Hughes
